**SCOTT ERIK ASPHAUG, OSB #833674**
United States Attorney
District of Oregon
**MICHAEL JETER, OSB #165413**
Assistant United States Attorney
michael.jeter@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2936
Phone: (503) 727-100
  Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **NICOLE MORETTI, and WENDY NOVIS, as Personal Representative of the Estate of SAYLOR MORETTI, deceased** | Case No.: 3:21-cv-01525-SI |
|       Plaintiffs, | **UNITED STATES' MOTION TO DISMISS** |
| v. | **Rule 12(b)(1)** |
| **LETTY OWINGS CENTER: CENTRAL CITY CONCERN, and/or the UNITED STATES acting through the DEPARTMENT OF HEALTH AND HUMAN SERVICES,** | |
|      Defendants. | |

Page i – UNITED STATES' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 4

LEGAL STANDARDS ............................................................................................ 5

ARGUMENT .......................................................................................................... 6

   I.   The United States is Not the Proper Defendant Because Plaintiffs Do Not
       Allege a Claim for Medical Malpractice Covered by the FSHCAA .................... 6

      A.   FSHCAA Law ......................................................................................... 6

      B.   LOC was "deemed" to be a PHS employee only for "services" provided to
          "patients." Saylor Moretti was not LOC's patient ........................................ 7

      C.   Alternatively, Plaintiffs' Claimed Wrongful Death Did Not Result from
          Medical Malpractice Covered by FSHCAA .................................................. 9

   II.   The FTCA's Discretionary Function Exception Bars Plaintiff's Claim ........ 12

      A.   The Challenged Actions Are Discretionary Acts Involving an Element of
          Judgment or Choice..................................................................................... 15

      B.   The Challenged Actions Are Susceptible to a Policy Analysis .................. 17

   III.  Nicole Moretti Failed to Exhaust Her Administrative Remedies and Any
       Claim She Might Have Against the United States is Forever Barred .......... 18

CONCLUSION...................................................................................................... 20

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-1

Counsel for the United States of America certifies that it made good faith effort to resolve the dispute with counsel of all other parties in this action. The parties were unable to resolve the issues raised in this Motion.

## MOTION

Plaintiffs bring a wrongful death claim against the United States under 28 U.S.C. § 1346 and 42 U.S.C. § 233(g)–(n). The United States hereby moves to dismiss Plaintiffs' claim for lack of subject matter jurisdiction under Rule 12(b)(1). First, the United States is not the proper defendant because Plaintiffs' claim does not satisfy the statutory requirements of 42 U.S.C. § 233. Second, 28 U.S.C. § 2680(a) bars Plaintiffs' claim. Third, Plaintiff Nicole Moretti did not exhaust her administrative remedies, and her claim is forever barred under 28 U.S.C. §§ 2401(b), 2675(a).

## LEGAL MEMORANDUM

### INTRODUCTION

The United States of America ("United States"), by Scott Erik Asphaug, United States Attorney for the District of Oregon, and through Assistant United States Attorney Michael J. Jeter, moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss the Amended Complaint. *See* Am. Compl., ECF No. 19.

The United States moves to dismiss all claims against it for lack of subject matter jurisdiction. Plaintiffs are Wendy Novins, Personal Representative of the Estate of the minor decedent Saylor Moretti, and Nicole Moretti on her own behalf.

Plaintiffs brought a single wrongful death claim against Central City Concern ("CCC"), the Letty Owings Center ("LOC") (collectively "Clinic Defendants"), and the United States. Plaintiffs allege that on October 4, 2019, while co-sleeping in Nicole Moretti's private room at the LOC, Nicole Moretti's weight came to rest on her infant son Saylor Moretti, causing him to die.

Plaintiffs allege that Clinic Defendants were negligent in one or more ways relating to Nicole Moretti co-sleeping with Saylor Moretti. Plaintiffs seek recovery against the United States under the Federal Tort Claims Act ("FTCA"), a remedy which is available (and exclusive) only if the conduct giving rise to suit is conduct covered under the Federally Supported Health Centers Assistance Act ("FSHCAA"). *See* 42 U.S.C. § 233(g)–(n). Because Plaintiff has sued the United States and Clinic Defendants side-by-side, dismissal of one at this stage in the litigation is required. The case may proceed against Clinic Defendants or the United States, but not both.

As explained below, the United States is not a proper defendant because Plaintiffs' claim is not covered under FSHCAA. Upon the Secretary of Health Human Services' approval of an application "deeming" certain federal grant recipients to be Public Health Service employees for purposes of 42 U.S.C. 233, FSHCAA extends medical malpractice protections afforded to Public Health Service officers and employees under 42 U.S.C. § 233(a) to the qualifying entity, its employees, and certain qualified contractors. 42 U.S.C. § 233(g). In addition to limiting the availability of the FTCA's remedy against the United States to injuries or death resulting from medical malpractice within the scope of official duties,

FSHCAA further provides that an entity or individual deemed to be a Public Health Service employee is "deemed" only for purposes of services provided to patients of the entity. 42 U.S.C. § 233(g)(1)(B).

Plaintiffs' claim is not within the category of claims covered by the FSHCAA. Saylor Moretti's death did not result from medical malpractice; indeed, he was not even a patient of LOC. The clinic provided in-residence substance abuse disorder treatment to Nicole Moretti, does not provide medical services to children, and was not providing Saylor Moretti medical services at the time of the incident. Because Saylor Moretti was not a patient of LOC, he remained at all relevant times under the direct care and supervision of his mother. Saylor Moretti's death occurred when they were sleeping alone in Nicole Moretti's private room, and no professional medical staff were involved in the overnight supervision of the Saylor Moretti. Because Saylor Moretti was not a patient of LOC, "deemed" PHS employee status did not extend to services provided to Saylor on premises. 42 U.S.C. 233(g)(1)(B).

Plaintiffs' complaint, moreover, is predicated upon an alleged breach of a general duty imposed on premises owners to protect individuals, like Saylor Moretti, who are placed in their charge, care, or custody. Because FSHCAA's protections do not extend to breaches of general duties imposed on premises owners, the FTCA's remedy against the United States is not available, and the United States must be dismissed for lack of subject-matter jurisdiction.

Alternatively, to the extent the Court finds that Clinic Defendants were deemed to be Public Health Service employees for purposes of the conduct giving

rise to this suit, and that the United States is a proper defendant, the United States' sovereign immunity has not been waived. For reasons explained below, if the United States is a proper defendant, Plaintiffs' claims are barred by the FTCA's discretionary function exception. 28 U.S.C. § 2680(a).

Finally, if the United States is a proper defendant, the Court also lacks subject matter jurisdiction over any claim Nicole Moretti might have. Under Oregon law, only the estate's personal representative has the right to bring a wrongful death claim. The Amended Complaint added Nicole Moretti as a Plaintiff. However, Nicole Moretti did not file an administrative claim with HHS nor exhaust administrative remedies prior to instituting or joining this suit, divesting this Court of jurisdiction. 28 U.S.C. § 2675(a). Any attempt by Nicole Moretti to pursue an FTCA action would now be time-barred, as presentment of a claim to the appropriate agency must occur within two years of when the claim first accrues, a period which has now lapsed. As a result, any tort claim she might have against the United States is "forever barred." 28 U.S.C. § 2401(b).

## BACKGROUND[1]

CCC provides a variety of social services. Am. Compl. ¶ 3. LOC is a permanent delivery site of CCC that provides a residential substance use disorder program for women who are pregnant or have young children. *Id.* ¶¶ 3, 13. On

---

1 The Amended Complaint's allegations are summarized here only for the purpose of this Motion's facial attack on jurisdiction. The United States disputes the truth of several allegations and reserves its right to present a factual attack on jurisdiction under Rule 12(b)(1) if the Court finds it necessary to resolve any jurisdictional dispute.

August 8, 2019, Nicole Moretti began residing at the LOC and receiving treatment

for her substance abuse disorder. *Id.* at ¶ 13. In early September 2019, Nicole

Moretti gave birth to her son Saylor Moretti at an outside medical facility. *Id.* at

¶ 14(a). Nicole Moretti and Saylor Moretti slept in their room at the LOC nightly.

*Id.* ¶ 13. On October 4, 2019, Nicole Moretti co-slept with Saylor Moretti in her bed

at the LOC. *Id.* at ¶ 12. While co-sleeping, "Nicole Moretti's weight came to rest or

press against Saylor in such a way as to prevent his adequate breathing and he died

as a result." *Id.*

## LEGAL STANDARDS

The United States "may not be sued without its consent." *United States v.

Mitchell*, 463 U.S. 206, 212 (1983). "Absent a waiver, sovereign immunity shields

the Federal Government and its agencies from suit." *Fed. Deposit Ins. Co. v. Meyer*,

510 U.S. 471, 475 (1994). A motion asserting sovereign immunity is a motion to

dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *McCarthy v.

United States*, 850 F.2d 558, 560 (9th Cir. 1988). "A Rule 12(b)(1) jurisdictional

attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

(9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations

contained in a complaint are insufficient on their face to invoke federal jurisdiction.

By contrast, in a factual attack, the challenger disputes the truth of the allegations

that, by themselves, would otherwise invoke federal jurisdiction." *Id.* "It is to be

presumed that a cause lies outside [federal courts'] limited jurisdiction, and the

burden of establishing the contrary rests upon the party asserting jurisdiction."

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 11 (1799), and *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 181 (1936)).

## ARGUMENT

I.   **The United States is Not the Proper Defendant Because Plaintiffs Do Not Allege a Claim for Medical Malpractice Covered by the FSHCAA**

A.   *FSHCAA Law*

The FSHCAA "makes federally-funded community health centers and their employees, officers, and individual contractors eligible for medical malpractice coverage under the [FTCA] to the same extent as federal employees of the United States Public Health Service." *El Rio Santa Cruz Neighborhood Health Ctr. v. United States HHS*, 396 F.3d 1265, 1267 (D.C. Cir. 2005). The FSHCAA accomplishes this by "deeming" otherwise non-federal entities and certain of their personnel to be Public Health Service employees for purposes of 42 U.S.C. § 233(a). Section 233(a) makes the FTCA's remedy against the United States exclusive "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental or related functions." 42 U.S.C. § 233(a).

Consistent with its singular goal of relieving certain grantees of the "burden of rising malpractice insurance costs," *El Rio*, 396 F.3d at 1268, the FSHCAA textually refers to malpractice numerous times, going so far as to specifically subrogate to the United States only those benefits under an insurance policy for medical malpractice otherwise available to the entity or individual who has been "deemed" to be a Public Health Service employee. *See* 42 U.S.C. § 233(g)(2); *see also*

Page  6 – UNITED STATES' MOTION TO DISMISS

42 U.S.C. § 233(g)(1)(G)(ii), (h)(1), (m)(2), (n)(1)(A), (n)(1)(D)(i)-(ii), (n)(1)(D)(2)(A)(i), (n)(2)(C), (n)(2)(C)(ii), (n)(2)(D). (n)(1)(D) (each specifically referencing "malpractice"); Federally Supported Health Centers Assistance Act of 1995, Pub. L. No. 104-73, 109 Stat. 777, 777 ("[A]n Act [t]o amend the Public Health Service Act to permanently extend and clarify malpractice coverage for health centers[.]"); *Levin v. United States*, 568 U.S. 503, 508 (2013) (summarizing similar language in 10 U.S.C. § 1089(a) as covering "injuries resulting from malpractice").

Health Centers that receive federal grants under 42 U.S.C. § 254b have the option to apply for the FSHCAA's medical malpractice protections but are neither obligated to do so nor automatically conferred coverage. When health centers receive malpractice coverage under the FSHCAA, they are both reminded and encouraged to maintain additional liability coverages. *See* Health Res. & Servs. Admin., HHS, Federal Tort Claims Act: Health Center Policy Manual at 18 (updated July 21, 2014), https://bphc.hrsa.gov/sites/default/files/bphc/ftca/pdf/ftcahcpolicymanualpdf.pdf ["FTCA Manual"].

Finally, and dispositively here, the FSHCAA limits the "deemed" status of entities and qualifying individuals to "services provided" to "patients" of the deemed entity, and in limited circumstances not applicable here, individuals who are not patients of the entity. 42 U.S.C. § 233(g)(1)(B)–(C).

## B.   *LOC was "deemed" to be a PHS employee only for "services" provided to "patients." Saylor Moretti was not LOC's patient.*

As noted above, FSHCAA limits the legal fiction it confers upon qualifying

entities, "deeming" them to be PHS employees only for purposes of "services" to

"patients of the entity." 42 U.S.C. § 233(g)(1)(B). The term "services" refers to those

required primary health services, and where applicable, additional health services

the entity performs as a recipient of federal grant money under 42 U.S.C. § 254b.

*See* 42 U.S.C. § 233(g)(4) (defining entities for purposes of section 233(g) as those

receiving federal funds under 42 U.S.C. § 254(b); 42 U.S.C. § 254b(a)(1)(A)–(B).

Thus, the FSHCAA, by statute, limits "deemed" PHS employee status to acts

and omissions in the performance of medical services to patients. 42 U.S.C.

§ 233(g)(1)(B).[2] When a deemed entity chooses to provide additional, non-medical

services, and is sued for allegedly causing injury through its performance of those

services, FTCA coverage is unavailable. It is for this specific reason that grantees

are advised of the FSHCAA's statutory limits and encouraged to purchase

insurance to cover other potential liabilities.

Dispositive here is that Saylor Moretti was not a patient of CCC nor LOC.

LOC is a delivery site for CCC, and CCC did not provide medical services to Saylor

Moretti in this case. LOC provides substance use disorder treatment and enabling

services for women who are pregnant or have young children. Saylor Moretti was

not a patient of LOC. He was not receiving substance abuse disorder treatment, nor

does the alleged negligence involve any medical service provided to him. Indeed,

---

2  Under certain circumstances not presented here, acts and omissions in medical
services provided to individuals who are not patients of the deemed entity may be
covered. 42 U.S.C. § 233(g)(1)(C)–(D); 42 C.F.R. § 6.6(e) (providing examples of
situations where non-patients may be covered).

LOC provides no medical care to its residents' children. Therefore, FSHCAA

coverage does not extend Plaintiffs' claims resulting from the alleged wrongful

death of Saylor Moretti. There is no FTCA remedy against the United States here,

and the United States must be dismissed.

**C.    *Alternatively, Plaintiffs' Claimed Wrongful Death Did Not Result from Medical Malpractice Covered by FSHCAA***

Notwithstanding that Saylor Moretti was not a "patient" of LOC, Plaintiffs'

claim also fall outside the FSHCAA's limited protections because it is not a medical

malpractice claim. Instead, Plaintiffs' complaint alleges general premises liability

breaches in failing to adequately supervise sleeping arrangements. The gravamen of

Plaintiffs' complaint, therefore, is the breach of a general duty imposed on premises

owners to protect individuals, like Saylor or Nicole Moretti, who are placed in their

charge, care, or custody.

As noted above, the operative language of 42 U.S.C. § 233(a) "in effect insures

designated public officials" by having the United States stand in their place

financially "when they are sued for the performance of their *medical* duties." *Cuoco*

*v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000). While the FSHCAA adopted, by

reference, the protections available to actual Public Health Service officers and

employees under 42 U.S.C. § 233(a), it is well-established that the 1970 enactment

of 42 U.S.C. 233(a) reflected Congress's "concern . . . with common law malpractice

liability." *Castaneda v. United States*, 546 F.3d 682, 693 (9th Cir. 2008), *rev'd on*

*other grounds*, *Hui v. Castenada*, 559 U.S. 799 (2010).

Any lingering doubt about the protections Congress afforded under 42 U.S.C.

233(a) was conclusively put to rest when it enacted the FSHCAA to extend those same protections to otherwise private entities and individuals. *See El Rio Santa Cruz Neighborhood Health Ctr.*, 396 F.3d at 1268 ("Congress enacted the FSHCAA to relieve publicly funded health centers of the burden of rising malpractice insurance costs."); H.R. Rep. No. 104-398, at 4–8 (1995) (referring throughout to health centers' "malpractice" coverage under Section 233); *see also Tyler-Bennett v. United States*, No. 3:16-cv-2300, 2018 WL 3150676, at *2 (D. Or. June 27, 2018) (Simon, J.) (recognizing that "[t]he intent of the Program is to increase the availability of funds to grantee Health Centers by reducing or eliminating their medical malpractice insurance premiums").

Here, Plaintiffs' negligence claim does not involve death resulting from the negligent performance of medical services to Saylor Moretti. It is, therefore, not a malpractice claim covered under the FSHCAA.[3]

---

3 To the extent Plaintiff may rely upon the words "related functions," located within the broader clause "medical, surgical, dental, or *related functions*," to encompass the conduct at issue in this case, that reliance is misplaced, both as a statutory interpretation matter and for the reasons explained herein regarding Congress's clear intent to cover only medical malpractice when it enacted the FSHCAA. As a pure statutory interpretation matter, the words "related functions" are general words following specific examples in statutory enumeration, requiring that "related functions" be construed to be embrace only those things similar in nature to the specific words. *Dolan v. United States*, 546 U.S. 481, 486 (2006). "Related functions" must take its meaning from the context and purpose of the statute as a whole to prevent from ascribing it unintended breadth. *Id.* That is particularly true where, as here, the term "related" is unhelpful, for relations logically stop nowhere. *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). Section 233(a) and the FSHCAA were intended to protect certain individuals from lawsuits predicated upon conduct amounting to medical malpractice, nothing more. If the Court desires a more fulsome briefing, detailing the ordinary dictionary meanings of medical, surgical,
Page  10 – UNITED STATES' MOTION TO DISMISS

For example, Plaintiffs' summary of Clinic Defendants' alleged misconduct is that Clinic Defendants created "an unreasonable risk of foreseeable harm that resulted in the death of Saylor Moretti." Am. Compl. ¶ 12.[4]  Similarly, Plaintiffs repeatedly alleged that Clinic Defendants "knew or should have known" of the unreasonable risks but were negligent in one or more particulars. *Id.* at ¶ 14. The Amended Complaint neither alleges that the negligent performance of any medical function caused Saylor Moretti's death, nor that any medical professional owed a duty that it breached by falling below the relevant standard of care used by such medical professionals in the community.

The Complaint further does not allege that the incident occurred during any

---

and dental as they would have been understood in 1970, the United States stands ready to do so at the Court's invitation.

4  The FSCHAA is a federal statute limiting both the class of individuals and the category of claims for which the FTCA's remedy against the United States is made exclusive. Federal, not state law, therefore determines the scope of the statute's operative language. *See Laird v. Nelms*, 406 U.S. 797, 799 (1972); *United States v. Neustadt*, 366 U.S. 696, 705-06 (1961); *Trombley v. U.S. Dep't of the Army*, 666 F.2d 444, 446 (9th Cir. 1982); *Felder v. United States*, 543 F.2d 657, 669 (9th Cir. 1976) (interpretation and application of the FTCA is a matter of federal, not state law).
We nevertheless observe that Plaintiffs' complaint facially alleges the elements of an ordinary negligence claim under Oregon law (often referred to as the "*Fazollari*" standard), in contrast to the elements for a medical malpractice action. The *Fazollari* elements require a showing that defendant's conduct created a foreseeable risk of harm, that the risk is to an interest the law protects against negligent invasion, that the defendant's conduct was unreasonable in light of the risk, that the conduct caused the harm, and that the plaintiff was within the class of persons protected and the injury the type protected against the defendant's alleged negligent conduct. *Son v. Ashland Cmty. Healthcare Servs.*, 239 Or. App. 495, 506 (2010) (quotations and citations omitted).
A professional medical malpractice action, by contrast, applies different standards and requires different proof, standards that plaintiff notably fails to allege apply in this case. *Id.*

medical appointment or during any other kind of professional medical treatment. The underlying event occurred when Nicole Moretti and Saylor Moretti were sleeping together in their private room at the LOC. There were no medical providers involved in overnight monitoring of sleeping arrangements at the LOC. The challenged actions and omissions concern policymaking, staffing, training, supervision, and the allocation of resources relating to monitoring sleeping arrangements.[5] Thus, this negligence claim is not a medical malpractice claim, and therefore, does not involve covered actions and omissions under FSHCAA. 42 U.S.C. § 233(a), (g).

## II.    The FTCA's Discretionary Function Exception Bars Plaintiff's Claim

Alternatively, to the extent the Court is inclined to find the allegations covered under FSHCAA and treat Clinic Defendants as federal employees for purposes of the conduct giving rise to suit, Plaintiffs' claim against the United States is barred by the FTCA's discretionary function exception. The challenged conduct includes policymaking, staffing, training, and resource allocation decisions, all involving an element of judgment and susceptible to policy analysis.

The FTCA's waiver of sovereign immunity is limited by statutory exceptions,

---

[5] Plaintiffs' allegation that Clinic Defendants failed to provide a crib, likewise, concerns both alleged duties that a premises owner might owe to an overnight guest, as well as the allocation of resources and does not sound in medical malpractice. *See* Am. Compl. ¶ 14(b). Moreover, the truth of this allegation should not be presumed, and the United States is prepared to make a factual attack on jurisdiction under Rule 12(b)(1) by providing evidence demonstrating that a crib was provided in this case if the Court so requires it.

and if any claim falls within any of these exceptions, "then the federal courts lack subject matter jurisdiction to hear her claims." *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000) (citation omitted). "The United States bears the burden of proving the applicability of the discretionary function exception." *See Bailey v. United States*, 623 F.3d 855, 859 (9th Cir. 2010) (citing *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008)). The discretionary function exception is "an important exception to the FTCA" that covers those acts of discretion that involve an element of judgment or choice, even if the acting employee abused that discretion. *Lam v. United States*, 979 F.3d 665, 671–72 (9th Cir. 2020). The exception provides:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused

28 U.S.C. § 2680(a). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* ("*Varig Airlines*"), 467 U.S.797, 808 (1984)). "[T]he purpose of the exception is to 'prevent judicial second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *United States v. Gaubert*, 499 U.S.

Page  13 – UNITED STATES' MOTION TO DISMISS

315, 323 (1991) (quoting *Varig Airlines*, 467 U.S. at 814). "Therefore, where the DFE applies, the United States has not waived its sovereign immunity, and the district court lacks subject matter jurisdiction over a plaintiff's claim." *Lam*, 979 F.3d at 672.

The Ninth Circuit applies a two-step analysis for evaluating the applicability of the discretionary function exception. "First, we ask whether the challenged actions involve 'an element of judgment or choice.'" *Sabow v. United States*, 93 F.3d 1445, 451 (9th Cir. 1996) (quoting *Gaubert*, 499 U.S. at 322). "If a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow[,]' the act is not discretionary because 'the employee has no rightful option but to adhere to the directive.'" *Nieves Martinez v. United States*, No. 19-16953, 2021 WL 1881388, at *6 (9th Cir. May 11, 2021) (quoting *Berkovitz*, 586 U.S. at 322–23). "This step is called the 'discretionary act' prong of the discretionary function exception analysis." *Gonzalez v. United States*¸ 814 F.3d 1022, 1027 (9th Cir. 2016) (quoting *Sabow*, 93. F.3d at 1451).

"If the government action did involve choice or judgment, the second step is to determine 'whether that judgment is of the kind that the discretionary function exception was designed to shield, namely, only governmental actions and decisions based on considerations of public policy.'" *Green v. United States*, 630 F.3d 1245, 1249 (9th Cir. 2011) (quoting *Terbrush*, 516 F.3d at 1129). "More specifically, 'if the judgment involves considerations of social, economic, or political policy, the exception applies.'" *Sabow*, 93 F.3d at 1451 (quoting *In re Glacier Bay*, 71 F.3d

Page 14 – UNITED STATES' MOTION TO DISMISS

1447, 1450 (9th Cir. 1995)). "We refer to this as the 'policy judgment' prong.'"

*Gonzalez*, 814 F.3d at 1028 (citing *Sabow*, 93 F.3d at 1451).

## A.    *The Challenged Actions Are Discretionary Acts Involving an Element of Judgment or Choice*

Clinic Defendants' actions and omissions regarding their supervision of overnight sleeping arrangements, which must, if the United States is a proper defendant under the FSHCAA, be treated "as if" the conduct had been carried out by the United States through Public Health Service employees, were discretionary acts not prescribed by any mandatory federal law or policy. The policymaking, staffing, training, and client-supervision acts at issue were all discretionary acts subject to the exception. *See* Am. Compl. ¶ 14.

Regarding the sufficiency of Clinic Defendants' co-sleeping policies, it is well established that "the promulgation of policies and rules is protected by the FTCA's discretionary function exception." *Nurse*, 226 F.3d at 1002 (collecting cases). Plaintiff also challenges the adequacy, training, and supervision of LOC's staff. Allegedly negligent employment, supervision, and training of federal employees "fall squarely within the discretionary function exception." *Id.* at 1001–02 (collecting cases recognizing that employee training, supervision, and retention are discretionary acts).

Relatedly, Plaintiffs' allegations that LOC failed to monitor the Morettis overnight as they slept describes a discretionary act. First, this allegation challenges how LOC allocates its personnel resources, which is a discretionary act as established above. Second, the Ninth Circuit has found this type of act

Page  15  – UNITED STATES' MOTION TO DISMISS

discretionary in other contexts. *See e.g.*, *Alfrey v. United States*, 276 F.3d 557, 567 (9th Cir. 2002) (holding that officials' acts regarding investigations and searches of cells for safety risks was discretionary where no course of action was prescribed); *Terbush*, 516 F.3d at 1135–36 (collecting cases in public-lands context determining the safety of particular areas and whether and how to allocate resources to them is discretionary); *Reed ex rel. Allen v. U.S. Dep't of Interior*, 231 F.3d 501, 506 (9th Cir. 2000) (holding that the context of event monitoring, "the nature and extent of monitoring clearly involves both discretion on the part of [federal] employees and a balancing of public concerns").

Further, no federal law or policy dictated Clinic Defendants' course regarding the challenged actions. An action satisfies the discretionary act prong "where no statute or agency policy dictates the precise manner in which the agency is to complete the challenged task." *Green*, 630 F.3d at 1250 (citing *Childers v. United States*, 40 F.3d 973, 976 (9th Cir. 1995)). "If the employee acted with discretion, the DFE restores the government's immunity, and plaintiff loses." *Lam*, 979 F.3d at 673. The policies of the involved federal agency, and not Clinic Defendants' internal policies, are relevant for determining whether this prong is met. *See Gonzalez*, 814 F.3d at 1027 (recognizing that federal employees must follow federal statutes, regulations, or policies that specifically prescribe a course of action for an employee to follow). No federal statute nor regulation prescribe Clinic Defendants' operations regarding the supervision of overnight sleeping arrangements at LOC. *See generally*, 42 C.F.R. Ch. 1, Subchs. A & D (covering general provisions under

FSHCAA and requirements for grant recipients under the Act). Clinic Defendants had discretion to choose whether and how to conduct overnight monitoring at the LOC. Therefore, because the challenged actions involved an element of judgment and choice and no statute prescribed the precise manner in which Clinic Defendants undertook those actions, the discretionary act prong is satisfied.

## B.    *The Challenged Actions Are Susceptible to a Policy Analysis*

Clinic Defendants' actions and omissions regarding their policymaking, staffing, training, and supervision related to the monitoring of co-sleeping were susceptible to a policy analysis. Once the discretionary act prong is met, the focus of the inquiry is "on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. First, if the relevant policies permit discretion, "then we must presume that an agent's acts or omissions are grounded in policy, whether or not we suspect that the discretion involved has been abused." *Gonzalez*, 814 F.3d at 1036 (citing *Gaubert*, 499 U.S. at 324). Because no federal law prescribes a specific course of conduct here, a "strong presumption" arises that Clinic Defendants' actions "were grounded in policy considerations." *Id.* at 1032 (citing *Gaubert*, 499 U.S. at 499). "[T]he government is not required to prove either that an affirmative decision was made, or that any decision actually involved the weighing of policy considerations, in order to claim the immunity." *Id.* (citing *Terbush*, 516 F.3d at 1136 n.5). "The discretionary function exception applies so long as the challenged decision is one to which a policy analysis could apply." *Id.* (citing *Weissich v. United States*, 4 F.3d 810, 813 (9th Cir. 1993)).

Here, Clinic Defendants' decisions regarding the allocation of staff, policymaking, training, and supervision are the types of actions that, by their nature, are susceptible to a policy analysis. *See Nurse*, 226 F.3d at 1001. First, the Ninth Circuit has recognized that policymaking decisions as well as employment-, training-, and supervision-related decisions involve policy considerations. *Id.* at 1001–02. Decisions regarding personnel allocation and assigning resources are protected by the discretionary function exception. *Id.*; *see also Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("[D]ecisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield."). Because Clinic Defendants' actions relating to monitoring sleeping arrangements at LOC are susceptible to policy analysis, the policy judgment prong has been satisfied. Therefore, Plaintiffs' claim against the United States should be dismissed for lack of subject matter jurisdiction.

## III. Nicole Moretti Failed to Exhaust Her Administrative Remedies and Any Claim She Might Have Against the United States is Forever Barred

Nicole Moretti did not present her claim in writing to HHS during the period prescribed by law before bringing this lawsuit, depriving this Court of subject matter jurisdiction over any claim she might have against the United States arising from the underlying incident. No action may be instituted against the United States unless and until the plaintiff/claimant has first presented a claim to the appropriate agency and the claim has been finally denied. 28 U.S.C. § 2675(a). This requirement

is jurisdictional and must be fulfilled by each claimant prior to the invocation of the judicial process. *Cadwalder v. United States*, 45 F.3d 297, 300-01 (9th Cir. 1995); *McNeil v. United States*, 508 U.S. 106, 112-13 (1993). Separately, the FTCA requires that a claim be presented to the appropriate agency within two years of the date the claim accrues. 28 U.S.C. § 2401(b).

In this case, Saylor Moretti's death was on October 4, 2019, and Nicole Moretti had until October 4, 2021, to file her own claim. Am. Compl. ¶ 4. On March 31, 2021, Wendy Novins, as the personal representative of the estate of Saylor Moretti, filed an SF-95 form solely on behalf of the estate. Am. Compl. ¶ 9, *see also* Attach. 1 (March 31, 2021, SF-95 Form).[6] Nicole Moretti was not a claimant named in the SF-95 form. The original complaint erroneously named Nicole Moretti as the estate's representative. *See* Compl. ECF No. 1. Upon amendment, Wendy Novins replaced Nicole Moretti as the estate's representative and Nicole Moretti was separately named as a Plaintiff. *See* Am. Compl. Under Oregon law, only the personal representative of the decedent's estate—Wendy Novins in this case—may bring a wrongful death claim. *See* Or. Rev. Stat. ("O.R.S.") § 30.020(1). Here, Nicole Moretti was added as a Plaintiff but only the single wrongful death claim is alleged. To the extent the Amended Complaint could be construed to include allegations and claims on Nicole Moretti's behalf, those allegations must be dismissed with

---

6 Under the incorporation by reference doctrine, the Court is permitted to take into account documents whose contents are alleged in the Amended Complaint and whose authenticity no party questions. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

prejudice.

Because Nicole Moretti did not exhaust her administrative remedies prior to invoking the judicial process on her individual claims, this Court lacks subject-matter jurisdiction over them. Moreover, because more than two years has lapsed since her claims accrued, Nicole Moretti's claims against the United States are now "forever barred." 28 U.S.C. § 2401(b).

## CONCLUSION

Based on the foregoing, the United States respectfully requests that the Court grant this Motion and dismiss Plaintiffs' claim against the United States for lack of subject matter jurisdiction.


Dated: June 24, 2022.

> SCOTT ERIK ASPHAUG
> United States Attorney
> District of Oregon
>
> */s/ Michael Jeter*
> MICHAEL JETER
> Assistant United States Attorney
> Attorney for Defendant