**NATALIE K. WIGHT, OSB #035576**
United States Attorney
District of Oregon
**MICHAEL J. JETER, OSB #165413**
Assistant United States Attorney
michael.jeter@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1000
     Attorneys for Defendant United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **NICOLE MORETTI, and WENDY NOVINS, as Personal Representative of the Estate of SAYLOR MORETTI, deceased**<br><br>        Plaintiffs,<br>v.<br><br>**LETTY OWINGS CENTER, CENTRAL CITY CONCERN, and/or the UNITED STATES acting through the DEPARTMENT OF HEALTH AND HUMAN SERVICES,**<br><br>        Defendants. | Case No.: 3:21-cv-01525-SI<br><br>DECLARATION OF SEAN M. FLAIM IN SUPPORT OF UNITED STATES' REPLY IN SUPPORT OF MOTION TO DISMISS |

Page 1     DECLARATION OF SEAN M. FLAIM IN SUPPORT OF UNITED
           STATES' REPLY IN SUPPORT OF MOTION TO DISMISS

I, Sean M. Flaim, hereby declare:

1. I am an attorney in the Employment and Claims Branch, General Law Division, Office of General Counsel, U.S. Department of Health and Human Services ("HHS"). My primary area of work involves administrative tort claims filed under the Federal Tort Claims Act ("FTCA") and related federal court litigation. Through this work, I am familiar with the official records of HHS as well as the methods by which these records are indexed and maintained.

2. I am the primary HHS attorney assigned to this litigation. In the course of my work, I have reviewed each and every document that has been provided to HHS by the Plaintiffs and Central City Concern ("CCC") since the filing of the administrative tort claim. I have also received official HHS records from the Health Resources & Services Administration ("HRSA"), including copies of the approved grant and deeming applications submitted previously by CCC to HRSA.

3. CCC is HRSA Health Center Program Award Recipient. This means that CCC filed a grant application with the HRSA Bureau of Primary Health Care under the Health Center Program as authorized by Section 330 of the Public Health Service Act, 42 U.S.C. § 254b, and HRSA, in turn, approved the grant. Specifically, CCC applied for and received funding from the Health Care for the Homeless Program, which is authorized under Section 330(h) of the Public Health Service Act, 42 U.S.C. § 254b(h). Attached to this declaration

as Exhibit A is a true and correct copy of the grant application filed by CCC for funding in Calendar Year 2019.

4. CCC is also a Federally Qualified Health Center ("FQHC") as certified by the Centers for Medicare & Medicaid under the authority set forth in Section 1905(l)(2)(B) of the Social Security Act, 42 U.S.C. § 1396d(l)(2)(B). An FQHC qualifies for specific reimbursements under Medicare and Medicaid for medical services provided by the entity.

5. Under the Federally Supported Health Centers Assistance Act of 1992, as amended in 1995 ("FSHCAA"), 42 U.S.C. § 233(g)–(n), a Health Center Program Award Recipient may apply for and be deemed an employee of the Public Health Service. 42 U.S.C. § 233(g)(1)(A), by the Secretary of Health and Human Services. This deeming authority was delegated from the Secretary to the Associate Administrator of the Bureau of Primary Health Care, HRSA. Such deeming affords FTCA medical malpractice coverage to the health center and its employees. 42 U.S.C. § 233(a) ("The remedy against the United States provided by sections 1346(b) and 2672 of title 28 … for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions … by any [] employee of the Public Health Service while acting within the scope of his [] employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the [] employee [] whose act or omission gave rise to the claim."); § 233(g) (incorporating the limitations of paragraph (a) to

entities deemed employees of the Public Health Service).

6. CCC made an application for deeming to HRSA in 2018 for coverage in Calendar Year 2019. Attached to this declaration as Exhibit B is a true and correct copy of the application made by CCC for redeeming for Calendar Year 2019.

7. In turn, HRSA issued a Notice of Deeming Action granting deemed status to CCC for Calendar Year 2019. Attached to this declaration as Exhibit C is a true and correct copy of the HRSA Notice of Deeming Action. The Notice states that the coverage was limited to claims involving injury or death resulting from the performance of medical, surgical, dental, or related functions, and describes the coverage as medical malpractice coverage.

8. As noted in the Notice of Deeming Action, deeming of an entity is subject to the terms and conditions incorporated either directly or by reference in the authorizing program legislation, the program regulations set forth in 42 C.F.R. Part 6, and the FTCA Health Center Policy Manual ("HC Policy Manual"). Attached to this declaration as Exhibit D is a true and correct copy of the HC Policy Manual.

9. Once an entity is deemed, a claimant must follow the procedures set forth in the FTCA, including the requirement to submit an administrative claim to the appropriate Federal agency and have that claim finally denied or the expiration of a six-month waiting period at which point the claim is deemed finally denied. 28 U.S.C. § 2675.

10. In the case of a FSHCAA-deemed entity, the claim is submitted to HHS. Specifically claims are received and reviewed by the Employment and Claims Branch where I work. Attached to this declaration as Exhibit E is a true and correct copy of the claim submitted by Wendy Novins, PR for the Estate of Saylor Moretti. I have searched HHS official records and this is the only claim that was submitted related to this matter.

11. According to the claim, Nicole Moretti was the mother of Saylor Moretti. Nicole Moretti was a patient of CCC at the Letty Owings Center ("LOC"). Saylor Moretti was one-month old when he passed due to co-sleeping or being crushed by the weight of Nicole Moretti. The claim alleges that CCC and LOC were negligent in failing to train its staff, failing to supervise its staff, failing to explicitly have a policy on co-sleeping, failing to provide a crib in the room for Saylor, and failing to monitor patients to prevent an unreasonable risk of co-sleeping.

12. Upon receipt of the claim, HHS requests additional information from the claimant as well as information from the deemed entity. The remainder of this declaration concerns documents received by HHS from CCC in response to the administrative tort claim filed by Wendy Novins, unless noted otherwise.

13. CCC provided a document entitled "Welcome to Letty Owings Center." Attached to this declaration as Exhibit F is a true and correct copy of this document. As the document notes, a patient at the LOC is assigned a clinical

team and counselor. Exh. E at 2. Patients at LOC receive a mixture of group and individual therapy, including coping with trauma, conflict resolution, relapse prevention and self-help meetings, as well as more general education in life skills including resolving adverse rental history and financial literacy. *Id.* at 2–3. While patients at the LOC are participating in these activities, their children are watched either by the on-site nursery (for children 12 months and under) or by off-site childcare (for children over one year). *Id.*

14. Official HHS records also contain a brochure titled "Letty Owings Center." Attached to this declaration as Exhibit G is a true and correct copy of this brochure. In the brochure, LOC is described as a residential treatment and continuing care service for chemically dependent women, especially those pregnant and/or parenting women with young children. With respect to women in residence, services of LOC include medical referrals for women and children, mental health assessments, group counseling, education, individual and family counseling, referral for dental care, and weekly sewing classes. For children, a registered nurse is on site, part-time, and the center provides childcare planning, childcare while mothers participate in groups and classes, parenting assistance, and referral to mental health agencies when appropriate.

15. CCC provided documents that Nicole Moretti filled out when came to the LOC including documents entitled "Commitment to Support Pro-Social Community" and "Child Care Contract." Attached to this declaration as

Exhibit H are true and correct copies of those documents.

16. CCC's Senior Director of Substance Use Disorder Services, Amanda Risser, M.D., provided a narrative describing the incident at issue in this litigation. Attached to this declaration as Exhibit I is a true and correct copy of this statement. In the statement, Dr. Risser states that Nicole Moretti entered residential treatment at LOC on August 8, 2019, while pregnant with her child. She gave birth on September 7, 2019, to Saylor Moretti. Nicole Moretti's plan of care included alcohol and drug treatment implemented by clinical and milieu staff at LOC, including TAs [treatment assistants], case managers, parent trainers, Certified Alcohol and Drug Counselors, nursing staff, and Dr. Risser as the LOC medical director. With respect to medical care given to infants, nurses provide triage, but otherwise LOC coordinates medical care with outside pediatric providers. With regard to children, the parent of the child is responsible for the safety of the children when they are outside of the on-site licensed childcare facility. At night, LOC treatment assistant staff perform bed checks for unsafe sleep.

17. CCC provided HHS with a position description for a Female Treatment Assistant I ("FTA"). Attached to this declaration as Exhibit J is a copy of the position description. As noted in the description, the only training requirements for an FTA are CPR and the twelve-step recovery process. No education requirements are noted.

18. While in residence at LOC, Saylor Moretti was seen twice by a LOC nurse on

September 17 and 30, 2019. Attached to this declaration as Exhibit K is a true and correct copy of the nurse's notes. The September 17, 2019, visit was an initial assessment after Nicole Moretti returned to LOC. As noted, the only medical concern regarding the infant was a diaper rash. The September 30, 2019, visit was for congestion. The nurse taught Nicole Moretti how to suction the infant's nose.

19. CCC provided HHS with two schedules for overnight shifts, termed by CCC as the graveyard shift. Attached to this declaration as Exhibit L are copies of these two schedules. During the overnight shift, treatment associates are responsible for bed checks, laundry, preparing paperwork for the next day, and for distributing medications.

20. CCC provided HHS with an incident report regarding the events of this litigation. Attached to this declaration as Exhibit M is a true and correct copy of this incident report. According to the report, at approximately 9:15 a.m., during room checks, staff member Allie Smith knocked on Nicole Moretti's door. When Nicole answered the door, she appeared to have just woken up. Upon entering the room, Allie was unable to see the infant. After searching, the child was found on Nicole Moretti's bed under a blanket, purple and non-responsive. Allie initiated CPR and Todd Jeter, another employee, called 911.

21. Attached to this declaration as Exhibit N is a true and correct copy of CCC's "Healthcare Facility Professional and General Liability Insurance Policy." CCC provided proof of this gap or wrap-around coverage to HHS, which

Page 8    DECLARATION OF SEAN M. FLAIM IN SUPPORT OF UNITED
         STATES' REPLY IN SUPPORT OF MOTION TO DISMISS

includes coverage for activities not covered by FSHCAA.

22. Attached to this declaration as Exhibit O is a true and correct copy of U.S. Centers for Medicare and Medicaid Services ("CMS") Joint CMS and Administration for Children & Families ("ACF") Informational bulletin dated October 5, 2020, which is an official publication of HHS. This particular statement discusses Family-Focused Residential Treatment facilities like the LOC and discusses the services within such programs that are Medicaid reimbursable as medical care.

23. Finally, attached to this declaration as Exhibit P is a true and correct copy of the Bureau of Primary Health Care Policy Information Notice ("PIN") 93-19 dated July 2, 1993.

**I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty of perjury.**

Executed this 9th day of September, 2022.

*/s/ Sean M. Flaim*
SEAN M. FLAIM
General Attorney