

## HEALTHCARE FACILITY PROFESSIONAL AND
## GENERAL LIABILITY INSURANCE POLICY

Physicians Insurance is a non-assessable mutual insurance company.

The Board of Directors of Physicians Insurance A Mutual Company may in its discretion from time to time apportion and pay dividends to policyholders entitled thereto in accordance with its reasonable classifications of participating policies and of the risks assumed under such policies. While this Policy is in force the policyholder may be entitled to receive such a dividend.

The **named insured** identified on the Declarations of this Policy is a policyholder and a member of the Company entitled to all the rights and obligations of such membership.

The annual meeting of the members of Physicians Insurance A Mutual Company shall be held at 1:00 p.m. on the last Monday of April of each year at the Company's home office in Seattle, WA.

This Policy is not complete unless the Declarations is attached. Please review the Policy carefully.

**Seattle Office**
1301 Second Avenue, Suite 2700
PO Box 91220
Seattle, WA  98111
(206) 343-7300
(800) 962-1399

Exhibit N, Page 1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    COVERAGE AGREEMENTS .................................................................................... 1
Coverage A:  Professional Liability ................................................................................ 1
Coverage B:  Peer Review Liability ............................................................................... 1
Coverage C:  Disciplinary Proceeding Defense Reimbursement ................................. 2
Coverage D:  Commercial General Liability .................................................................. 2
Coverage E:  Employee Benefits Liability (Optional Coverage) ................................... 2
Coverage F:  Medical Expense Coverage .................................................................... 3
Coverage G:  Excess Liability Coverage (Optional Coverage).................................... 3
Coverage H:  Pollution and Mold Liability Coverage (Optional Coverage) .......................... 3
Coverage I:    Limited Coverage for Sexual Misconduct or Sexual Activity  (Optional
            Coverage)................................................................................................. 4
II.    REPORTING CLAIMS TO COMPANY ................................................................... 5
III.   DEFENSE AND SETTLEMENT OF CLAIMS AND LAWSUITS ............................. 7
IV.   MUTUAL EXCLUSIVITY OF COVERAGES .......................................................... 8
V.    EXCLUSIONS ...................................................................................................... 9
    A.    Exclusions Applicable to All Coverages .......................................................... 9
    B.    Exclusions Applicable to Coverage A ............................................................ 12
    C.    Exclusions Applicable to Coverage B ............................................................ 13
    D.    Exclusions Applicable to Coverage C ............................................................ 13
    E.    Exclusions Applicable to Coverage D ............................................................ 14
    F.    Exclusions Applicable to Coverage E ............................................................ 18
    G.    Exclusions Applicable to Coverage F ............................................................ 19
    H.    Exclusions Applicable to Coverage G ............................................................ 19
    I.    Exclusions Applicable to Coverage I .............................................................. 19
VI.   SUPPLEMENTARY PAYMENTS ......................................................................... 19
VII.  DEFINITIONS ..................................................................................................... 20
VIII. LIMITS OF INSURANCE .................................................................................... 34
IX.   CONDITIONS ...................................................................................................... 36
    A.    Insured's Duty to Give Notice ....................................................................... 36
    B.    Assistance and Cooperation of the Insured ................................................... 37
    C.    Voluntary Payments ....................................................................................... 37
    D.    Subrogation ................................................................................................... 38
    E.    Other Insurance ............................................................................................. 38

Exhibit N, Page 2

F.  Policy Territory ................................................................................................ 38
G.  Premium .......................................................................................................... 38
H.  Inspection and Audit ...................................................................................... 39
I.  Action Against the Company .......................................................................... 39
J.  Insolvency of Insured ..................................................................................... 39
K.  Changes .......................................................................................................... 39
L.  Assignment ..................................................................................................... 40
M.  Liberalization .................................................................................................. 40
N.  Communication with Insured .......................................................................... 40
O.  Cancellation .................................................................................................... 40
P.  Renewal/Nonrenewal ..................................................................................... 41
X.  EXTENDED REPORTING ....................................................................................... 41

Exhibit N, Page 3

**HEALTHCARE FACILITY
PROFESSIONAL AND GENERAL LIABILITY INSURANCE POLICY**

**THIS POLICY IS WRITTEN ON A CLAIMS REPORTED BASIS.
UNLESS OTHERWISE INDICATED BELOW, THIS POLICY ONLY APPLIES TO CLAIMS
REPORTED TO THE COMPANY DURING THE POLICY PERIOD.**

In consideration of the payment of applicable premium and subject to the Declarations and all of the conditions, exclusions, and other terms of this Policy, Physicians Insurance A Mutual Company (herein referred to as the Company) agrees with the **named insured** as follows:

**I.     COVERAGE AGREEMENTS**

Coverage A:  Professional Liability

The Company will pay those sums the **insured** shall become legally obligated to pay as **damages**:

1.     because of **direct patient treatment** rendered by an **insured** in the practice of the **insured's** profession on behalf of the **named insured**; or

       because of the **insured's vicarious liability**;

2.     and *provided*:

       a.     that such legal obligation is for **claims** or **potential claims** for **Professional Liability Injury**;
       b.     the **Professional Liability Injury** arose out of a **medical incident**;
       c.     the **medical incident** occurred on or after the **retroactive date**; and
       d.     the **claim** or **potential claim** was first reported to the Company during the **policy period**.

Coverage B:  Peer Review Liability

The Company will pay those sums the **insured** shall become legally obligated to pay as **damages** because of:

1.     acts or decisions of the **named insured's** formal accreditation, standards review or similar professional board or committee;

2.     services rendered by the **insured** for such board or committee; or

3.     services rendered by the **insured** for the **Company peer review program**;

*provided* that such legal obligation is for **claims** or **potential claims** first reported to the Company during the **policy period** arising out of acts, decisions or services described above in subparagraphs 1., 2., or 3., performed or rendered on or after the **retroactive date**.

Exhibit N, Page 4

Coverage C:  Disciplinary Proceeding Defense Reimbursement

The Company will reimburse the **named insured** for reasonable attorney fees paid by the **named insured** to an attorney of the **named insured**'s choice for legal services rendered in connection with an investigation by the state health care disciplinary authority of any **employee** or **contract healthcare provider** of the **named insured**, *provided*:

the investigation arises out of **direct patient treatment** rendered by such **employee** or **contract healthcare provider** on behalf of the **named insured** on or after the applicable **retroactive date** and prior to the end of the **policy period**; and

1.      such investigation is first reported to the Company during the **policy period**; or

2.      such investigation is first reported to the Company after the **policy period**, *provided* such investigation arises out of a **claim** or **potential claim** covered by Coverage A of this Policy which was first reported to the Company during the **policy period**.

Coverage D:  Commercial General Liability

The Company will pay those sums the **insured** shall become legally obligated to pay as **damages** because of a **claim** or **potential claim** for **General Liability Injury** arising out of operations of the **named insured**, *provided*:

1.      the **General Liability Injury** arose out of an **incident**;

2.      the **incident** occurred on or after the **retroactive date**; and

3.      the **claim** or **potential claim** was first reported to the Company during the **policy period**.

Coverage E:  Employee Benefits Liability
             (Optional Coverage)

THIS COVERAGE IS PROVIDED ONLY IF THE DECLARATIONS OR AN ENDORSEMENT SHOWS THAT A PREMIUM WAS CHARGED FOR COVERAGE E UNDER THIS POLICY.

Provided the Declarations or an endorsement to this Policy shows that a premium was charged for Coverage E under this Policy, the Company will pay on behalf of the **insured** those sums the **insured** shall become legally obligated to pay as **damages** because of a negligent act, error or omission of the **insured**, or of any person for whose acts the **insured** is legally liable, committed in the **administration** of the **named insured's employee benefit programs**;

*provided* that such legal obligation is for **claims** or **potential claims** first reported to the Company during the **policy period** arising out of the **administration** of the **named insured's employee benefit programs** after the **retroactive date**.

Exhibit N, Page 5

Coverage F:  <u>Medical Expense Coverage</u>

The Company will pay reasonable out of pocket **medical expense** incurred by an injured person for **bodily injury** caused by an accident which arises out of:

1.      a condition in the **named insured's** premises; or

2.      operations with respect to which the **named insured** is afforded coverage under Coverage D of this Policy;

      *provided*:

      a.      the accident occurs on or after the **retroactive date** and during the **policy period**; and

      b.      the **medical expense** is incurred and reported to the Company within one year of the date of the accident.

The Policy in effect at the time of the accident governs the rights and obligations of the parties.  This coverage applies irrespective of whether any **insured** is at fault for the accident.  Payment hereunder does not constitute an admission of liability on behalf of any **insured**.

Coverage G:  <u>Excess Liability Coverage</u>
             <u>(Optional Coverage)</u>

THIS COVERAGE IS PROVIDED ONLY IF THE DECLARATIONS OR AN ENDORSEMENT SHOWS THAT A PREMIUM WAS CHARGED FOR COVERAGE G UNDER THIS POLICY.

Provided the Declarations or an endorsement to this Policy shows that a premium was charged for Coverage G under this Policy, the Company will pay those sums in excess of Limits of Insurance available to the **insured** under Coverages A or D, and under Coverage E if the Company has charged a premium under this Policy for Coverage E, that the **insured** shall become legally obligated to pay as **damages** because of a **claim** that is covered by Coverage A, D or E of this Policy, or that would be covered by Coverage A, D or E of this Policy but for exhaustion of the Limits of Insurance for such Coverage.  No other obligation or liability to pay sums or to perform acts or services is undertaken under this Coverage G.

Coverage H:  <u>Pollution and Mold Liability Coverage</u>
             <u>(Optional Coverage)</u>

THIS COVERAGE IS PROVIDED ONLY IF THE DECLARATIONS OR AN ENDORSEMENT SHOWS THAT A PREMIUM WAS CHARGED FOR COVERAGE H UNDER THIS POLICY.

Provided the Declarations or an endorsement to this Policy shows that a premium was charged for Coverage H under this Policy, the Company will pay those sums, including

Exhibit N, Page 6

**defense costs**, that the **insured** shall become legally obligated to pay as **damages** because of **Pollution Liability Injury** or **Mold**, **Mildew or Other Fungi Injury** arising out of operations of the **named insured**, *provided*:

1.  the presence, discharge, dispersal, seepage, migration, release or escape of the **pollutants**, or the presence of the **mold**, **mildew or other fungi** arose out of an **incident**;

2.  the **incident** occurred on or after the **retroactive date**;

3.  the presence, discharge, dispersal, seepage, migration, release or escape of the **pollutants**, the presence of the **mold**, **mildew or other fungi**, the **Pollution Liability Injury** or the **Mold**, **Mildew or Other Fungi Injury** was first reported to the Company during the **policy period**;

4.  the **insured's** liability for such **Pollution Liability Injury** or **Mold**, **Mildew or Other Fungi Injury** would be covered by Coverage D but for exclusion V.E.20 of this Policy; and

5.  neither the **insured** nor the **named insured** had actual or constructive notice prior to the inception of the first **policy period** of continuous coverage with the Company containing Coverage H of:

    a.  the presence, discharge, dispersal, seepage, migration, release or escape of the **pollutants**;
    b.  the **Pollution Liability Injury**;
    c.  the presence of the **mold**, **mildew or other fungi**; or
    d.  the **Mold**, **Mildew or Other Fungi Injury**.

No other obligation or liability to pay sums or to perform acts or services is undertaken under this Coverage H.

Coverage I:    Limited Coverage for **Sexual Misconduct** or **Sexual Activity** (Optional Coverage)

THIS COVERAGE IS PROVIDED ONLY IF THE DECLARATIONS OR AN ENDORSEMENT SHOWS THAT A PREMIUM WAS CHARGED FOR COVERAGE I UNDER THIS POLICY.

Provided the Declarations or an endorsement to this Policy shows that a premium was charged for Coverage I under this Policy, the Company will pay:

1.  **defense costs** on behalf of any **insured**, including the **insured** who is alleged to have engaged in the **sexual misconduct or sexual activity**, *provided* that such **insured** denies that the alleged **sexual misconduct or sexual activity** took place; and **defense costs** and **damages** that the **named insured** becomes legally obligated to pay arising out of the actual or alleged **sexual misconduct or sexual activity** by any **insured**, *provided* that the **named insured** had no knowledge of any actual, alleged, or threatened **sexual misconduct or sexual activity**;

Exhibit N, Page 7

2. and *provided*:

    a. the **sexual misconduct or sexual activity incident** is alleged to have occurred during the course of **direct patient treatment**;

    b. the actual or alleged **sexual misconduct or sexual activity incident** occurred on or after the **retroactive date**; and

    c. the **claim** or **potential claim** was first reported to the Company during the **policy period**.

The **defense costs** and **damages for** actual or alleged **sexual misconduct or sexual activity** payable under paragraph 1 above are subject to the Limit of Insurance for Limited **Sexual Misconduct or Sexual Activity** shown in the Declarations.

## II. REPORTING CLAIMS TO COMPANY

A. <u>Reporting **claims** or **potential claims** under Coverages A, B, D, E, and I</u>

A **claim** is first reported to the Company when the Company receives written notice of a **claim** or **potential claim** from the **insured** against whom the **claim** is or may be asserted or from the **named insured** on behalf of that **insured**.

A **claim** will be deemed first reported to the Company at the earliest of the following times:

1. at the time the **claim** is reported to the Company; or

    a. for the purposes of Coverage A, at the time a **potential claim** arising out of a **medical incident** is reported to the Company, as described in Section IX.A. below.

    b. for the purpose of Coverage B, at the time a **potential claim** arising out of the acts, decisions or services described in Coverage B is reported to the Company, as described in Section IX.A. below.

    c. for the purpose of Coverages D, at the time a **potential claim** arising out of an **incident** is reported to the Company, as described in Section IX.A. below.

    d. for the purpose of Coverage E, at the time a **potential claim** is reported to the Company, as described in Section IX.A. below.

    e. for the purpose of Coverage I, at the time a **potential claim** arising out of actual or alleged **sexual misconduct or sexual activity incident** is reported to the Company, as described in Section IX.A. below.

Exhibit N, Page 8

For the purpose of Coverage A, all **claims** or **potential claims** arising out of the same **medical incident** shall be deemed reported to the Company at the time the first **claim** or **potential claim** against that **insured** arising out of that **medical incident** is deemed reported to the Company.

For the purpose of Coverage B, all **claims** or **potential claims** against an **insured** arising out of the same acts, decisions or services shall be deemed reported to the Company at the time the first **claim** or **potential claim** against the **insured** arising out of those acts, decisions or services is deemed reported to the Company.

For the purpose of Coverage D, all **claims** or **potential claims** arising out of the same **incident** shall be deemed reported to the Company at the time the first **claim** or **potential claim** against that **insured** arising out of that **incident** is deemed reported to the Company.

For the purpose of Coverage E, all **claims** arising out of the same negligent act, error, or omission shall be considered as having been reported at the time the first **claim** arising out of such act, error or omission is deemed reported to the Company.

For the purpose of Coverage I, all **claims** arising out of the same **sexual misconduct or sexual activity incident** shall be deemed reported to the Company at the time the first **claim** or **potential claim** against that **insured** arising out of that actual or alleged **sexual misconduct or sexual activity** is deemed reported to the Company.

The Policy in effect at the time a **claim** is deemed first reported to the Company will govern the rights and obligations of the Company and all **insureds** with respect to such **claim**.

B.  <u>Reporting under Coverage H</u>

For the purpose of Coverage H, the presence, discharge, dispersal, seepage, migration, release or escape of the **pollutants**, the presence of the **mold, mildew or other fungi**, the **Pollution Liability Injury** or the **Mold, Mildew or Other Fungi Injury** will be deemed first reported to the Company at the earliest of the following times:

1.  at the time a **claim** or **potential claim** for **Pollution Liability Injury** or for **Mold, Mildew or Other Fungi Injury** is reported to the Company by the **insured** for whom coverage is sought under Coverage H or by the **named insured** on behalf of that **insured**;

2.  at the time the presence, discharge, dispersal, seepage, migration, release or escape of the **pollutants** is reported to the Company by the **insured** for whom coverage is sought under Coverage H or by the **named insured** on behalf of that **insured**; or

Exhibit N, Page 9

3.     at the time the presence of the **mold**, **mildew or other fungi** is reported to the Company by the **insured** for whom coverage is sought under Coverage H or by the **named insured** on behalf of that **insured**.

The Policy in effect at the first time any of the above are deemed first reported to the Company will govern the rights and obligations of the Company and all **insureds** with respect to all **Pollution Liability Injury** and all **Mold**, **Mildew or Other Fungi Liability** arising out of the same **incident**.

## III.    DEFENSE AND SETTLEMENT OF CLAIMS AND LAWSUITS

A.    <u>Right and Duty to Defend Under Coverages A, B, D, E, G, and I</u>

1.     The Company shall have the right and duty to defend any **lawsuit** containing allegations covered under Coverages A, B, or D of this Policy, or under Coverage E or I if a premium was charged for Coverage E and/or I, and seeking **damages** on account thereof, even if any of the allegations of such **lawsuit** are groundless, false, or fraudulent, but the Company, in its sole discretion, may investigate any **claim** or **potential claim** and may make such settlements, subject to paragraph 2. below, as it deems expedient.

2.     With respect to any **lawsuit** being defended or any **claim** or **lawsuit** being investigated by the Company pursuant to paragraph 1. above, the Company shall have the sole and exclusive right and obligation to investigate, negotiate, evaluate, control and direct the defense of such matter, including but not limited to the right to select legal counsel on behalf of the **insured**.

3.     With respect to Coverage G, if applicable, the Company shall have the right and duty to defend any **lawsuit** containing allegations covered by this Policy when:

a.     the applicable Limits of Insurance of the **underlying policies** listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **insured** have been exhausted by payment of judgments or settlements to which this Policy applies; or

b.     in all other instances except when a. above applies, we will have no duty to defend any **claim** made or **lawsuit** brought against the **insured**.  However, the Company will have the right to participate in the defense and trial of any **claims** or **lawsuits** which, may create liability on our part under the terms of this Policy.

4.     The Company shall not be obligated to pay any **claim** or judgment or to defend any **lawsuit** after the applicable Limits of Insurance under this Policy has been exhausted by payment of judgments or settlements.

Exhibit N, Page 10

5.       The Company shall not be obligated to take an appeal from any order, judgment, judicial or administrative determination of any kind.

6.       The amounts paid by the Company to investigate or defend against a **claim** or **lawsuit** for which it accepts a duty to defend or investigate under Section III.A.1. shall be in addition to, and shall not be deducted from, the Limits of Insurance of the applicable coverage.

B.       Consent to Settle **Claims** or **Lawsuits** under Coverages A, B, I, or G

With respect to **claims** or **lawsuits** under Coverages A or B, or I, and Coverage G, as it applies in excess of Coverages A or B, the Company will obtain the written consent of the **named insured** to settle any **claim** or **lawsuit** against any **insured**. The consent to settle of the **named insured** shall not be unreasonably withheld. In the event the **named insured** withholds consent to settle, the Company Claims Committee may determine, but only by a unanimous vote of Claims Committee members present and eligible to vote on the issue, whether such refusal to consent is clearly unreasonable. In the event of such a finding by the Claims Committee, the Company may settle the **claim** or **lawsuit** without the consent of the **named insured**.

C.       Treatment of **Defense Costs** Under Coverage H

The Company has no duty to defend, settle or investigate any liability, **lawsuit**, **claim** or **potential claim** actually or potentially covered under Coverage H of this Policy. However, **defense costs** incurred by the **insured** to investigate or defend a liability, **lawsuit**, **claim** or **potential claim** covered by Coverage H hereunder are reimbursable to the **insured** within and subject to the Limit of Insurance for Coverage H.

## IV.    MUTUAL EXCLUSIVITY OF COVERAGES

The parties expressly agree that all Coverages under this Policy are mutually exclusive, with the sole exception that Coverage G, if purchased, applies in excess of the Limits of Insurance of Coverages A and D, and, if a premium is charged hereunder for Coverage E, in excess of the Limit of Insurance for Coverage E. In case of an actual or perceived overlap in coverage among Coverages A, B, D, E, F, H, or I, the parties agree as follows:

A.       Any sum that may reasonably be considered to be actually or potentially covered under Coverage I, is expressly excluded from coverage under any other Coverage under this Policy.

B.       Any sum that may reasonably be considered to be actually or potentially covered under Coverage H, except as may be otherwise provided in subparagraph A. above, is expressly excluded from coverage under any other Coverage under this Policy.

C.       Any **medical expense** the Company has paid or has agreed to pay under Coverage F of this Policy is expressly excluded from coverage under Coverages A,

Exhibit N, Page 11

B, D, E or G of this Policy.  If any **medical expense** is covered under Coverage H, then Coverage F does not apply to that **medical expense**.

D.      Any **damages**, **claim**, or **potential claim** that may reasonably be considered to be actually or potentially covered under Coverage A, except as may be otherwise provided in subparagraphs A.,B., or C. above, are expressly excluded from coverage under Coverages B, D, and E.

E.      Any **damages**, **claim**, or **potential claim** that are not covered under Coverage A but that may reasonably be considered to be actually or potentially covered under Coverage B, except as may be otherwise provided in subparagraphs A.–D. above, are expressly excluded from coverage under Coverages D and E.

F.      Any **damages**, sum, **medical expense**, **claim**, or **potential claim** that are not covered under Coverages A, B, F, H, or I but may reasonably be considered to be actually or potentially covered under Coverage D, are expressly excluded from coverage under Coverage E.

These provisions apply regardless of the availability of Limits of Insurance for any Coverage under this Policy.

## V.      EXCLUSIONS

The insurance afforded by this Policy shall not apply to any **claim** based upon, arising out of, directly or indirectly in consequence of, or in any way involving:

A.      <u>Exclusions Applicable to All Coverages</u>

1.      liability of the **insured** arising out of a criminal act committed by or at the direction of the **insured**;

2.      liability of any **insured**, or any fund or carrier as its insurer, under any workers' compensation, unemployment compensation, or disability benefits law, or any similar law;

3.      **damages** or injury of any nature, to legal obligations or to **medical expense** arising out of particulate (including but not limited to nuclear, proton, neutron, atomic and subatomic) emissions or radiation of any kind or nature whatsoever from any cause or source whatsoever, except that this exclusion does not apply to **claims** by or on behalf of the **named insured's** patients because of **bodily injury** to such patients by reason of exposure to such emissions or radiation as part of treatment prescribed or administered by any person or entity who is an **insured** for the purpose of Coverage A of this Policy;

4.      **damages** arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate **electronic data**.  *Provided however*, that this exclusion does not apply to Coverage A of this Policy;

5. criminal, civil or administrative fines, penalties, punitive or exemplary damages, or the multiple portion of any multiplied damage award;

6. a **claim(s)** or **potential claim(s)** of which that **insured** was aware, or reasonably should have been aware, prior to the effective date of coverage for such **insured** under this Policy.  For the purpose of this exclusion, the Company shall not be liable to make any payment to or on behalf of the **insured** against whom the **claim** is made.

7. any act or omission that violates or is alleged to violate:

   a. the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

   b. the CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

   c. any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information;

8. the use or misuse of funds, grants or appropriation or for the return of such funds, grants or appropriations for any reason;

9. war, including undeclared war, civil war, insurrection, rebellion or revolution, or an act or condition of war;

10. any **Certified Act of Terrorism**;

11. acts of discrimination by any **insured** based on age, health, sex, sexual preference, disability, race, country of origin or religion;

12. the **insured's** employment practices of any kind, including but not limited to:

    a. refusal to employ;

    b. termination of employment;

    c. coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, suspension, retaliation; or

    d. consequential **bodily injury** as a result of any such employment practice;

13. any loss or **claim** covered under the terms of the Public Health Service Act and/or by the Federal Tort Claims Act (FTCA) or any similar state statute;

Exhibit N, Page 13

14.   any **medical incident**, **incident**, fact, circumstance or situation that was:

    a.   the subject of written notice given under any prior insurance policy;

    b.   the subject of any written demand for **damages**, or any **lawsuit** or **disciplinary proceeding**, commenced against any **insured** before the effective date of the first Policy issued and continuously renewed by the Company, or that involved the same or substantially the same facts, circumstances or situations underlying or alleged in the prior demand, **lawsuit** or **disciplinary proceeding**;

    c.   identified in any summary, loss runs, or statement of **claims** or **potential claims** submitted in connection with the application for coverage under the first Policy issued and continuously renewed by the Company; or

    d.   reported to any other source from which payment might be made before the effective date of the first Policy issued and continuously renewed by the Company;

15.   any loss or **claim** for which the **insured** may be held liable because of:

    a.   causing or contributing to the intoxication of any person;

    b.   the furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

    c.   any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages;

    *provided however*, this exclusion shall apply only if the named **insured**:

        (1)   manufactures or distributes alcoholic beverages;

        (2)   serves or furnishes alcoholic beverages for a charge whether or not such activity requires a license, is for financial gain or livelihood; or

        (3)   serves or furnishes alcoholic beverages without a charge if a license is required for such activity.

16.   The ownership, maintenance, use or entrustment to others of any **unmanned aircraft or drone**.  Use includes operation and **loading or unloading**.  This exclusion applies even if the allegations against the **insured** are for negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **insured**.

Exhibit N, Page 14

B.    Exclusions Applicable to Coverage A

    1.    any **medical incident** that occurred before the applicable **retroactive date**;

    2.    **General Liability Injury**, **Pollution Liability Injury**, or **Mold**, **Mildew or Other Fungi Injury**;

    3.    any act, error or omission committed in the **administration** of the **named insured's employee benefit program**;

    4.    restitution or disgorgement;

    5.    the breach of any contract or agreement;

    6.    liability for which the **insured** is obligated to pay **damages** because of the assumption of liability in any contract or agreement, *provided*, this exclusion does not apply to liability the **insured** would have in the absence of the contract or agreement;

    7.    any **claim**, **lawsuit**, legal or administrative proceeding of any kind, or part thereof seeking relief or redress in any form other than monetary **damages**;

    8.    any actual or alleged violation of:

        a.    any state or federal consumer protection statute;

        b.    the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sections 1961 et seq., and any amendments thereto, or any rules or regulations promulgated thereunder or similar provisions of any federal, state or local statutory law or common law; or

        c.    any law (including but not limited to Title 15 of the United States Code) that prohibits the unlawful restraint of trade, business, or profession;

    9.    any contractual or business dispute or any dispute involving fees for **direct patient treatment**;

    10.    any **claim** or **lawsuit** brought by, or on behalf of, any local, state, or federal regulatory agency or other governmental entity, including, but not limited to, health care fraud and abuse proceedings seeking monetary and non-monetary relief;

    11.    act or omission of such **insured**:

        a.    which occurs during any time such **insured's** license to practice his or her profession has been suspended, revoked or voluntarily surrendered; or

        b.    which constitutes a violation of any restriction imposed upon such **insured's** license to practice his or her profession.

Exhibit N, Page 15

For the purpose of this exclusion, the Company shall not be liable to make any payment to or on behalf of the **insured** against whom the **claim** is made.

12. criminal, dishonest, fraudulent or malicious act or omission by such **insured**. For the purpose of this exclusion, the Company shall not be liable to make any payment to or on behalf of the **insured** against whom the **claim** is made.

13. **sexual misconduct or sexual activity** by any **insured**;

14. liability arising out of the ownership, maintenance, use, loading or unloading of any watercraft, aircraft, motor vehicle, trailer or semi-trailer; but this exclusion does not apply to the loading or unloading of a patient by an **insured** who is acting within the scope of his or her duties to the **named insured**.

Coverage permitted under this paragraph shall be excess of any other valid and collectible insurance applicable to such liability.

15. any **claim** or **lawsuit** brought by or on behalf of any **insured** against any other **insured** under this Policy.

C. <u>Exclusions Applicable to Coverage B</u>

1. **Professional Liability Injury**, **General Liability Injury**, **Pollution Liability Injury**, or **Mold**, **Mildew or Other Fungi Injury**;

2. any act, error or omission committed in the **administration** of the **named insured's employee benefit program**;

3. any **claim** or **lawsuit** brought by or on behalf of any **insured** against any other **insured** under this Policy.

D. <u>Exclusions Applicable to Coverage C</u>

1. any matter in dispute, under investigation or otherwise known to the **named insured** or to the **employee** being investigated prior to the effective date of coverage for such **employee** under this Policy;

2. any investigation of actual or alleged abuse or misappropriation of **controlled substances** by the **employee** being investigated;

3. any investigation of actual or alleged verbal, physical or emotional abuse of staff, guests, volunteers, patients, or employees of the **named insured** or of any healthcare facility;

4. any investigation of contractual or business disputes or disputes involving fees for **direct patient treatment**;

5.     any investigation of actual or alleged improper billing practices; or

6.     any investigation of actual or alleged acts, errors or omissions committed in the **administration** of the **named insured's employee benefit programs**.

E.     <u>Exclusions Applicable to Coverage D</u>

1.     liability of any **insured** for **Professional Liability Injury**, **Pollution Liability Injury**, or **Mold, Mildew or Other Fungi Injury**;

2.     any investigation of actual or alleged acts, errors or omissions committed in the **administration** of the **named insured's employee benefit programs**;

3.     any **medical expense** the Company has paid or has agreed to pay under Coverage F;

4.     injury or **damages** which were expected or intended from the standpoint of the **insured**;

5.     any **claim**, **lawsuit**, legal or administrative proceeding of any kind, or part thereof seeking relief or redress in any form other than monetary **damages**;

6.     liability for which the **insured** is obligated to pay **damages** because of the assumption of liability in any contract or agreement.  However, this exclusion does not apply to:

a.     liability the **insured** would have in the absence of the contract or agreement; or to

b.     liability for **bodily injury** or **property damage** assumed in a contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the **insured contract**.  Solely for the purpose of such liability, reasonable attorney fees and litigation expenses incurred by or for a party other than an **insured** are deemed to be **damages** for **bodily injury** or **property damage**, provided:

(1)     liability to such party for, or for the cost of, that party's defense has also been assumed in the same **insured contract**; and

(2)     such attorney fees and litigation expenses are for defense of that party against a **lawsuit** in which **bodily injury** or **property damage** to which Coverage D of this Policy applies is alleged.

7.     **personal and advertising injury** arising out of oral or written publication of material if done by or at the direction of the **insured** with knowledge of its falsity;

Exhibit N, Page 17

8.   **personal and advertising injury** arising out of oral or written publication of material whose first publication took place before the **retroactive date**;

9.   **sexual misconduct or sexual activity** by any **insured**;

10.  liability arising out of the ownership, maintenance, use, loading or unloading of any watercraft, aircraft, motor vehicle, trailer or semi-trailer; but this exclusion does not apply to the ownership, maintenance or use of any motor vehicle, including attachments thereto, that is not subject to motor vehicle registration and that is used exclusively on premises owned or leased by or under the control of the **named insured**.

Coverage permitted under this paragraph shall be excess of any other valid and collectible insurance applicable to such liability.

11.  liability of any **insured** for **General Liability Injury** to any **employee** or former **employee** of the **named insured** arising out of or in the course of employment by the **named insured**.  This exclusion applies whether the person or entity seeking **damages** is the **employee** or former **employee**, or his or her estate, spouse, child, parent, family member, dependent, or any other person or entity;

12.  liability of the **insured** arising out of a dishonest, fraudulent or malicious act or omission by any **insured**; however, this exclusion does not apply to liability of the **named insured** unless such acts were committed by or with the knowledge of or at the direction of the **named insured**;

13.  liability for **property damage** to:

a.   property owned or occupied by or rented or loaned to the **named insured**;

b.   premises sold, given away or abandoned by the **named insured** if the **property damage** arises out of any part of those premises, or to liability arising from such premises or any part thereof;

c.   property in the care, custody or control of the **named insured** or as to which the **named insured** is for any purpose exercising physical control; however, this subparagraph does not apply to any **claim** or **potential claim** for **damages** for the mysterious disappearance or theft of or damage to personal property of a patient from the premises of the **named insured**;

d.   that particular part of real property on which **you** or any contractor or subcontractors working direct or indirectly on **your** behalf are performing operations, if the **property damage** arises out of those operations;

e.      that particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it;

f.      Exclusion V.E.13. does not apply to liability of the **named insured** for **property damage** to premises rented to the **named insured** caused by:

(1)      fire or explosion;
(2)      the discharge, leakage or overflow of water or steam from plumbing, heating, refrigerating or air conditioning systems; or
(3)      rain admitted directly to the building interior through open or defective doors, windows, skylights, transoms or ventilators.

Payments made for liability within the scope of this subparagraph V.E.13.f. shall not exceed $1,000,000 in the aggregate for all **claims** reported within the **policy period**, and are included in and attributable to the aggregate Limit of Insurance described in Section VIII of this Policy.

14.      **property damage** to **your work** arising out of it or any part of it.

*Provided however*, this exclusion does not apply if the damaged work or the work out of which the damage arises was performed on **your** behalf by a subcontractor.

15.      **property damage** to **impaired property** or property that has not been physically injured, arising out of:

a.      a defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

b.      a delay or failure by **you** or anyone acting on **your** behalf to perform a contract in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

16.      **damages** claimed for loss, cost or expenses incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a.      **your product**;
b.      **your work**; or
c.      **impaired property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it;

Exhibit N, Page 19

17.  any **claim** for **damages** arising from an **incident** that occurred or commenced before the **retroactive date** shown on the Declarations or any endorsement to this Policy;

18.  any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sections 1961 et seq., or any state Consumer Protection Act, and any amendments thereto, or any rules or regulations promulgated thereunder or similar provisions of any federal, state or local statutory law or common law;

19.  liability arising out of the violation of any law (including but not limited to Title 15 of the United States Code) that prohibits the unlawful restraint of trade, business, or profession;

20.  **Pollution Liability Injury** or **Mold**, **Mildew or Other Fungi Injury**; however, this exclusion does not apply to **bodily injury** or **property damage** caused by heat, smoke or fumes from a **hostile fire**;

21.  **General Liability Injury** arising out of the failure of goods, products or services to conform with any statement of quality or performance made in the **named insured's** advertisement;

22.  **Personal and Advertising Injury** arising out of the wrong description in the **named insured's** advertisement of the price of goods, products or services;

23.  **Personal and Advertising Injury** arising out of infringement of copyright, patent, trademark, trade secret or other intellectual property rights; however this exclusion does not apply to infringement, in the **named insured's** advertisement, of copyright, trade dress or slogan;

24.  **Personal and Advertising Injury** caused by or at the direction of the **insured** with the knowledge that the act would violate the rights of another and would inflict **Personal and Advertising Injury**;

25.  any access to or disclosure of any person's or organization's **confidential or personal information**, or the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate **electronic data** or **confidential or personal information**.

This exclusion applies even if **damages** are claimed for notification costs, credit monitoring expenses, forensic expenses, public relationship expenses or any other loss, cost, or expense incurred by you or others arising out of the access or release of **confidential or personal information**.

26.  any **claim** or **lawsuit** brought by or on behalf of any **insured** against any other **insured** under this Policy;

Exhibit N, Page 20

27.  any **construction or development activities**, regardless of:

    a.  whether such **construction or development activities** are or were performed or completed:

        (1)  by **you** or on **your** behalf;

        (2)  for **you**

        (3)  by or for others; or

        (4)  for sale to others; and

    b.  when or where such **construction or development activities** are or were performed or completed.

However, this exclusion does not apply to **maintenance or renovation activities**.

F.  <u>Exclusions Applicable to Coverage E</u>

1.  liability of any **insured** for **Professional Liability Injury**, **General Liability Injury**, **Pollution Liability Injury**, or **Mold**, **Mildew or Other Fungi Injury**;

2.  **medical expenses** covered by Coverage F of this Policy;

3.  any **claim** or **potential claim** for failure to perform under a contract by any insurer;

4.  any **claim** based upon:

    a.  failure of securities to perform as represented by an **insured**; or

    b.  advice given by an **insured** concerning participation in stock subscription plans or advice regarding the selection of investment alternatives under a pension or retirement plan;

5.  liability based upon the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension reform Act of 1974, and amendments thereto, or similar provisions of any federal, state, or local statutory law or common law;

6.  liability arising out of any dishonest, fraudulent, criminal or malicious act or omission committed by any **insured**;

7.  taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law, or to loss or **damages** arising out of the imposition of such taxes, fines or penalties.

Exhibit N, Page 21

G.    Exclusions Applicable to Coverage F

    1.    **bodily injury** which arises out of **direct patient treatment** rendered by any **insured**;

    2.    **medical expenses** which arise out of **pollutants** or **mold**, **mildew or other fungi**, or exposure to any of them;

    3.    **medical expenses** incurred by or on behalf of an injured person who is:

        a.    an **insured** under this Policy for the purpose of Coverage D, other than a **volunteer**;

        b.    a tenant of the **named insured** if the accident takes place on premises leased to the tenant;

        c.    hired to work for or on behalf of any **insured** or for a tenant of any **insured**, whether as an employee, an independent contractor or in any other capacity, and who is performing, at the time of the accident, services which he or she was hired to perform.

H.    Exclusions Applicable to Coverage G

    1.    liability of any **insured** within the scope of the exception to exclusion V.E.13.c. of this Policy;

    2.    liability of any **insured** within the scope of the exception to exclusion V.E.13.f. of this Policy.

I.    Exclusions Applicable to Coverage I

    1.    **damages** payable on behalf of any insured who is alleged to have engaged in **sexual misconduct or sexual activity**;

    2.    any **claim** or **lawsuit** brought by or on behalf of any **insured** against any other **insured** under this Policy.

## VI.    SUPPLEMENTARY PAYMENTS

Amounts incurred under this Section VI. will not reduce the applicable Limits of Insurance under any Coverage of this Policy.

A.    As respects any **lawsuit** defended by the Company pursuant to Section III.A.1. of this Policy, the Company shall:

    1.    pay all costs taxed against the **insured** in any **lawsuit** defended by the Company;

Exhibit N, Page 22

2.      reimburse the **insured** for reasonable expenses, other than loss of earnings, incurred at the Company's request in assisting the Company in the investigation or defense of any **claim** or **lawsuit**;

3.      reimburse the **named insured** for actual salary payments made by the **named insured** to its employed physician(s) for time spent attending a trial or arbitration hearing at the request of the Company, up to $1,000 per half day per physician, dentist, pharmacist, advanced registered nurse practitioner, or physician assistant, provided that the maximum amount payable by the Company for such attendance shall not exceed the sum of $40,000 per **claim**.

B.      As respects any **lawsuit** defended by the Company pursuant to Section III.A.1. of this Policy, the Company shall have no obligation to appeal any decision or judgment or any portion thereof; however, as to any matter appealed with the Company's consent, the Company shall:

1.      pay interest on the entire amount of any judgment therein against the **insured** which accrues after entry of the judgment and before the Company has paid or tendered or deposited into court that part of the judgment covered by the Policy and which does not exceed the Limits of Insurance;

2.      pay premiums on bonds to release attachments which do not exceed the applicable Limit of Insurance under this Policy; and

3.      pay premiums on bonds in a principal amount which does not exceed the applicable Limit of Insurance under this Policy, which are posted on behalf of the **insured** with respect to issues appealed with the written consent of the Company; but the Company shall have no obligation to apply for nor to issue any such bonds.

## VII.    DEFINITIONS

The following terms, when appearing in boldface in this Policy, have the following meanings:

A.      **additional insured** means any person or organization that is named on an endorsement hereto, but only with respect to liability for injury or **damage** caused, in whole or in part, by **your** acts or omissions or the acts or omissions of those acting on **your** behalf.

The insurance provided to such **additional insured** will not be broader than that which **you** are required by contract or agreement to provide for such **additional insured**.

B.      **administration** means the following acts authorized by the **named insured**:

1.      giving counsel to **employees** with respect to the **employee benefit programs**;

2.  interpreting the **employee benefit programs**;

3.  handling of records and processing of claims in connection with the **employee benefit programs**; or

4.  effecting enrollment, termination, or cancellation of **employees** under the **employee benefit programs**.

C.  **bodily injury** means physical injury, sickness, disease, mental injury, or mental anguish sustained by a person, including death resulting from any of these at any time.

D.  **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of Homeland Security, and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.

E.  **claim** means:

1.  for the purpose of Coverage A of this Policy:

    a.  a written notice or demand to the **insured** arising out of a **medical incident**; or

    b.  a **lawsuit** against the **insured** arising out of a **medical incident**.

2.  for the purpose of Coverage B of this Policy:

    a.  a written notice or demand to the **insured** arising out of services described in Coverage B of this Policy; or

    b.  a **lawsuit** against the **insured** arising out of services described in Coverage B of this Policy.

3.  for the purpose of Coverage D of this Policy:

    a.  a written notice or demand to the **insured** arising out of an **incident**; or

    b.  a **lawsuit** against the **insured** arising out of an **incident**.

4.  for the purpose of Coverage E of this Policy:

    a.  a written notice or demand to the **insured** arising out of **administration** of the **employee benefit programs**; or

    b.  a **lawsuit** against the **insured** arising out of **administration** of the **employee benefit programs**.

Exhibit N, Page 24

5.      for the purpose of Coverage H of this Policy:

      a.      a written notice or demand to the **insured** arising out of an **incident**; or

      b.      a **lawsuit** against the **insured** arising out of an **incident**.

6.      For the purpose of Coverage I of this Policy:

      a.      a written notice or demand to the **insured** arising out of a **sexual misconduct or sexual activity incident**; or

      b.      a **lawsuit** against the **insured** arising out of a **sexual misconduct or sexual activity incident**.

F.      **Company peer review program** means any committee, panel or board which provides underwriting, claims or risk management advice or recommendations for the benefit of the Company, conducted by or on behalf of the Company.

G.      **confidential or personal information** means personal health information, financial information including insurance, social security, or credit card information, patents, trade secrets, processing methods, customer lists, or any other type of nonpublic information about or relating to a person or organization, however stored.

H.      **construction or development activities** means any:

      a.      addition to any building or structure;

      b.      complete or partial construction or demolition or erection of any building or other structure; or

      c.      planning, site preparation, surveying or other construction or development of real property.

However, **construction or development activities** does not include **maintenance or renovation activities**.

I.      **contract healthcare provider** means a medical professional working as an independent contractor for the **named insured** pursuant to a written contract, who is named on an endorsement to the Policy, and for whom a premium is charged.

J.      **controlled substances** has the same meaning as defined in the Federal Food and Drug Law at 21 U.S.C. sections 811 and 812.  For the purpose of this Policy, **controlled substances** specifically include but are not limited to cocaine, LSD, marijuana, methamphetamines and all narcotic drugs.

K.      **damages** means compensatory damages, which may be awarded against the **insured** in a civil action, including attorney fees.

L.      **defense costs** mean payments allocated to a specific **claim**, including reasonable and necessary legal fees and expenses incurred in the investigation or defense of any **claim**, but shall not include salaries, wages, overhead or benefit expenses associated with officers or **employees** of the **insured**.  **Defense costs** shall also include legal and investigation fees necessary to respond to **potential claims**, solely if such fees are incurred at the Company's request and direction.

M.      **direct patient treatment** means any direct treatment, consultation, diagnostic tests or procedures, therapeutic procedures, pathological analyses, reports, or any other associated health care services.  **Direct patient treatment** includes, but is not limited to, the furnishing of food and beverages in connection with providing patient treatment; dispensing of drugs, medical or dental supplies and appliances; and performing post-mortem procedures, including autopsies or harvesting of organs.

N.      **electronic data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software or hardware, including but not limited to systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices, networks, the internet or a computer cloud.

O.      **employee** means a person who is on the regular payroll of the **named insured** and for whom the **named insured** pays to the federal government the employer's share of social security and Medicare tax contributions, *provided however*, that no physician, surgeon, dentist, advanced registered nurse practitioner, or physician assistant qualifies as an **employee** unless such individual is listed as an **insured** on the Declarations of this Policy or an endorsement that forms a part of this Policy.

P.      **employee benefit programs** means life insurance, accident and health insurance, profit sharing plans, pension plans, employee stock subscription plans, workers' compensation, unemployment insurance, social security and disability benefits insurance, or any other similar plan, provided in whole or in part or administered by the **named insured**.

Q.      **General Liability Injury** means **damages** for **bodily injury**, **property damage**, and **personal and advertising injury**, arising out of an **incident**; but does not include any **damages** or injury falling within the definition of **Professional Liability Injury** and does not include any sum payable as **medical expense** under Coverage F.  The parties expressly agree that **General Liability Injury** and **Professional Liability Injury** are mutually exclusive terms.  In the event that any injury can reasonably be considered to be **Professional Liability Injury**, in whole or in part, such injury shall not constitute **General Liability Injury** under this Policy for any purpose.

R.    **hostile fire** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

S.    **impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is useful because:

    1.    it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

    2.    **you** have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of **your product** or **your work** or **your** fulfilling the terms of the contract or agreement.

T.    **incident** means:

    1.    for the purpose of Coverage D, an act or omission or a series of related acts or omissions in the course of the operations of the **named insured** resulting in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**, regardless of the number of persons claiming **damages** arising out of such acts or omissions;

    2.    for the purpose of Coverage D, an act or omission or a series of related acts or omissions in the course of the operations of the **named insured** resulting in **personal and advertising injury** from the standpoint of the **insured**, regardless of the number of persons claiming **damages** arising out of such acts or omissions;

    3.    for the purpose of Coverage H, an act or omission or a series of related acts or omissions in the course of the operations of the **named insured** resulting in **Pollution Liability Injury** or **Mold, Mildew or Other Fungi Injury** neither expected nor intended from the standpoint of the **insured**, regardless of the number of persons seeking to impose legal liability on the **insured** on account of such acts or omissions;

    4.    *provided however,* for the purpose of any Coverage, **incident** does not include:

        a.    any act or omission occurring in the course of **direct patient treatment**;

        b.    any act or decision of the **named insured's** formal accreditation, standards review or similar professional board or committee, or services rendered by any **insured** for such board or committee or for the **Company peer review program**;

        c.    any act, omission or conduct qualifying as a **medical incident**; or

        d.       any act, error or omission committed in the **administration** of the **named insured's employee benefit programs**.

All **damages**, **Pollution Liability Injury** and **Mold**, **Mildew or Other Fungi Injury** arising out of substantially the same acts, omissions or series of acts or omissions, or out of exposure to substantially the same general conditions, including any continuation, change or resumption of the injury, of the **Pollution Liability Injury** or of the **Mold**, **Mildew or Other Fungi Injury**, shall be deemed to arise out of the same **incident**.

U.    **insured** means:

    1.    for the purposes of all coverages under this Policy other than Coverage E:

        a.    the **named insured**;

        b.    any person or entity listed as an **insured** on the Declarations of this Policy;

        c.    any person or entity who is listed on an endorsement that forms a part of this Policy, and for whom a premium is charged, but only to the extent described in such endorsement;

        d.    any other entity formed or acquired by the **named insured** during the **policy period** and over which the **named insured** has managerial control, *provided*:

            (1)    no other similar insurance applies to such entity; and

            (2)    the **named insured** advises the Company within the sooner of 30 days of the formation or acquisition of such entity or the end of the **policy period**, and requests the Company to add the newly formed or acquired entity to this Policy as an **insured**;

        The **retroactive date** applicable to such newly formed or acquired entity is the date upon which the **named insured** formed or acquired managerial control over such entity, or thirty days prior to the date identified in paragraph VII.U.1.d.(2), whichever is later.

        e.    any administrator, medical director, or department head of the **named insured** while acting within the course and scope of his or her duties as such;

        f.    any physician, surgeon, dentist, advanced registered nurse practitioner, or physician assistant listed as an **insured** on the Declarations of this Policy or an endorsement that forms a part of this Policy, but only while acting within the course and scope of his or her duties to the **named insured**;

Exhibit N, Page 28

g.      any current or former **employee** of the **named insured** while acting within the course and scope of his or her duties to the **named insured**, *provided however*, that no physician, surgeon, dentist, advanced registered nurse practitioner, or physician assistant qualifies as an **employee** unless such individual is listed as an insured on the Declarations of this Policy or an endorsement that forms a part of this Policy;

h.      a current or former **contract healthcare provider** whose contract with the **named insured** requires the **named insured** to provide general liability insurance and/or healthcare professional liability insurance to such person, and then only for the required coverage and only for liability arising out of such person's conduct while acting within the course and scope of his or her duties to the **named insured**;

i.      any member of the medical staff of the **named insured**, while acting within the scope of his or her duties under the medical staff bylaws, rules or regulations, or while fulfilling responsibilities delegated to such person by the **named insured**; *provided however,* such medical staff member is not an **insured** for the purpose of **direct patient treatment** rendered by such medical staff member, except when supervising, evaluating, instructing or proctoring, at the request or with the knowledge and consent of the **named insured**, a resident, paramedic, trainee of the **named insured**, a member of the medical staff of the **named insured**, an applicant for medical staff privileges at the **named insured**, or a **volunteer** or **employee** of the **named insured**;

j.      a student enrolled in a training program offered by the **named insured** while acting with the course and scope of his or her duties as a trainee of the **named insured**; *provided however*, **insured** does not include a student who is an agent or student of another entity's training program; and

k.      any **volunteer** for the **named insured** while acting within the course and scope of his or her duties to the **named insured**.

2.      for the purposes of Coverages A, D, and G, **insured** also includes a **locum tenens**.

3.      for the purposes of Coverages B and D, **insured** also includes any person while acting within the scope of his or her duties as a member of a committee of the **named insured** or on the **Company peer review program** committee, whether or not such person is an **employee** of the **named insured**.

4.      for the purpose of Coverage B, **insured** also includes any person acting on behalf of the **named insured** by communicating information to the **named insured** or its medical or professional staff for the purpose of the **named insured's** evaluation of the qualifications, fitness or character of an applicant for membership or privileges on its medical or professional staff, or for the **named insured's** consideration of corrective or disciplinary action against any person.

5.      for the purpose of Coverage D, **insured** also includes any executive officer, director, trustee or stockholder of the **named insured** while acting within the scope of his or her capacity as such.

6.      For the purpose of Coverage E, **insured** means the **named insured** and any executive officer, director, trustee, stockholder or **employee** of the **named insured** when such person is authorized to act in the **administration** of the **named insured's employee benefit programs**.

V.      **insured contract** means:

1.      a contract for a lease of premises other than that portion of the contract that indemnifies any person or organization for damage by fire to premises while rented to or temporarily occupied by the **named insured**;

2.      a sidetrack agreement;

3.      any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4.      an indemnification agreement with a municipality as required by ordinance, except in connection with work for a municipality;

5.      an elevator maintenance agreement; or

6.      that part of any other written contract or agreement pertaining to the **named insured's** business, but not to **direct patient treatment**, by which the **named insured** assumes the tort liability of another to pay a **claim** for **bodily injury** or **property damage** to a third person or organization, if the contract or agreement is made prior to the **bodily injury** or **property damage**. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An **insured contract** does not include that part of any contract or agreement:

a.      that assumes the liability of, or agrees to indemnify, another for **direct patient treatment**;

b.      that indemnifies any person or organization for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet

Exhibit N, Page 30

of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

c.    that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(1)    preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(2)    giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

d.    that indemnifies any person or organization for damage by fire, water or explosion to premises rented or loaned to the **named insured**.

W.    **lawsuit** means a civil action commenced in state or federal courts of the United States, its territories or possessions or Canada in which **damages** are sought against the **insured**.  **Lawsuit** includes an arbitration or other alternative dispute resolution proceeding in which **damages** are sought against the **insured** and to which the **insured** submits with our written consent.  **Lawsuit** does not include any investigation, dispute, action, formal complaint or proceeding.

X.    **locum tenens** means a licensed health care provider who is temporarily serving as a substitute health care provider for the **named insured**, but only while the **locum tenens** is acting within the course and scope of his or her duties to the **named insured**.

Y.    **maintenance or renovation activities** means:

1.    alteration or renovation operations; or

2.    maintenance or repair operations.

**Maintenance or renovation activities** do not include any structural alteration that involves changing the size of, or any demolishing or moving or any building or other structure.

Z.    **medical expense** means actual and reasonable out of pocket expenses incurred by the injured person for:

1.    first aid rendered at the time of the accident;

2.    necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

3.    necessary ambulance, hospital, professional nursing and funeral services;

Exhibit N, Page 31

for **bodily injury** arising out of the accident.  However, **medical expense** does not include:

    a.    payment for any service provided by the **named insured** or its **employees**; or

    b.    **medical expenses** covered by the injured person's health insurance, medical insurance, workers' compensation, or other insurance.

AA.    **medical incident** means an act or omission or a series of related acts or omissions occurring in the course of **direct patient treatment**, regardless of the number of persons claiming **damages** arising out of such acts or omissions.

BB.    **mold**, **mildew or other fungi** means mold, mildew, spores, mycotoxins, fungi, organic pathogens or other micro-organisms of any type, nature or description.

CC.    **Mold**, **Mildew or Other Fungi Injury** means:

    1.    **bodily injury** or **property damage** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, exposure to or the manifestation, release, dispersal, seepage, migration, discharge, appearance, presence, reproduction or growth of **mold**, **mildew or other fungi** at or from premises owned, rented or occupied by the **named insured**;

    2.    any cost, expense or charge to clean up, remediate, mitigate, remove, contain, treat, detoxify, neutralize, rehabilitate, or in any other way respond to the existence or effects of **mold**, **mildew or other fungi** at or from premises owned, rented or occupied by the **named insured**; and

    3.    any cost, expense, charge, fine or penalty incurred or sustained by the **named insured** or imposed on the **named insured** by order, direction, request or agreement of any court, government agency, regulatory body or civil, public or military authority in connection with or in any way relating to **mold**, **mildew or other fungi**;

*however,* **Mold**, **Mildew or Other Fungi Injury** does not include any of the above which are based on, arise out of, directly or indirectly result from, in consequence of, or in any way involve an **insured's** use of **mold**, **mildew or other fungi** in connection with **direct patient treatment** or medical or scientific research.

DD.    **named insured** means the entity described as the **named insured** on the Declarations.

EE.    **personal and advertising injury** means injury, other than **Professional Liability Injury**, arising out of one or more of the following offenses:

    1.    false arrest, detention or imprisonment;

Exhibit N, Page 32

2.     malicious prosecution;

3.     wrongful entry into or eviction of a person from, a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;

4.     oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.     oral or written publication of material that violates a person's right of privacy;

6.     the use of another's advertising idea in the **named insured's** advertisement;

7.     infringing upon another's copyright, trade dress or slogan in the **named insured's** advertisement; or

8.     but **personal and advertising injury** does not include any injury that arises out of or occurs during or as part of a **medical incident**.

FF.   **policy period** means the period specified on the Declarations, subject to any earlier termination or cancellation of coverage under this Policy.

GG.   **pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes material to be recycled, reconditioned or reclaimed.  **Pollutants** includes medical waste and biological waste.

HH.   **Pollution Liability Injury** means:

1.     any **damages**, cost, expense or charge arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

   a.     at or from premises owned, rented or occupied by the **named insured**;

   b.     at or from any site or location used by or for the **named insured** for the handling, storage, disposal, processing or treatment of waste;

   c.     which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for the **named insured** or any person, entity or organization for whom the **named insured** may be legally responsible;

     d.    at or from any site or location on which the **named insured** or any contractors or subcontractors working directly or indirectly on behalf of the **named insured** are performing operations:

        (1)    if the **pollutants** are brought on or to the site or location in connection with such operations; or

        (2)    if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **pollutants**;

   2.    any order, request, demand or direction of any public or government official, agency, commission or board of pollution control that the **named insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **pollutants**;

*provided however*, **Pollution Liability Injury** does not include **bodily injury** or **property damage** caused by heat, smoke or fumes from a **hostile fire**.

II.    **potential claim** means:

   1.    For the purpose of Coverage A of this Policy, any **medical incident** which would put a reasonable person on notice that a written notice or demand to the **insured** or a **lawsuit** against the **insured** may result.  This includes, without limitation, instances where the **insured** has received either an oral or written communication from a patient or his or her legal representative and/or a request by a patient or his or her legal representative for copies of medical records under circumstances reasonably indicating that such patient or his or her legal representative is contemplating making a **claim**.

   2.    For the purpose of Coverage B of this Policy, circumstances which would put a reasonable person on notice that a written notice or demand to the **insured** or a **lawsuit** against the **insured** may result from acts, decisions or services within the scope of Coverage B.

   3.    For the purpose of Coverage D of this Policy, any **incident** which would put a reasonable person on notice that a written notice or demand to the **insured** or a **lawsuit** against the **insured** may result.  This includes, without limitation, instances where the **insured** has received either an oral or written communication from a third-party or his or her legal representative under circumstances reasonably indicating that such third-party or his or her legal representative is contemplating making a **claim**.

   4.    For the purpose of Coverage E of this Policy, any act or omission in the **administration** of the **named insured's employee benefit programs** which would put a reasonable person on notice that a written notice or demand to the **insured** or a **lawsuit** against the **insured** may result.

   5.    For the purpose of Coverage H of this Policy, any **incident** or information which would put a reasonable person on notice that an **insured** may have a

Exhibit N, Page 34

legal obligation to take action regarding actual or alleged **pollutants** or **mold**, **mildew or other fungi**, or that a written notice or demand to an **insured** or a **lawsuit** against an **insured** for **Pollution Liability Injury** or **Mold**, **Mildew or Other Fungi Injury** may result.  This includes, without limitation, instances where the **named insured** has received either an oral or written communication from a governmental body or from a third-party or his or her legal representative under circumstances reasonably indicating that such person or entity is contemplating making a **claim**.

6.    For the purpose of Coverage I of this Policy, any **sexual misconduct or sexual activity incident** which would put a reasonable person on notice that a written notice or demand to the **insured** or a **lawsuit** against the **insured** may result.  This includes, without limitation, instances where the **insured** has received either an oral or written communication from a patient or his or her legal representative and/or a request by a patient or his or her legal representative for copies of medical records under circumstances reasonably indicating that such patient or his or her legal representative is contemplating making a **claim**.

JJ.    **Professional Liability Injury** means **damages** for the following injuries and offenses provided that such injuries or offenses arise, in whole or in part, out of a **medical incident**:

1.    **bodily injury**;
2.    physical injury to or destruction of tangible property;
3.    violation of the right of privacy of a patient of an **insured**; or
4.    defamation of a patient of an **insured**.

KK.    **property damage** means:

1.    physical injury to or destruction of tangible property, including resulting consequential loss.  All such resulting consequential loss shall be deemed to occur at the time of the physical injury that caused it; or

2.    loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the **incident** that caused it.

For the purpose of this definition, **electronic data** is not tangible property.

LL.    **retroactive date** means the applicable date shown as such on the Declarations or on any endorsement to this Policy.

MM.    **sexual misconduct or sexual activity** includes, but is not limited to, sexually offensive or suggestive statements, conduct, or contact; sexual relations; sexual exploitation; sexual harassment; sexual intimacy; sexual molestation; sexual assault; sexual battery; soliciting sexual relations; sexual abuse; and any act punishable as a sexually-related crime.

Exhibit N, Page 35

NN.   **sexual misconduct or sexual activity incident** means all **claims** or **potential claims** alleging **sexual misconduct or sexual activity** involving a person or group of persons, regardless of whether such **sexual misconduct or sexual activity** takes place over multiple **policy periods**.  Such **claims** or **potential claims** of **sexual misconduct or sexual activity** involving the same **insured** or the same claimant shall be deemed to be one **sexual misconduct or sexual activity incident** and shall be subject to the coverage and Limit of Insurance in effect at the time of the first incident.

OO.   **underlying policy** or **underlying policies** means the insurance policy or policies listed on the Declarations in the Schedule of Underlying Insurance.

PP.   **unmanned aircraft or drone** means an aircraft that is not:

1.   designed;

2.   manufactured; or

3.   modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

QQ.   **vicarious liability** means that liability imputed by law to the **insured** for acts or omissions of any other person.

RR.   **volunteer** means any person or group, including an auxiliary, whose services are at the direction of the **named insured** and are uncompensated from any source except for reimbursement of reasonable expenses, including mileage.

SS.   **you** or **your** means the **named insured**.

TT.   **your product**

1.   means:

a.   any goods or products manufactured, sold, handled, distributed or disposed of by **you**; and
b.   containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

2.   includes:

a.   warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and
b.   the providing of or failure to provide warnings or instructions.

3.   does not include:

a.  vending machines or other property rented to or located for the use of others but not sold; or

b.  real property.

UU.  **your work** means:

1.  work or operations performed by **you** or on **your** behalf;
2.  materials, parts and equipment supplied for such work or operations;
3.  written warranties or representations made at any time regarding fitness, quality, durability or performance of **your work**; and
4.  providing or failing to provide warnings or instructions.

## VIII.  LIMITS OF INSURANCE

A.  General Provisions

1.  The rules stated below fix the most the Company will pay regardless of the number of:

a.  persons claiming **damages** arising out of the same accident, event, **incident**, **medical incident**, or **sexual misconduct or sexual activity incident**;

b.  injuries arising out of the same accident, event, **incident**, **medical incident**, or **sexual misconduct or sexual activity incident**;

c.  **insureds** from whom **damages** are or could be sought;

d.  **claims** or **potential claims** reported to the Company or **lawsuits** brought;

e.  **policy periods** during which **direct patient treatment** was actually or allegedly rendered;

f.  persons for whom any **insured** has **vicarious liability**; or

g.  **insureds** who may have **vicarious liability** for acts of any other person or entity.

3.  All **insureds** share one Limit of Insurance under each applicable coverage.

B.  Limits of Insurance

1.  The Limits of Insurance stated on the Declarations as "aggregate" is the most the Company will pay:

a.  under Coverages A, B, D, and E, for **damages** for all **claims** which are first reported to the Company during the **policy period**;

*provided however,* the aggregate Limit of Insurance for **property damage** within the scope of paragraph V.E.13.f. is $1,000,000 per **policy period**.  This special aggregate limit is included within, and amounts paid under this limit are attributable to, the general aggregate limit for Coverage D.

b.      under Coverage C, for all investigations to which this Policy applies.

c.      under Coverage F, for all accidents which occur during the **policy period**.

d.      under Coverage G, for **damages** in excess of the Limits of Insurance for Coverages A, D, and/or E, as applicable, for all **claims** which are first reported to the Company during the **policy period**.

e.      under Coverage H, for all sums, including **defense costs**, the **insured** shall become legally obligated to pay because of **Pollution Liability Injury** or **Mold**, **Mildew or Other Fungi Injury** which are first reported to the Company during the **policy period**.

f.      Under Coverage I, for all sums, including **defense costs**, the **insured** shall become legally obligated to pay because of **Sexual Misconduct or Sexual Activity** which is first reported to the Company during the **policy period**.

2.      Subject to paragraph VIII.B.1. above:

a.      the Limit of Insurance stated on the Declarations as applicable under Coverage A to "each **medical incident**" is the most the Company will pay as **damages** for all **claims** under Coverage A arising out of the same **medical incident**.

b.      the Limit of Insurance stated on the Declarations as applicable under Coverage B and E to "each **claim**" is the most the Company will pay as **damages** for any **claim** or **potential claim** which is first reported to the Company during the **policy period**.

c.      the Limit of Insurance stated on the Declarations as applicable under Coverage C to "each investigation" is the most the Company will pay to reimburse the **named insured** for attorneys' fees or legal expense incurred by the **named insured** for the same investigation.

d.      the Limit of Insurance stated on the Declarations as applicable under Coverage D to "each **incident**" is the most the Company will pay as **damages** for all **claims** to which Coverage D applies arising out of the same **incident**.

        *provided however,* the Limit of Insurance for **property damage** within the exception to exclusion V.E.13.c. is $25,000 per **claim** by any one patient.  Coverage under this exception is not subject to an aggregate limit.

e.      the Limit of Insurance stated on the Declarations as applicable under Coverage F to "each injured person" is the most the Company will

pay under Coverage F for all **medical expenses** sustained by any one person.

## IX. CONDITIONS

A. **Insured's** Duty to Give Notice

1. Upon the **insured** becoming aware of any **claim**, **lawsuit**, **potential claim**, or of any accident, **incident**, **sexual misconduct or sexual activity incident**, or **medical incident** which may result in a **claim**, **medical expense** or legal liability to which this insurance applies, notice containing particulars sufficient to identify the **insured** and any documents, materials, witnesses or information necessary to identify the circumstances thereof shall be given by or for the **insured** to the Company as soon as practicable.

2. Upon the **insured** becoming aware of any dispute, action, formal complaint, proceeding or investigation which may result in reimbursable attorney fees under Coverage C, notice thereof shall be given by or for the **insured** to the Company as soon as practicable.

3. Upon the **insured** becoming aware of:

   a. the presence, discharge, dispersal, seepage, migration, release or escape of **pollutants** at or from premises owned, rented or occupied by the **named insured**;

   b. any **Pollution Liability Injury** for which the **insured** may have legal liability;

   c. the presence of, or the manifestation, release, dispersal, seepage, migration, discharge, appearance, reproduction or growth of **mold**, **mildew or other fungi**, other than an **insured's** use of **mold**, **mildew or other fungi** in connection with **direct patient treatment** or medical or scientific research, at or from premises owned, rented or occupied by the **named insured**; or

   d. any **Mold**, **Mildew or Other Fungi Injury** for which the **insured** may have legal liability;

   notice containing particulars sufficient to identify the **insured** and any documents, materials, witnesses or information necessary to identify the circumstances thereof shall be given by or for the **insured** to the Company as soon as practicable.

4. If a premium is paid for Coverage E under this Policy, upon the **insured** becoming aware of any alleged negligent act, error, or omission in the

Exhibit N, Page 39

**administration** of the **employee benefit programs** which may result in a **claim** or **potential claim** to which Coverage E may apply, notice containing particulars sufficient to identify the **insured** and any documents, materials, witnesses or information necessary to identify the circumstances thereof shall be given by or for the **insured** to the Company as soon as practicable.

5.  Upon the **insured** becoming aware of any accident or injury which may result in **medical expense** payable under Coverage F of this Policy, notice containing particulars sufficient to identify the injured person and any witnesses, documents, materials or information necessary to identify the circumstances of the accident or resulting injury shall be given by or for the **insured** to the Company as soon as practicable.

6.  Upon the **insured** becoming aware of any **incident** or of an actual or alleged presence of **pollutants** or **mold**, **mildew or other fungi** which may result in legal liability of an **insured** which would be covered under Coverage H of this Policy, notice containing particulars sufficient to identify the factual basis of the potential legal liability, including any witnesses, documents, materials or information necessary to identify the circumstances of the potential liability shall be given by or for the **insured** to the Company as soon as practicable.

7.  If a **claim** is made or **lawsuit** is brought against the **insured** for matters covered under this Policy, the **insured** shall immediately forward to the Company every demand, notice, summons or other communication received by such **insured** or his or her representative.

8.  The duties of the **insured** described in subparagraphs 1. through 7. above are conditions precedent to the Company's obligation(s) to defend the **insured** under Coverages A, B, D or E, to pay Policy benefits under any coverage, and to the Company's obligation to reimburse the **insured** under Coverages C or H.

B.  Assistance and Cooperation of the **Insured**

The **insured** shall cooperate with the Company in all matters pertaining to this insurance and, upon the Company's request, shall provide information, meet with Company representatives and/or legal counsel, attend hearings and trials, assist in making settlements, securing and giving evidence, obtaining the statements of witnesses and otherwise facilitating the conduct of any proceeding in connection with the subject matter of this insurance.

C.  Voluntary Payments

The **insured** shall not voluntarily make any payment, enter into any settlement, stipulate to any judgment, assign any rights, assume any obligation or incur any **defense costs** with respect to a **claim** except with prior written consent of the Company.  To undertake such an action will result in no coverage being available under this Policy for such **claim** and the Company may, in its sole discretion,

withdraw from any further defense and shall have no duty to make any payments on behalf of the **insured**.

D.    Subrogation

In the event of any payment under this Policy, the Company shall be subrogated to the **insured's** rights of recovery against any person or organization to the extent of the Company's payment.  The **insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The **insured** shall do nothing to prejudice such rights.

E.    Other Insurance

1.    The insurance afforded by this Policy is primary insurance except as described in subparagraph 3. below.  When this insurance is primary and any **insured** has other similar insurance which is stated to be applicable to the **claim** on an excess or contingent basis, the Limits of Insurance under this Policy shall not be reduced by the existence of such other insurance.

2.    When both this insurance and any insurance other than a Policy issued by the Company apply to a **claim** on the same basis, whether primary, excess or contingent, the Company shall not be liable under this Policy for a greater proportion of such **claim** than the applicable Limit of Insurance under this Policy for such **claim** bears to the total limit of insurance of all valid and collectible insurance applicable to such **claim**.

3.    This insurance is excess over any other valid and collectible insurance with respect to:

a.    **Professional Liability Injury** within the scope of the exception to the exclusion in paragraph V.B.14 hereof;
b.    **General Liability Injury** within the scope of the exception to the exclusion in paragraph V.E.10 hereof;
c.    any **insured** who is a **locum tenens** and who has other insurance available;
d.    **Pollution Liability Injury** or **Mold**, **Mildew or Other Fungi Injury** covered under Coverage H hereof; or
e.    the **vicarious liability** of any **insured** under Coverage A hereof.

F.    Policy Territory

This insurance applies only to **claims** made and **lawsuits** brought in the United States of America, its territories or possessions or Canada.

G.    Premium

Exhibit N, Page 41

1.  All premiums for this Policy shall be computed in accordance with the Company's rules, rates, rating plans, premiums and minimum premiums applicable hereto.

2.  The **named insured** identified on the Declarations shall maintain records of such information as is necessary for premium computation and practice evaluation, and shall make such records available to the Company at such times as the Company may reasonably direct.

H.  Inspection and Audit

1.  The Company shall be permitted but not obligated to inspect the **named insured's** property and operations at any time.  Neither the Company's right to make inspections, the making thereof, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of any person or entity to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule, or regulation.

2.  The Company may examine and audit the **named insured's** books and records at any time during the **policy period** and at any time within six months after final termination of this Policy, in connection with the subject matter of this insurance.

I.  Action Against the Company

1.  No action shall lie against the Company unless and until there shall have been full compliance with all of the terms of this Policy and the amount of the **insured's** obligation to pay shall have been finally determined either by judgment against the **insured** after actual trial or by written agreement of the **insured**, the claimant and the Company.  Any person or organization or legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy.

2.  No person or organization or legal representative thereof shall have any right under this Policy to join the Company as a party to any action against the **insured** to determine the **insured's** liability.

J.  Insolvency of **Insured**

Bankruptcy or insolvency of the **insured** or of the **insured's** estate shall not relieve the Company of its obligations hereunder.

K.  Changes

Notice to or knowledge possessed by any representative of the Company shall not affect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued as a part of this Policy.

Exhibit N, Page 42

L.     Assignment

The interest hereunder of any **insured** is not assignable.

M.     Liberalization

In the event the Company adopts any revision that would broaden coverage under this Policy without additional premium during the **policy period**, the broadened coverage will immediately apply to this Policy.

N.     Communication with **Insured**

For the purpose of communications required or permitted under this Policy or for compliance with laws or regulations applicable to this Policy, the **named insured** is the agent for every other **insured** under the Policy.  Notices and communications delivered or mailed to the **named insured** at the address on file with the Company are deemed to have been delivered or mailed to every **insured** under this Policy.

O.     Cancellation

1.     <u>Cancellation by **Named Insured**</u>.  This Policy may be canceled by the **named insured** by:

a.     surrendering of the Policy or binder to the Company, any of its authorized representatives, or the producer;

b.     mailing, emailing, or faxing to the Company, any of its authorized representatives, or the producer written notice stating when such cancellation shall be effective; or

c.     providing verbal notice to the Company, any of its authorized representatives, or the producer.  If the **named insured** communicates verbally its desire to cancel the Policy but does not confirm that request in writing, the Company may send written confirmation to the **named insured** of the **named insured's** request for cancellation and the effective date of that cancellation.  The Company will not impose a waiting period for the effective date of cancellation if the **named insured** verbally requests cancellation.

2.     <u>Cancellation by the Company.</u>

(a)     This Policy may be canceled by the Company by delivering or mailing to the **named insured**, at the address on file with the Company, written notice stating when, not less than ninety (90) days thereafter, such cancellation shall be effective and the actual reason for such cancellation including the significant risk factors that led to the cancellation decision.  The effective date and hour of cancellation stated in the notice shall become the end of the **policy period**.  The mailing of such notice to the **named insured** as provided for in Section IX.N. shall be sufficient proof of notice.

(b)   If the **named insured** fails to discharge when due any obligations in connection with the payment of premium for this Policy or any installment thereof, this Policy may be canceled by the Company by delivering or mailing to the **named insured**, at the address on file with the Company, written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective.  The effective date and hour of cancellation stated in the notice shall become the end of the **policy period**.  The mailing of such notice to the **named insured** as provided for in Section IX.N. shall be sufficient proof of notice.

3.   <u>Premium Computation Upon Cancellation.</u>  If the Company cancels this Policy, earned premium shall be computed pro rata.  If the **named insured** cancels this Policy, earned premium may be computed on a short rate basis in accordance with the Company's rules, rates, rating plans, premiums and minimum premiums applicable hereto.  Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

P.   Renewal/Nonrenewal

1.   The Company may make an unsolicited offer of renewal of this Policy at least forty-five (45) days prior to the expiration date of this Policy by communicating to the **named insured** in writing its willingness to renew, any changes in policy terms required for renewal, and including a statement of the amount of premium required to renew the Policy.  If such an offer is rejected, either by failure to pay the premium within thirty (30) days from the effective date of such renewal coverage, by surrender of such offer to the Company or any of its authorized representatives, or by written notice received by the Company, the renewal coverage shall be void.

2.   The Company agrees to notify the **named insured** if it intends not to renew this Policy by delivering or mailing to the **named insured**, at the address on file with the Company, written notice of such intent, and of the actual reason for nonrenewal, including the significant risk factors that led to the nonrenewal decision, not less than ninety (90) days prior to the expiration date of this Policy.  The mailing of such notice to the **named insured** as provided for in Section IX.N. shall be sufficient proof of notice.  A change in rate or terms shall not be considered a nonrenewal.

# X.   EXTENDED REPORTING

A.   <u>Right to Purchase Extended Reporting for Coverages A, B, C, D, E, G, and I</u>

As respects Coverages A, B, C, D, and, if in effect during the **policy period** immediately preceding Policy non-renewal or cancellation, Coverages E, G, and I in the event of non-renewal or cancellation of this Policy for reasons other than

Exhibit N, Page 44

non-payment of premium, the **named insured** shall have the right upon payment of an additional premium (to be computed in accordance with the Company's rules, rates, rating plans, and premiums applicable on the effective date of the endorsement) to have issued a reporting endorsement extending the period in which **claims** otherwise covered by such Coverages may be reported to the Company.

All rights hereunder are contingent upon the **named insured's** payment in full of all premiums earned during the **policy period** and must be exercised by the **named insured** by written notice to the Company not later than sixty (60) days after termination of coverage.

B.  Contingent Automatic Extended Reporting Period for Coverage A

In the event the **named insured** has no other healthcare professional liability insurance for the sixty (60) day period after termination of Coverage A hereunder, Coverage A is extended to **claims**, but not **potential claims**, for **Professional Liability Injury** first reported to the Company during such sixty (60) day period for those **claims** which would be covered under Coverage A of this Policy if they had been first reported to the Company during the **policy period**.  No coverage is extended for **claims** or **potential claims** arising out of **medical incidents** occurring after Policy termination.  No coverage is extended under this paragraph for any coverage other than Coverage A.

In Witness Whereof, the said Physicians Insurance A Mutual Company has caused this Policy to be signed by its President & Chief Executive Officer and Chairman.

Physicians Insurance A Mutual Company

<  *MaryLou A. Misraty*                    >                <                                          >
_____          _____
by President and Chief Executive Officer      by Chairman

Exhibit N, Page 45