**NATALIE K. WIGHT, OSB #035576**
United States Attorney
District of Oregon
**MICHAEL J. JETER, OSB #165413**
Assistant United States Attorney
michael.jeter@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2936
Phone: (503) 727-1000
        Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **NICOLE MORETTI, and WENDY NOVIS, as Personal Representative of the Estate of SAYLOR MORETTI, deceased** | Case No.: 3:21-cv-01525-SI |
| Plaintiffs, | **UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE** |
| v. | |
| **LETTY OWINGS CENTER: CENTRAL CITY CONCERN, and/or the UNITED STATES acting through the DEPARTMENT OF HEALTH AND HUMAN SERVICES,** | |
| Defendants. | |

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

BACKGROUND ........................................................................................2

ARGUMENT ...........................................................................................2

    I.    Clinic Defendants' Motion to Substitute Is Improper,
        Unnecessary, and Duplicative of the Government's Motion ..............2

    II.   The United States is Not the Proper Defendant ..................................4

    III.  FSHCAA Coverage is Limited to Medical Malpractice ......................5

        *A.* FSHCAA's Text, Context, and Legislative History Show That
           the Act Concerns Providing Medical Malpractice Coverage ..........6

        *B.* The Public Health Service Act's Legislative History Shows
           That the Phrase "Related Functions" is Limited to Functions
           Similar to Medical, Dental, Surgical Functions ........................... 10

        *C.* Clinic Defendants Misconstrue the Holding in
           Hui v. Casteneda .......................................................................... 16

        *D.* Clinic Defendants' Caselaw Is Inapposite ................................... 19

CONCLUSION ........................................................................................ 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203 (9th Cir. 2015) ............. 6

*Bates v. United States*, 533 U.S. 137 (2008) ..................................................... 13

*Branch v. Smith*, 538 U.S. 254 (2003) .............................................................. 9

*Carlson v. Green*, 446 U.S. 14 (1980) .............................................................. 10

*Castaneda v. United States*, 546 F.3d 682 (9th Cir. 2008) ............................. 17

*Dedrick v. Youngblood*, 200 F.3d 744 (11th Cir. 2000) ............................... 9, 19

*Dolan v. United States*, 546 U.S. 481 (2006) ................................................... 12

*Ehrlenbaugh v. United States*, 409 U.S. 239 (1972) ......................................... 9

*Estes v. United States*, 302 Fed. Appx. 563 (9th Cir. 2008) ............................. 9

*FAA v. Cooper*, 566 U.S. 284 (2014) ................................................................ 18

*Friedenberg v. Lane Cnty.*, No. 6:18-CV-00177-MK, 2019 WL 11717132
   (D. Or. Nov. 6, 2019) ..................................................................................... 9

*Friedenberg v. Lane Cnty.*, 2020 WL 7779068 (D. Or. Dec. 31, 2020) ............. 9

*Graham County Soil and Water Conservation Dist. v. United States ex rel.
   Wilson*, 559 U.S. 280 (2010) ........................................................................ 6

*Gundy v. United States*, 139 S. Ct. 2116 (2018) ................................................ 6

*Hui v. Castaneda*, 559 U.S. 799 (2010) .............................................. 16, 17, 18

*Laird v. Nelms*, 406 U.S 797 (1972) ................................................................. 16

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ........................................................ 3

*Matthews v. United States*, 805 F. Supp. 712 (E.D. Wis. 1992) ....................... 3

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995) ................................................................... 15

*Osterlund v. United States*, No. 3:18-CV-01180-MO, 2020 WL 1068066
(D. Or. Mar. 5, 2020) ................................................................. 8

*Parker Drilling Mgmt. Svcs., Ltd. v. Newton*, 139 S.Ct. 1881 (2019) .............. 9

*Pinzon v.Mendocino Coast Clinics Inc.*, 2015 WL 4967257
(N.D. Cal. Aug. 20, 2015) ............................................................ 20

*Pomeroy v. United States*, 2018 WL 1093501 (D. Mass. Feb. 27, 2018) ......... 19

*Rapanos v. United States*, 547 U.S. 715 (2006)................................. 20

*Southwest Airlines Co. v. Saxon*, 142 S.Ct. 1783 (2022)............................ 6, 11

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S.Ct. 1002 (2017) ........... 16

*Thomas v. Phoebe Putney Health Sys., Inc.*, 972 F.3d 1195
(11th Cir. 2020)....................................................................... 3

*Trombley v. United States Dep't of the Army*, 666 F.2d 444
(9th Cir. 1982)........................................................................ 16

*Tyler-Bennett v. United States*, 2018 WL 3150676 (D. Or. June 27, 2018) ...... 8

*United States v. Miljus*, No. CIV.06-1832-PK, 2009 WL 2095981
(D. Or. Feb. 19, 2009) ................................................................ 3

*United States v. Miljus*, 2009 WL 1211307 (D. Or. May 1, 2009) .................... 3

*United States v. Neustadt*, 366 U.S. 705- (1961)............................... 16

*United States v. Perkins*, 887 F.3d 272 (6th Cir. 2018) ................................. 15

*United States v. Smith*, 499 U.S. 160 (1991)................................... 10

*Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067 (2018) .................... 11

*Yates v. United States*, 574 U.S. 528 (2015) ................................................. 12

*Yates v. United States*, 135 S. Ct. 1074 (2015) ............................................. 15

**FEDERAL STATUTES**

28 U.S.C. § 2679(b)-(d) ................................................................................ 3

28 U.S.C. § 2679(d) ...................................................................................... 3

28 U.S.C. § 2679(d)(3) .................................................................................. 2

42 U.S.C. § 233 ...................................................................................... 1, 3, 9

42 U.S.C. § 233(a)-(n) ............................................. 3, 10, 15, 16, 18, 19

42 U.S.C. § 233(g) .......................................................................................... 9

**FEDERAL REGULATIONS**

42 C.F.R. § 6.6(d) ........................................................................................ 15

**OTHER AUTHORITIES**

Pub. L. No. 104-73 ........................................................................................ 7

Defendant United States responds in opposition to Central City Concern ("CCC") and Letty Owings Center ("LOC") (collectively "Clinic Defendants") Motion to Substitute, ECF No. 32.

The United States is not the proper party defendant. First, the Motion to Substitute is procedurally improper, redundant, and duplicative of Clinic Defendants' opposition to the United States' Motion to Dismiss. It is also unnecessary because the Court's resolution of the United States' Motion will determine whether the United States or Clinic Defendants are the proper defendants.

Clinic Defendants' Motion is meritless for the same reasons that its opposition to the United States' Motion to Dismiss is meritless. Clinic Defendants' grant application expressly states that they do not provide general primary medical care services to children. In other words, providing medical services to children is not a grant supported activity covered by the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233.

Plaintiffs' claims are not covered by FSHCAA because the death did not result from the performance of medical, surgical, dental, or related functions. The documents Clinic Defendants submitted to support their FHSCAA coverage request show: (1) children are referred to outside organizations for their medical care for which Clinic Defendants do not pay; (2) Saylor Moretti was not receiving substance use disorder ("SUD") treatment, only Nicole Moretti was; (2) Clinic Defendants

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE

disclaimed responsibility for patients' children at LOC at all times other than when the children were in the onsite daycare facility; (3) the two visits with an LOC on-site nurse were isolated and completely unrelated to the underlying incident; and (4) no licensed physicians or licensed or certified health care providers were involved in the overnight monitoring of LOC residents. Moreover, Plaintiffs' ordinary negligence is not covered under FSHCAA. The text, context, and legislative history are in accord that FSHCAA concerns only medical malpractice claims. Based on the foregoing, the United States is not the proper party to this action.

## BACKGROUND

Because Clinic Defendants' documents submitted in support of their Motion to Substitute are identical with what they filed in response to the United States' Motion to Dismiss. Therefore, United States relies upon and incorporates herein, the background section and supporting documentation concurrently filed with this response. *See* U.S. Reply in Support of Mot. to Dismiss, ECF No. 41; Declaration of Sean Flaim ("Flaim Decl."), ECF No. 42.

## ARGUMENT

### I.     Clinic Defendants' Motion to Substitute Is Improper, Unnecessary, and Duplicative of the Government's Motion

No federal statute or rule authorizes the relief Clinic Defendants seek— compulsory substitution of the United States as the sole party defendant.[1]  In any

---

[1] The only statute authorizing a court to entertain a petition or motion seeking substitution of the United States is in 28 U.S.C. § 2679(d)(3), a statutory provision

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE

event, the relief sought is unnecessary because the United States is already a

named defendant in this action.

In essence, this Motion is merely a second response in opposition to the

United States' Motion to Dismiss that gives Clinic Defendants a reply that they

would otherwise not be entitled to file. The United States requests that Clinic

Defendants' motion either be denied outright as procedurally improper or stricken

from the docket to conserve judicial economy and the parties' resources.[2] The

Motion is needlessly cumulative and requests unnecessary relief.

Tellingly, Clinic Defendants' Motion lacks any legal standards by which the

Court can evaluate their request. If the Court decides it must consider this Motion,

the United State requests that it be construed as a cross-motion to dismiss for lack

of subject matter jurisdiction under Rule 12(b)(1). What Clinic Defendants truly

request is dismissal from this case, not that the United States be substituted where

it is already a named defendant. *Cf. Matthews v. United States*, 805 F. Supp. 712,

---

that has no analog in 42 U.S.C. § 233(a)–(n), and is inapplicable because Clinic Defendants are "deemed" only for purposes of 42 U.S.C. § 233. *Cf. Thomas v. Phoebe Putney Health Sys., Inc.*, 972 F.3d 1195 (11th Cir. 2020) (acknowledging "stark" distinctions between 42 U.S.C. 233 and 28 U.S.C. 2679(b)-(d), and further acknowledging that 28 U.S.C. 2679(d) applies only to actual "employees of the government," which deemed entities and individuals are not).

[2] *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (affirming district courts' inherent power to control their docket "with economy of time and effort for itself, for counsel, and for litigants"); *United States v. Miljus*, No. CIV.06-1832-PK, 2009 WL 2095981, at *2 (D. Or. Feb. 19, 2009), *report and recommendation adopted*, No. CIV. 06-1832-PK, 2009 WL 1211307 (D. Or. May 1, 2009) (exercising its inherent powers to manage its docket by striking a procedurally improper motion).

715 (E.D. Wis. 1992), *aff'd*, 28 F.3d 1216 (7th Cir. 1994) (observing that if an FTCA action against the United States already exists, and the FTCA is the exclusive recourse, claims against individual employees must be dismissed—no certifications or substitutions need occur).

## II.     The United States is Not the Proper Defendant

Plaintiffs named two sets of defendants, the United States and Clinic Defendants, but only one of them can be the proper defendant. One must be dismissed, and here, it is the United States. Any attempt by Clinic Defendants to rewrite FSHCAA to transform the United States into an umbrella insurer for non-medical malpractice liability that did not result from a grant-supported activity must be rejected. First, Clinic Defendants' grant application specifically states that they *do not provide general primary medical care to children*. Those services are exclusively referred to outside organizations and not paid for by Clinic Defendants. Meaning, Clinic Defendants do not use federal funds to provide medical services to children and such services are not grant supported activities. Second, Saylor Moretti's two visits to the on-site nurse were wholly unrelated to the underlying incident and cannot be relied upon to establish FSHCAA coverage. In any event, any service provided by that nurse was not a grant supported activity. Third, Nicole Moretti's substance use disorder treatment cannot be imputed to Saylor Moretti for FSHCAA purposes. Fourth, Clinic Defendants expressly disclaimed responsibility for the health and safety of patients' children outside the onsite daycare facility.

Finally, the negligence allegations are non-medical in nature and did not involve medical treatment performed by a licensed medical provider. Thus, the Attorney General correctly determined that it was not the proper party defendant, and the Court should reject Clinic Defendants attempt to shunt responsibility from their general liability insurer onto the United States.

The United States hereby relies on and incorporates the arguments it makes in Part I of its reply in support of the Motion to Dismiss filed concurrently with this response. *See* U.S. Reply in Support of Mot. to Dismiss, Part I.

## III.  FSHCAA Coverage is Limited to Medical Malpractice

Clinic Defendants ignore the text, context, and legislative history of FSHCAA as well as decisions from this Court and other courts in this District recognizing that FSHCAA's exclusive purpose is to provide coverage only for medical malpractice liability. Clinic Defendants' position about the class of claims to which FSHCAA applies is untenable as a matter of federal statutory interpretation. By reading the phrase "related function" in a vacuum, Clinic Defendants conjure a breathtaking expansion of FSHCAA's coverage, nullifying the Act's sole concern with medical malpractice and transforming the United States into an umbrella insurer for health centers for any conceivable form of liability.

Clinic Defendants cite not a single case explaining how federal statutes are interpreted and construed, instead urging the Court to ignore the Act's legislative history. *See* Clinic Defs.' Resp. to Mot. to Dismiss 23, ECF No. 33. Yet statutory

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE

interpretation is the key to resolving the present dispute: what do the words

"related functions" mean within a federal statute making the FTCA's remedy

exclusive for damages claims for "personal injury, including death," resulting from

"the performance of medical, surgical, dental, or related functions"? And what does

the subsequent enactment of FSHCAA, which was engrafted onto the Public Health

Service Act containing these words, and which textually refers to "malpractice"

nearly a dozen times, tell us about what Congress meant and intended?

### A. *FSHCAA's Text, Context, and Legislative History Show That the Act Concerns Providing Medical Malpractice Coverage*

It is a cardinal rule that words in a statute must be read, not in isolation, but

in their context and with a view to the overall statutory scheme, including the

history and purpose of the statute. *See Southwest Airlines Co. v. Saxon*, 142 S. Ct.

1783, 1788 (2022); *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2018). Courts

have a duty to construe a statute "in light of its context," not isolated provisions.

*Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson*,

559 U.S. 280, 290 (2010); *ASARCO, LLC v. Celanese Chem. Co.*, 792 F.3d 1203, 1210

(9th Cir. 2015).

When FSCHAA extended § 233(a) to health centers in 1992, Congress

understood that this provision was directed to conduct sounding in medical

malpractice.[3] Congress reiterated this understanding when it made FSCHAA

---

[3] *See* H.R. Rep. 102-823, at 6 (1992) ("Under the Committee bill, public or private nonprofit entities receiving Federal funds . . . would receive coverage under the

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE

permanent in 1995.[4] *See* Pub. L. No. 104-73, 109 Stat. 777 (1995) ("An Act: To amend the Public Health Service Act to permanently extend and clarify malpractice coverage for health centers, and for other purposes."). It is not just legislative history that makes this contextual point clear: FSCHAA grafted numerous provisions onto § 233 expressly referencing "malpractice." *See* 42 U.S.C. § 233(g)(1)(G)(ii), (g)(2), (h)(1), (m)(2), (n)(1)(A), (n)(1)(D)(i)–(ii), (n)(2)(A)(i), (n)(2)(C), (n)(2)(C)(ii), (n)(2)(D).

Congress also commissioned reports on the "government's risk exposure" under the statute, and each report focused on medical-malpractice liability. *See* H.R. Rep. 102-823, at 7 (1992) (requiring a "report on the medical malpractice liability claims experience of covered entities"); H.R. Rep. 104-398, at 7–8 (1995) (requiring another report on "the medical malpractice liability claims experience of health centers" to address "remaining concerns about the cost-effectiveness of the program"). HHS, for its part, issued guidance to qualifying center shortly after

_____

FTCA against medical malpractice claims."); *id.* at 4 ("The coverage would apply with respect to medical malpractice claims . . . ."); *id.* at 6 ("The FTCA would be the exclusive remedy for medical malpractice claims against these individuals and programs."); *id.* ("Extending FTCA coverage to grantees . . . will enable them to redirect funds now spend on medical malpractice insurance premiums . . . ."); *id.* at 9 ("The Committee anticipates that, by reducing the need for Federally supported health centers to purchase medical malpractice insurance coverage, this bill will result in substantial savings to those centers . . . .").

[4] *See* H.R. Rep. 104-398, at 4 (1995) (noting that "health centers are eligible for coverage for medical malpractice under the Federal Tort Claims Act"); *id.* ("Health centers . . . are covered for malpractice claims in the same manner as employees of the Public Health Service . . . .").

FSHCAA became law on how to complete a cost-benefit analysis to determine whether "conversion to FTCA malpractice coverage or retaining current private malpractice insurance is most appropriate." *See* Flaim Decl. ¶ 23, Ex. P, at 2. HHS continues to advise health centers that "even with FTCA coverage," they "will continue to need other types of insurance," such as "non-medical/dental liability coverage."[5]

Further, consistent with FSHCAA's statutory text and legislative history, this Court and other courts in this District have recognized that the Act provides coverage for medical malpractice. For example, in *Tyler-Bennett v. United States*, the Court wrote: "The [FSHCAA] . . . extend[s] the protections of the FTCA to eligible grantees under the Health Center FTCA Medical Malpractice Program . . . . The intent of the Program is to increase the availability of funds to grantee Health Centers by reducing or eliminating their medical malpractice insurance premiums." No. 3:16-CV-2300-SI, 2018 WL 3150676, at *2 (D. Or. June 27, 2018) (Simon, J.). The Court explained that the plaintiffs were deemed to be federal employees "for purposes of the medical malpractice coverage and limitations provided by the FTCA." *Id.*; *see also Osterlund v. United States*, No. 3:18-CV-01180-MO, 2020 WL 1068066, at *1 (D. Or. Mar. 5, 2020) ("The FSHCAA expands the [FTCA] to allow suit against the United States for torts committed by certain providers at "deemed" health centers, "essentially mak[ing] the U.S. government the medical malpractice

---

[5]  *See* Flaim Decl. Ex. D at 18.

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE

insurer for [deemed] health centers.") (quoting *Dedrick v. Youngblood*, 200 F.3d 744, 745 (11th Cir. 2000)); *Friedenberg v. Lane Cnty.*, No. 6:18-CV-00177-MK, 2019 WL 11717132, at *3 (D. Or. Nov. 6, 2019), *report and recommendation adopted*, No. 6:18-CV-00177-MK, 2020 WL 7779068 (D. Or. Dec. 31, 2020)[6] (recognizing that FSHCAA provides "the exclusive remedy for medical malpractice by a health care provider who falls within the definition of 42 U.S.C. § 233(g)" (quoting *Estes v. United States*, 302 Fed. Appx. 563, 564 (9th Cir. 2008)).

Clinic Defendants mention *none* of this, ignoring the context and history, not to mention some 10 express textual references in 42 U.S.C. § 233 itself, proving that FSHCAA was intended to cover only medical malpractice. Clinic Defendants ignore that it is a "most rudimentary rule of statutory construction . . . that courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part, including later-enacted statutes." *Branch v. Smith*, 538 U.S. 254, 281 (2003); *see also Ehrlenbaugh v. United States*, 409 U.S. 239, 243-44 (1972) (later legislative acts can be viewed as an interpretation of a prior act, helping to ascertain the meaning of words and resolving ambiguities and doubts); *Parker Drilling Mgmt. Svcs., Ltd. v. Newton*, 139 S.Ct. 1881, 1890 (2019) (courts must give effect, if possible, to every clause and word of a statute).

But even if one ignored FSHCAA (as Clinic Defendants do), and further

---

[6] This case is currently on appeal before the Ninth Circuit and was argued in February 2022. *Friedenberg v. Lane Cnty.*, No. 21-35078.

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE

ignored that FSHCAA is the *only* reason that entities like Clinic Defendants are even treated as if they were PHS employees for *any* purpose, straightforward principles of statutory interpretation demonstrate that the text of 42 U.S.C. 233(a) limits its operative scope to damages claims resulting from derelictions in functions specially fitted to medical and related professionals, otherwise known as "medical malpractice."

### B. The Public Health Service Act's Legislative History Shows That the Phrase "Related Functions" is Limited to Functions Similar to Medical, Dental, Surgical Functions

Section 233(a) was enacted in 1970 in response to a request from the Surgeon General to Congress that, "in the event there is a suit against a PHS doctor alleging malpractice, the Attorney General of the United States would defend them," because PHS physicians "cannot afford to take out the customary liability insurance as most doctors do." 116 Cong. Rec. H42,543 (1970). Why did PHS employees need malpractice insurance for acts taken within the scope of official duties? Because courts had begun to reject invocations of federal common-law official immunity by government physicians accused of medical malpractice, requiring a statutory fix. *See United States v. Smith*, 499 U.S. 160, 170 n.11 (1991). Ten years later, the Supreme Court acknowledged that § 233(a) was directed to "malpractice by certain Government health personnel." *See Carlson v. Green*, 446 U.S. 14, 20 (1980).

Against that backdrop, the operative clause of section 233(a) covers claims for damage for personal injury, including death, resulting from the performance of

"medical, surgical, dental, or related functions." These words must be interpreted according to their ordinary, contemporary, common meaning at the time Congress enacted the statute. *See Southwest Airlines*, 142 S. Ct. at 1788; *Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018). Moreover, these words must be read and interpreted in context, not in isolation—"related functions" must, by necessity, draw its meaning from the statute as a whole, including its surrounding words, context, and history. Applying these cardinal rules of interpretation eviscerates Clinic Defendants' position.

In 1968, shortly before the PHS Act was enacted in 1970, contemporary dictionaries defined medical to mean "of, relating to, or concerned with physicians or the practice of medicine often as distinguished from surgery; requiring or devoted to medical treatment." Webster's Third New International Dictionary Unabridged (1968). Surgical meant "of, relating to, or concerned with surgeons or surgery," as "distinguished from medical." *Id.* Dental, unsurprisingly, meant "of or relating to the teeth or dentistry." *Id.* "Dentistry" meant "the art or profession of a dentist; dental science and practice." *Id.* The term function was defined as "professional or official position," as in occupation, and "the action for which a person is specially fitted: role, duty, work."[7] *Id.* Claims resulting from the performance of actions for

_____

[7] Black's Law Dictionary from 1968 similarly defined these terms. Medical: "pertaining, relating, or belonging to the study and practice of medicine, or the science and art of the investigation, prevention, cure, and alleviation of disease;" Surgical: "the art or practice of healing by manual operation; that branch of medical science which treats of mechanical or operative measures for healing diseases,

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE

which medical, surgical, and dental professionals are specially fitted by training and occupation are what the statute covers—malpractice claims by any other name.

When confronted with a phrase like "related functions," two potential canons of construction are applicable, each of which leads to the same place. First, when a general clause follows specific examples in statutory enumeration, the general clause should be construed to embrace only those things similar in nature to the specific words to avoid ascribing unintended breadth. *See Dolan v. United States*, 546 U.S. 481, 486–87 (2006). Second, a word is known by the company it keeps. *Yates v. United States*, 574 U.S. 528, 543–44 (2015).

Under either canon, the kinds of "functions" that are encompassed within "related functions" must be limited to those functions similar to medical, surgical, and dental functions, each specially fitted to a medical professional who renders care to patients. When derelictions in professional standards employed for diagnosis, treatment, or cure occur, causing injury or death, the injured party—the patient (or his estate or representative in a death action)—has a cause of action for medical malpractice.[8] The term "medical malpractice" denotes not a particular

---

deformities, or injuries;" Dental: "a special department of medical science dealing with the treatment of the diseases, etc., of human teeth;" Function: "to perform, execute, administer; activity appropriate to a business or profession." Black's Law Dict., 4th ed. (1968).

[8] In 1968, Black's Law Dictionary defined malpractice as it pertained to physicians and surgeons as "bad, wrong, or injurious treatment of a patient, professionally and in respect to the particular disease or injury, resulting in injury, unnecessary suffering, or death to the patient, and proceeding from ignorance, carelessness,

theory or label for a claim, but a kind of *misconduct* in providing health services

that gives a patient a cause of action against the offending professional. *See supra*

note 7.

Congress, moreover, provided one specific example of what "related functions"

might encompass: "conduct of clinical studies or investigation." Congress does not

provide examples if it intends a general phrase to have an all-encompassing

meaning. *See Bates v. United States*, 533 U.S. 137, 142 (2008). In 1968, clinical

meant "of, relating to, or conducted in or *as if* in a clinic (as a medical clinic)."

Webster's New International Dictionary, 3d Ed. (1968) (emphasis supplied). A

clinical study or investigation involves observation of a volunteer or participant

with the goal of increasing medical knowledge generally, rather than diagnosis,

treatment, or cure of a patient—indeed, it is often not known whether the

---

want of proper professional skill, disregard of established rules or principles,
neglect, or a malicious or criminal intent." Black's Law Dictionary, 4th ed. (1968).
As this definition makes clear, "medical malpractice" is not about the theory or law
a plaintiff relies upon, but instead a category of misconduct upon which the plaintiff
founds a lawsuit against the offending physician.

In 1990, shortly before FSHCAA was enacted, Black's Law Dictionary defined
malpractice as "[p]rofessional misconduct or unreasonable lack of skill . . . usually
applied to such conduct by doctors, lawyers, and accountants." Black's Law
Dictionary, 6th ed. (1990). As in 1968, the term refers to a type of *misconduct*, not
the theory a plaintiff might use to pursue a remedy. Black's noted that in "medical
malpractice litigation, negligence is the predominant theory of liability," not the
*only* theory.

individual will helped, harmed, or neutrally-impacted.[9]  Human participants in such

trials continue to see the provider with whom they have an established patient-

physician relationship for ongoing health-care needs.[10]

In other words, an individual in a clinical study is not a "patient" in the

ordinary sense of the word. The goal of the clinical study or investigation is not an

individual's treatment, diagnosis, or cure. In all other respects, such studies involve

medical professionals applying their professional knowledge to learn something for

future benefit. Congress's inclusion of this specific example of a "related function"

clarifies the limited scope of that general clause: despite the absence of a true

patient-physician relationship, PHS officers engaged in clinical studies or

investigations remain immune because the "functions" involved still are specially

fitted to the medical profession, contributing to professional knowledge. Because the

general common-law rule was that medical malpractice arose only from a physician-

patient relationship, the inclusion of this clause ensured that conduct otherwise

amounting to malpractice would not be outside the scope of 233(a) merely because

the conduct occurred within a clinical study or investigation rather than in the

course of direct patient care.

Not only do Clinic Defendants fail to grapple with the ordinary meanings of

---

[9]  *See* U.S. National Library of Medicine, "What is a Clinical Study?" accessible at
https://clinicaltrials.gov/ct2/about-studies/learn#WhatIs (last accessed Aug. 15,
2022)
[10]  https://clinicaltrials.gov/ct2/about-studies/learn#Relationship (last accessed Aug.
15, 2022).

medical, surgical, dental, clinical, and functions, and how "related functions" must

be construed in light of its surrounding words, Clinic Defendants' interpretation of

"related functions" would render superfluous the inclusion of "surgical" within

233(a)'s operative clause. Surgical (and dental) functions are, quite obviously,

"related" to medical ones. But Congress nevertheless listed medical, surgical, and

dental separately in the same statute. Clinic Defendants' gloss renders "surgical"

and "dental" surplusage, which cannot be right. *Yates*, 135 S. Ct. at 543.

Other problems inhere in Clinic Defendants' argument. Clinic Defendants

*add* a word to 42 U.S.C. 233(a), such that the clause in question is not "medical,

surgical, dental, or related functions," but functions "related *to*" medical, surgical, or

dental ones. *See* Mot. to Substitute 15–16; *United States v. Perkins*, 887 F.3d 272,

276 (6th Cir. 2018) ("the replace-some-words canon of construction has never caught

on in the courts."). The statutory revision is subtle, but the effect profound; "related

to" has no boundary because relations logically stop nowhere.[11] *See New York State*

---

[11] Clinic Defendants suggest that a provision in the Code of Federal Regulations, 42
C.F.R. § 6.6(d), supports its view. That provision states that only "acts or omissions
related to the grant-supported activity of entities are covered." By its terms, this
regulatory language is not based on, let alone an interpretation of, 42 U.S.C. 233(a).
It is instead imposing an *additional* limitation on the scope of covered activities.
Not only must the conduct giving rise to suit result from the performance of a
"medical, surgical, dental, or related function," *i.e.*, amount to medical malpractice,
but it *also* must have been conduct *related to* grant-supported activity. In other
words, an entity might perform a medical function otherwise within the scope of 42
U.S.C. § 233(a)'s operative clause, but if the conduct was outside the scope of the
project grant, it is not eligible for coverage. *See* HRSA PIN 2008-01 (Jan. 13, 2009)
(explaining the scope of project limitation). Indeed, providing care to an infant like

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO
SUBSTITUTE

*Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655

(1995). To properly interpret a clause like "related functions," one must consult the

whole statute, including its purpose and objective, to ascertain the meaning—not

add words to expand its content and meaning. *See also Star Athletica, L.L.C. v.*

*Varsity Brands, Inc.*, 137 S.Ct. 1002, 1010 (2017) (interpretation of a phrase of

uncertain reach is not to be confined to a single sentence when the text of the whole

statute gives instruction as to its meaning; the whole law must be consulted to

ascertain meaning) (internal quotations and citations omitted).

### C. Clinic Defendants Misconstrue the Holding in Hui v. Casteneda

Instead of using recognized interpretive methods to support its expansive,

gloss on the clause "medical, surgical, dental, or related functions," Clinic

Defendants joust about language in 42 U.S.C. § 233(a) that is neither in dispute nor

relevant. Clinic Defendants argue that section 233(a) includes the words "exclusive"

and "any," and that the Supreme Court in *Hui v. Castaneda*, 559 U.S. 799 (2010),

held that these words connote a "broad and comprehensive" immunity. True, but

irrelevant to the issue posed in this case.[12]

---

Saylor Moretti was not within the scope of Letty Owing's grant-supported activity,
yet another reason why FSHCAA is inapplicable here.
[12] Equally misplaced is Letty Owings belief that the government's position
necessitates resort to state laws to define what "medical malpractice" means.
Section 233(a) and FSHCAA are *federal laws* requiring a uniform federal
interpretation. *See, e.g., Laird v. Nelms*, 406 U.S 797, 799 (1972); *United States v.*
*Neustadt*, 366 U.S. 705-06 (1961); *Trombley v. United States Dep't of the Army*, 666
F.2d 444, 446 (9th Cir. 1982). As noted above, words in federal statutes are given
their ordinary meaning at the time of enactment. The types of claims encompassed

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO
            SUBSTITUTE

No party in *Hui* disputed that the plaintiff was a patient who sustained "personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions" by PHS officers within the scope of office. *Hui* was about a prisoner treated by PHS officers, and he alleged that these PHS officers provided substandard medical care that resulted in a delayed diagnosis of penile cancer, leading to amputation and death. The only question in *Hui* was whether the FTCA's remedy against the United States was "exclusive" per the text of 233(a), or whether *Bivens* claims could be individually asserted against the PHS personnel for violations of the plaintiff's federal constitutional rights in parallel with a state law malpractice action against the United States under the FTCA based on the same alleged misconduct.[13] *Hui* held that "exclusive" in 233(a) means just that, so the PHS Officers were immune from *Bivens* claims "for the harms alleged in [that] case." *Hui*, 559 U.S. at 808, 812–13.

*Hui* holds only that the immunity in § 233(a) does not depend on whether a particular cause of action is specifically labeled "medical malpractice," and it covers

---

within those words is a federal law question, answered without regard to how various states may define "malpractice."

[13] Plaintiff in *Hui* filed suit against the United States under the FTCA for medical malpractice under state law. The issue was whether the plaintiff could pursue federal Eighth Amendment claims arising from the same alleged conduct against the same officers in their individual capacities. *See Castaneda v. United States*, 546 F.3d 682, 687 (9th Cir. 2008) (recounting procedural history and ultimately holding that 42 U.S.C. § 233(a) should not be read to pre-empt *Bivens* claims based on the same underlying conduct as FTCA claims) *rev'd sub nom Hui v. Castaneda*, 559 U.S. 799 (2010).

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE

constitutional claims for "deliberate indifference to [a patient's] serious medical needs." *Id.* at 803. Nothing in *Hui* disturbs the principle—borne out by the text, purpose, and history of § 233(a) and FSCHAA—that § 233(a) is directed at *conduct sounding in* traditional medical and related-professional malpractice torts. *Hui*, 559 U.S. at 808, 812–13 (holding that "the text of § 233(a) plainly indicates that it precludes a *Bivens* action against petitioners *for the harm alleged in this case*"—i.e., the defendants' failure to timely diagnose and treat the patient's penile cancer (emphasis added)). The scope of the clause "medical, surgical, dental, or related functions" was not at issue in *Hui*. Nor, for that matter, was the later-enacted FSHCAA implicated or subject to analysis because the officers in *Hui* were actual PHS officers, not private entities or individuals "deemed" to be PHS employees for limited purposes.

If, despite applying the foregoing principles of statutory interpretation, there remains any doubt or ambiguity about what "related functions" means, then the sovereign-immunity canon requires that the language be construed strictly, in favor of the sovereign. *See FAA v. Cooper*, 566 U.S. 284, 290–91, 294, 299 (2014) (applying canon to strictly construe term "actual damages" as used in the Privacy Act because even though it was possible to construe "actual damages" to include emotional distress, the government's interpretation limiting "actual damages" to actual economic loss was also plausible). Contrary to what Clinic Defendants believe, 42 U.S.C. § 233(a) represents a waiver of the United States' immunity because it

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE

expands the United States' liability to claims brought against private actors who could not otherwise subject the United States to suit. *Dedrick v. Youngblood*, 200 F.3d 744, 746 (11th Cir. 2000). Moreover, as the statute makes plain, the FTCA's remedy against the United States is available only for the class of claims within 42 U.S.C. 233(a) and FSHCAA's operative scope. The immunity conferred upon PHS officers and employees under 42 U.S.C. § 233(a) is coextensive with the exclusivity of the remedy against the United States.

Thus, even though Clinic Defendants' interpretation of the statute is refuted by its text and straightforward canons of construction, Clinic Defendants' interpretation of the statute to reach injuries sustained by invitees on its premises is not a "clearly required" reading of the United States' waiver of sovereign immunity under FSHCAA and 42 U.S.C. § 233(a).

### D. Clinic Defendants' Caselaw Is Inapposite

The non-precedential district court cases relied upon by Clinic Defendants do not advance their cause. *See* Mot. to Substitute 15–17. For one, in each of the cases Clinic Defendants cite, the plaintiff who alleged injury was a patient of the entity. For another, in each of the cases Clinic Defendants cite, the injury the plaintiff alleged plausibly resulted from the performance of medical, surgical, dental, or related functions. *Pomeroy v. United States*, for example, involved a nurse failing to follow a treatment plan. No. 17-cv-10211, 2018 WL 1093501, at *3–4 (D. Mass. Feb. 27, 2018). *Pomeroy*'s result may be correct, even if its reasoning, which failed to

UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO SUBSTITUTE

analyze the statute according to well-trod statutory interpretation principles, was

not.[14] *Pinzon v. Mendocino Coast Clinics Inc.*, is no more than a straightforward

application of *Hui*'s holding that changing the label or theory for a claim is

irrelevant if the underlying injury resulted from alleged misconduct in treating a

patient. No. 14-cv-05504, 2015 WL 4967257, at *3 (N.D. Cal. Aug. 20, 2015). To wit,

the plaintiff in *Pinzon* alleged that the malpractice he suffered was the product of

"racial discrimination" and "animus." Malpractice is squarely within Section

233(a)'s scope, regardless of how the plaintiff characterizes it or what the plaintiff

believes motivated it. *De La Cruz* involved an Eighth Amendment claim, just like

*Hui*, alleging that a PHS officer who informed a prisoner that his medical needs

would be accommodated failed to do so, causing a worsening of his condition. A PHS

officer's acts or omissions in devising a proper medical plan to account for a

prisoner's needs clearly is a "medical function" within the scope of official duties.

//

//

//

---

[14] *Pomeroy*'s analysis engages not with the statute, but rather relies upon a set of other non-binding district court decisions that, without grappling with the text, history, or purpose of 233(a) and FSHCAA, construe "related functions" expansively to cover virtually anything "interwoven" with the provision of medical services generally. None of these cases analyze the statutory text, context, history, or purpose of the relevant and applicable provisions, nor do they mention the sovereign immunity canon. Instead, these cases rely on each other in *seriatim*. That is not persuasive legal reasoning—it is just "turtles all the way down." *Rapanos v. United States*, 547 U.S. 715, 754 n.14 (2006).

## CONCLUSION

Based on the foregoing, the United States respectfully requests that the

Court deny the Motion to Substitute.


Dated:    September 9, 2022.

NATALIE K. WIGHT
United States Attorney
District of Oregon

*/s/ Michael J. Jeter*
MICHAEL J. JETER
Assistant United States Attorney

Attorneys for Defendant


## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b),
because it contains 6,591 words, including headings, footnotes, and quotations, but
excluding the caption, table of contents, table of cases and authorities, signature
block, exhibits, and any certificates of counsel.