**Lindsey H. Hughes, OSB #833857**
lhughes@keatingjones.com
Keating Jones Hughes PC
200 SW Market St., Suite 900
Portland, OR 97201-5730
Phone: (503) 222-9955
Fax: (503) 796-0699
Of Attorneys for Defendants Letty Owings Center
and Central City Concern

**Matthew S. Freedus, * DC Bar #475887**
**Rosie Dawn Griffin, * DC Bar #1035462**
mfreedus@ftlf.com
rgiffin@ftlf.com
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, NW, Suite 400
Washington, D.C. 20036
Tel: 202-466-8960

*Attorneys for Defendants Central City Concern and Letty Owings Center*

*Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| NICOLE MORETTI, as Personal Representative of the Estate of SAYLOR MORETTI, deceased,<br><br>    Plaintiff,<br><br>    v.<br><br>LETTY OWINGS CENTER, CENTRAL CITY CONCERN and the UNITED STATES acting through the DEPARTMENT OF HEALTH and HUMAN SERVICES,<br><br>    Defendants. | Case No. 3:21-cv-1525<br><br>**REPLY IN SUPPORT OF MOTION TO SUBSTITUTE**<br><br>By Letty Owings Center and Central City Concern |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................ 2

    I.    CCC's Motion To Substitute Asserts A Federal Immunity Right This Court Has Jurisdiction To Adjudicate And Must Decide Under The Ordinary Rules Of Evidence And Procedure ............................................... 2

    II.    The United States Is The Proper Defendant And Must Be Substituted In Place Of CCC And Letty Owings ................................................................ 5

        A.  CCC, Including Letty Owings And Its Personnel, Were Deemed To Be PHS Employees And Acted Within The Scope Of That Deemed Federal Employment ............................................................................. 5

        B.  Plaintiffs' Claims Result From Letty Owings' Performance of Medical Or Related Functions ................................................................ 7

    III.    The Government's Misreading Of The PHS Act And FSHCAA Immunity As Applying Solely To Medical Malpractice Actions Has Been Soundly Rejected ....................................................................... 13

CONCLUSION ........................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agyin v. Razmzan,*
  986 F.3d 168 (2d Cir. 2021).............................................................................6, 15

*Beecham v. United States,*
  511 U.S. 368 (1994)................................................................................................11

*Bennett v. United States,*
  375 F. Supp. 1180 (W.D. Wash. 2019).....................................................3, 8, 9, 13

*Estate of Booker v. Greater Phila. Health Action, Inc.,*
  10 F. Supp. 3d 656 (E.D. Pa. 2014) ..................................................................3, 7

*Brignac v. United States,*
  239 F. Supp. 3d 1367 (N.D. Ga. 2017) ..................................................................9

*C. K. v. United States,*
  No. 19-cv-2492, 2020 WL 6684921 (S.D. Cal. Nov. 12, 2020).................... *passim*

*Estate of Campbell ex rel. Campbell v. S. Jersey Med. Ctr.,*
  732 F. Appx. 112 (3d Cir. 2018)...............................................................................3

*Carlson v. Green,*
  446 U.S. 14 (1980)..................................................................................................14

*Castaneda v. United States,*
  546 F.3d 682 (9th Cir. 2008) .................................................................................14

*Cuoco v. Moritsugu,*
  222 F.3d 99 (2d Cir. 2000)......................................................................................14

*De La Cruz v. Graber,*
  No. 16-cv-1294-VBF, 2017 WL 4277129, 2017 U.S. Dist. LEXIS 156805
  (C.D. Cal. June 15, 2017) .......................................................................................16

*FDIC v. Meyer,*
  510 U.S. 471 (1994)..................................................................................................8

*Ford v. Sandhills Med. Found., Inc.,*
  4:21-cv-02307, 2022 WL 1810614 (D.S.C. June 2, 2022) ............................ *passim*

*Friedenberg v. Lane County,*
  6:18-cv-00177, 2019 WL 11717132 (D. Or. Nov. 6, 2019) ...................................15

*Goss v. United States*,
    353 F. Supp. 3d 878 (D. Ariz. 2018) ....................................................................10

*Hui v. Castaneda*,
    559 U.S. 799 (2010)................................................................................ *passim*

*Hunter v. Bryant*,
    502 U. S. 224 (1991)...........................................................................................2

*Kezer v. Penobscot Cmty. Health Ctr.*,
    No. 15-cv-00225, 2019 BL 141566 (D. Me. Mar. 21, 2019)...........................3, 5, 10

*M.G. v. United States*,
    No. 19-cv-1252-TWR-AHG, 2020 WL 6271186 (S.D. Cal. Oct. 23, 2020)..........................9

*Matthews v. United States*,
    805 F. Supp. 712 (E.D. Wis. 1992).......................................................................4

*Mixon v. CareSouth Carolina*,
    No. 4:22-cv-00269, 2022 WL 1810615 (D.S.C. June 2, 2022) ...................... *passim*

*Mohamad v. Palestinian Authority*,
    566 U.S. 449 (2012).............................................................................................8

*Z.B. ex rel. Next Friend v. Ammonoosuc Cmty. Health Servs. Inc.*,
    2004 WL 1571988 (D. Me. 2004) ........................................................................9

*Norfolk & Western Ry. v. Train Dispatchers*,
    499 U.S. 117 (1991)............................................................................................11

*Osterlund v. United States*,
    3:18-cv-001180, 2020 WL 3150676 (D. Or. Mar. 5, 2020) ...................................14

*K.R. ex rel. Perez v. Silverman*,
    No. 08-cv-2192, 2009 WL 2959580 (E.D.N.Y. Aug. 13, 2009) .......................10, 14

*Pomeroy v. United States*,
    No. 17-cv-10211-DJC, 2018 WL 1093501 (D. Mass. Feb. 27, 2018).................10, 13, 15, 16

*Sanchez v. United States*,
    No. 18-cv-1550-AJB-AGS, 2019 WL 3766615 (S.D. Cal. Aug. 9, 2019) ...............9

*Saucier v. Katz*,
    533 U.S. 194 (2001).............................................................................................2

*Smith v. Harbison*,
    446 F. Supp. 3d 1331 (M.D. Ga. 2020) ................................................................5

*Smith v. Harbison*,
    No. 4:19-cv-152, 2020 WL 6216758 (M.D. Ga. Oct. 22, 2020) ........................................3, 13

*Teresa T. v. Ragaglia*,
    154 F. Supp. 2d 290 (D. Conn. 2001) .........................................................................................9

*Tyler-Bennett v. United States*,
    No. 3:16-cv-2300, 2018 WL 3150676 (D. Or. June 27, 2018)..................................................14

**Statutes**

28 U.S.C. § 2679(d)(3) ........................................................................................................................2

28 U.S.C. § 2680(a) .............................................................................................................................2

42 U.S.C. § 233...........................................................................................................................1, 2, 3

42 U.S.C. § 233(a) .................................................................................................................... *passim*

42 U.S.C. § 233(c) ...............................................................................................................................4

42 U.S.C. § 233(g)(1)(A).........................................................................................................13, 15, 16

42 U.S.C. § 233(g)(1)(F).....................................................................................................................6

**Other Authorities**

42 C.F.R. § 6.6 .....................................................................................................................................5

Karl Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed*, 3 Vand. L. Rev. 395 (1950).........................................................................................................................................11

*Related*, *adj.*, *Oxford English Dictionary* (3d ed. Dec. 2009) ..........................................................8

*Related*, *Black's Law Dictionary* (Rev. 4th ed. 1968) ......................................................................8

*Similar*, *Black's Law Dictionary* (Rev. 4th ed. 1968)......................................................................8

*Similar*, *Oxford English Dictionary* (3d ed. Sept. 2019) ................................................................8

# INTRODUCTION

The United States is the proper defendant and must be substituted in place of defendants Central City Concern (CCC) and its Letty Owings Center facility (Letty Owings) to vindicate their statutory right to absolute immunity from Plaintiffs' suit.[1] Deemed to be federal Public Health Service (PHS) employees, and acting within the scope of their deemed federal employment, CCC and Letty Owings meet threshold immunity criteria under the PHS Act and Federally Supported Heath Centers Assistance Act ("FSHCAA"), together codified at 42 U.S.C. § 233 *et seq*. The core inquiry is thus whether Plaintiffs' claims "result[] from" CCC's and Letty Owings' "performance of medical . . . and related functions" within the meaning of 42 U.S.C. § 233(a). Construing the key statutory phrase in accordance with its ordinary and natural meaning, it is readily apparent that CCC and Letty Owings are immune from Plaintiffs' claims, which result from Letty Owings' alleged acts and omissions related to maternal-child health policies; hiring, training, staffing decisions; and maternal-child supervision and monitoring in residential treatment.

This Court has jurisdiction to decide the motion and substitute the United States in place of CCC and Letty Owings. The applicable legal standard for this Court's consideration of CCC's and Letty Owings' motion is straightforward and well-established—it is to be decided pursuant to the "ordinary rules of evidence and procedure." *Hui v. Castaneda*, 559 U.S. 799, 811 (2010).

The Government's arguments against jurisdiction and the deemed Defendants' immunity are meritless—indeed, identical arguments have been repeatedly rejected by district and appellate courts across the country. Here too they must fail.

---

[1] Although separately named in Plaintiffs' complaint, CCC and Letty Owings are a single legal entity.

REPLY IN SUPPORT OF MOTION TO SUBSTITUTE - Page 1

## ARGUMENT

I.      **CCC's Motion To Substitute Asserts A Federal Immunity Right This Court Has Jurisdiction To Adjudicate And Must Decide Under The Ordinary Rules Of Evidence And Procedure**

CCC's Motion to Substitute, ECF No. 32, asserts CCC's—and, by extension, Letty Owings Center's—statutory right to an immunity determination in federal court. As explained therein, the right derives from the PHS Act and FSHCAA of 1992, as amended in 1995, *together codified at* 42 U.S.C. § 233 *et seq.*

The Motion to Substitute is neither "needlessly cumulative" nor duplicative of the government's Motion to Dismiss (ECF No. 26). U.S. Br. at 3. The government's motion seeks dismissal for various reasons— failure to satisfy 42 U.S.C. § 233 requirements, operation of the FTCA's "discretionary function" exception (28 U.S.C. § 2680(a)), and failure to exhaust administrative remedies. U.S. Mot. at 1. Even full denial of the government's motion would not grant the relief CCC and Letty Owings seek, *i.e.* an order substituting the United States as the sole defendant in their place as to the claims against them. *Cf. Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) ("an immunity from suit rather than a mere defense to liability . . . like an absolute immunity . . . is effectively lost if a case is erroneously permitted to go to trial") (*citing Mitchell*, 472 U. S. at 526); *Hunter v. Bryant*, 502 U. S. 224, 227 (1991) (*per curiam*) (hence, the Court has "repeatedly [] stressed the importance of resolving immunity questions at the earliest possible stage in litigation").

The Government is likewise incorrect that the only statute authorizing a court to entertain a substitution motion is 28 U.S.C. § 2679(d)(3). U.S. Br. at 2 n.2. It is evident from statutory text and well-established by the courts—including the Supreme Court—that 42 U.S.C. § 233(a), (c),

and (g) authorize the relief sought. *See Hui*, 559 U.S. at 811 ("the procedure authorized by §

2679(d) is not necessary to effect substitution of the United States"); *Kezer v. Penobscot Cmty.*

*Health Ctr.*, No. 1:15-cv-00225, 2019 BL 141566, at \*9 (D. Me. Mar. 21, 2019) ("the lack of a

specific mechanism for substitution in § 233 does not prohibit the Court from ordering

substitution as an exercise of its limited jurisdictional authority") (citing *Hui*); *C. K. v. United*

*States*, No. 19-CV-2492, 2020 WL 6684921, at \*4 (S.D. Cal. Nov. 12, 2020) ("The Court finds

*Hui* to be controlling on the issue of the Court's ability to determine the applicability of Section

233(a)'s immunity protections and, if necessary, to 'effect substitution of the United States.'");

*see also Estate of Booker v. Greater Phila. Health Action, Inc.*, 10 F. Supp. 3d 656, 666 (E.D.

Pa. 2014) (noting through FSHCAA enactment, "Congress sought to expand § 233's existing

removal procedure to permit health centers and their employees to protect themselves"). As the

Third Circuit aptly noted, "[f]or section § 233(*l*)(2) to have any effect, a district court must at

least have jurisdiction to substitute the United States when it is appropriate to do so." *Estate of*

*Campbell ex rel. Campbell v. S. Jersey Med. Ctr.*, 732 F. Appx. 112, 116–17 (3d Cir. 2018).

Indeed, hardly a stranger to suits like this one, the Government has repeatedly found itself

on the *losing* side of a deemed defendant's substitution motion. *See, e.g., Bennett v. United*

*States*, 375 F. Supp. 1180, 1187 (W.D. Wash. 2019); *Smith v. Harbison*, No. 4:19-cv-152, 2020

WL 6216758, at \*2, \*5 (M.D. Ga. Oct. 22, 2020); *Estate of Booker*, 10 F. Supp. 3d at 670–71

(E.D. Pa. 2014); *Ford v. Sandhills Med. Found., Inc.*, 4:21-cv-02307, 2022 WL 1810614, at \*6–

8 (D.S.C. June 2, 2022); *Mixon v. CareSouth Carolina*, No. 4:22-cv-00269, 2022 WL 1810615,

at \*6–7 (D.S.C. June 2, 2022); *see also Kezer v. Penobscot Cmty. Health Ctr.*, 2019 BL 141566,

at \*4, \*10. In just one pertinent example, the District Court for the Southern District of

California recently rejected "the United States' assertion that the Court lacks the authority to

assess the applicability of Section 233(a)'s immunity provisions to the facts of [a] case [involving a deemed defendant]." *C. K.* 2020 WL 6684921, at *4. Observing that, "[t]he United States fail[ed] to cite a single case to support [its] argument [,]" the court looked instead to *Hui v. Castaneda*, which it concluded was "controlling on the issue of the Court's ability to determine the applicability of Section 233(a)'s immunity protections and, if necessary, to 'effect substitution of the United States.'" *Id.* (citing *Hui*, 559 U.S. at 811). Here, the Government's citation to a single authority—*Matthews v. United States*, 805 F. Supp. 712, 715 (E.D. Wis. 1992), *aff'd*, 28 F.3d 1216 (7th Cir. 1994)—fails to bolster its position. The fundamental difference between *Matthews* and the instant matter is that *Matthews* began as an action against the United States and named federal employees under the FTCA, with no dispute as to the United States' position as the proper defendant and thus no need for substitution. *Id.* at 714–15. Here, in contrast, the Government advances a position hostile to immunity, and, accordingly, has refused to certify under 42 U.S.C. § 233(c), which would effect substitution as a matter of law. There is no need for a federal defendant—deemed or otherwise—to move for substitution where the United States accepts responsibility for defending a case brought against it under the FTCA.

The applicable legal standard for this Court's consideration of CCC's and Letty Owings' motion is straightforward and well-established. As the Southern District of California correctly noted in *C.K.*, the Supreme Court has instructed that, although Section 233(a) immunity is "contingent upon the alleged misconduct having occurred in the course of the PHS defendant's duties . . . a defendant may make that proof pursuant to the ordinary rules of evidence and procedure." *C.K.*, 2020 WL 6684921, at *4 (quoting *Hui*, 559 U.S. at 811) ("If, as the United States claims, the Court does not have the ability to evaluate the applicability of Section 233(a)'s

immunity provisions, then to whom would a defendant 'make that proof pursuant to the ordinary rules of evidence and procedure?'").

Finally, federal courts have *ordered* deemed defendants to *move for substitution* following denial of a government motion to dismiss and/or remand to state court. *See, e.g., Smith v. Harbison*, 446 F. Supp. 3d 1331, 1339 (M.D. Ga. 2020) (ordering deemed defendant to submit motion to substitute following denial of government's dismissal motion); *Ford*, 2022 WL 1810614, at *2; *Mixon*, 2022 WL 1810615, at *2 n.3; *see also Kezer v. Penobscot Cmty. Health Ctr.*, No. 1:15-cv-00225, 2019 BL 141566, at *3 (D. Me. Mar. 21, 2019) (requesting briefing on scope of § 233(*l*)(2) hearing).

## II. The United States Is The Proper Defendant And Must Be Substituted In Place Of CCC And Letty Owings

The United States is the proper defendant and must be substituted in place of CCC and Letty Owings. As explained in CCC's initial brief in support of substitution, all relevant statutory elements for immunity are met here: CCC, including Letty Owings and its personnel, (1) were deemed to be PHS employees during the period in question; (2) acted within the scope of their deemed federal employment when providing residential treatment services to Nicole and Saylor Moretti; and (3) were engaged in the performance of medical or related functions; (4) from which plaintiffs' claims arose. Mot. to Substitute at 11, 13–22.

### A. CCC, Including Letty Owings And Its Personnel, Were Deemed To Be PHS Employees And Acted Within The Scope Of That Deemed Federal Employment

CCC, including its Letty Owings facility and its personnel, were deemed to be PHS employees during the period in question and, at all times relevant to plaintiffs' claims, acted within the scope of their deemed federal employment. 42 U.S.C. § 233(a), (g); 42 C.F.R. § 6.6 ("Only acts and omissions related to the grant-supported activity of entities are covered."); *see*

*also Agyin v. Razmzan*, 986 F.3d 168, 186 (2d Cir. 2021) ("The regulation . . . restates the proposition that the FSHCAA provides immunity only for conduct undertaken within the scope of the defendant's employment.") (citing 42 U.S.C. § 233(a), (g)).

First, as asserted in its Motion to Substitute, ECF No. 32, and reiterated in its Response in Opposition to the Government's Motion to Dismiss, ECF No. 33, CCC—including Letty Owings and its personnel—were irrevocably deemed to be federal employees during the period in question. Mot. to Substitute 8, ECF No. 32; Mot. to Substitute, Ex. 4 (official HHS notices confirming CCC's deemed status and coverage under the FTCA "comparable to an 'occurrence' policy without a monetary cap"); Opp'n to U.S. Mot. to Dismiss 7, ECF No. 33. HHS's determination to convey that deemed status, exclusively within the HHS Secretary's authority, is "final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding." 42 U.S.C. § 233(g)(1)(F).

Second, CCC—through Letty Owings and its personnel—was acting within the scope of its deemed federal employment at all times relevant to Plaintiffs' complaint. There is little, if any, genuine dispute on this point. Mot. to Substitute 11; Opp'n to U.S. Mot. to Dismiss 9. The government's argument that pediatric primary care services are "carved out" of CCC's scope of project is a distraction. U.S. Br. 1, 4. Plaintiffs' claims are not based on allegedly negligent pediatric primary care functions, as the Government itself acknowledges. *See* U.S. Reply in Supp. of Mot. to Dismiss 7 ("The claim's listed bases included alleged failures to train and supervise staff, have a co-sleeping policy, provide a crib, and monitor to prevent co-sleeping."); U.S. Br. 2 (incorporating same for factual background). Plaintiffs' claims are based instead on Letty Owings' alleged acts and omissions related to maternal-child health policies, hiring, training, and staffing decisions, and the supervision and monitoring functions of residential

REPLY IN SUPPORT OF MOTION TO SUBSTITUTE - Page 6

treatment. Am. Compl. ¶ 14.[2] Each of these functions is well within CCC's federal scope of

project, which has, since 1989, included residential substance use disorder treatment and

recovery services for young mothers and their children, aged infant to six years, at its Letty

Owings Center. Mot. to Substitute, Ex. 2 at 5 (Form 5B, including Letty Owings Center as

service delivery site).

### B.  Plaintiffs' Claims Result From Letty Owings' Performance Of Medical Or Related Functions

The key issue for purposes of CCC's and Letty Owings' asserted immunity is whether

Plaintiffs' claims result from the performance of medical or related functions. 42 U.S.C. § 233(a)

(extending immunity to claims "resulting from the performance of medical, surgical, dental, or

related functions"). As an initial matter, while it is axiomatic that waivers of sovereign

immunity—such as the FTCA—are to be strictly construed, § 233(a) is neither a provision of the

FTCA, nor a waiver of sovereign immunity. It is, instead, a grant of absolute immunity, which

confers an individual federal right to be free from the burdens of litigation altogether, regardless

of the scope of the exclusive remedy (here, the FTCA). *See Estate of Booker*, 10 F. Supp. 3d at

658 ("Upon receipt of a favorable deeming decision, [defendants] are immunized from personal

liability for malpractice claims so long as the allegedly negligent parties were acting within the

scope of their employment and providing services within the scope of the center's federally

funded activities."). The two concepts—sovereign immunity and individual immunity—are not

only logically and legally distinct, but the former (which applies to a limited remedy under the

---

[2] Documented instances of care provided to Saylor Moretti at Letty Owings were introduced into the record to call out an earlier red herring the Government drew across the trail—that "Saylor Moretti was not a patient" of CCC or Letty Owings. U.S. Br. 10–11. The factually inaccurate assertion was made in support of an equally flawed legal argument, as previously explained to this Court. Mot. to Substitute 9, 14.

FTCA) does not restrict the latter (which applies to "any . . . civil action or proceeding" arising out of the performance of "medical . . . and related functions"). 42 U.S.C. § 233(a); *see Hui*, 559 U.S. at 807 ("[T]he availability of a damages action under the Constitution for particular injuries . . . is a question logically distinct from immunity to such an action on the part of particular defendants" (citing *United States v. Stanley*, 483 U.S. 669, 684 (1987)).

The statute's application to claims "resulting from the performance of medical or. . . related functions" should be "construe[d] . . . in accordance with its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994); *see also, e.g., Mohamad v. Palestinian Authority*, 566 U.S. 449, 456 (2012) (concluding "individual," as used in Torture Victim Protection Act, does not include an organization). "Related," used as an adjective, most commonly means connected in some way. *See, e.g., Related, adj.,* Oxford English Dictionary (3d ed. Dec. 2009) ("Connected or having relation to something else."); *Related*, *Black's Law Dictionary* (Rev. 4th ed. 1968) ("Standing in relation; connected; allied; akin."). The primary and ordinary meaning of related is not, as the Government asserts, "similar." U.S. Br. at 12. "Similar" connotes not a *relation* but a *resemblance*. *See, e.g., Similar,* Oxford English Dictionary (3d ed. Sept. 2019) ("Having a significant or notable resemblance or likeness, in appearance, form, character, quantity, etc., to something stated or implied (though generally without being identical); of a like nature or kind. Of two or more persons or things: resembling or like one another."); *Similar*, *Black's Law Dictionary* (Rev. 4th ed. 1968), ("Nearly corresponding; resembling in many respects; somewhat like; having a general likeness . . . . Also, sometimes, exactly like; identical; exactly corresponding (at least in all essential particulars.")). Had Congress wanted to capture functions *similar* to medical, dental, and surgical functions, it could have done so by employing that very word in the statute. It did not. Instead, Congress

sought to—and did—enact a law extending immunity to claims resulting from "related functions." 42 U.S.C. § 233(a); *see Bennett*, 375 F. Supp 3d at 1187 (rejecting Government's "overly restrictive view on the coverage of § 233(a)" based on arguments "that under cannons [sic.] of statutory interpretation, the general term 'related function' should be construed to only embrace subjects similar in nature to those enumerated by the specific terms that preceded it.").

Tellingly, outside of the one example provided in the statute—the conduct of clinical studies or investigations—the government cannot furnish any functions that are "similar" to, but not encompassed within, medical, dental, and surgical functions. U.S. Br. 13–14. In contrast, it takes relatively little effort to amass a list of functions that bear a relation—rather than a similarity—to medical, dental, or surgical functions. And one need not pull examples from thin air: employing the most basic interpretive guideline—that undefined terms be given their ordinary meaning—courts have found that such disparate, but nonetheless "interwoven" functions as hiring, supervision, retention, ensuring patient privacy and the confidentiality of medical records, reporting suspected abuse of both patients and nonpatients, and other "administrative and operational duties" were "related functions" within the meaning of § 233(a). *See, e.g., C.K.*, 2020 WL 6684921, at *6–7; *Sanchez v. United States*, No. 18-CV-1550-AJB-AGS, 2019 WL 3766615, at *4 (S.D. Cal. Aug. 9, 2019); *M.G. v. United States*, No. 19-CV-1252-TWR-AHG, 2020 WL 6271186, at *3 (S.D. Cal. Oct. 23, 2020); *Bennett v. United States*, 375 F. Supp. 3d 1180, 1187 (W.D. Wash. 2019); *see also Brignac v. United States*, 239 F. Supp. 3d 1367, 1377 (N.D. Ga. 2017); *Teresa T. v. Ragaglia*, 154 F.Supp.2d 290, 300 (D. Conn. 2001) (concluding "FSHCAA . . . provides immunity" where plaintiffs alleged doctor's violation of his statutory duty to report child abuse constituted deliberate indifference and negligence per se); *Z.B. ex rel. Next Friend v. Ammonoosuc Cmty. Health Servs. Inc.*, 2004 WL 1571988 at *3 (D.

Me. 2004) (where negligence claims arose from nurse's alleged failure to report abuse of minor plaintiff observed while providing medical treatment to plaintiff's mother, "that negligence was 'related to' the provision of medical services because the duty to report arises out of the employees' status as medical professionals"), *Kezer*, 2019 BL 141566, at *2, *6 (breach of patient confidentiality claim against deemed PHS employees falls within the scope of § 233(a) immunity, and duties to maintain the confidentiality of patient PHI qualifies as a "related function"). The statute's express inclusion of "officers" and "governing board members" among those eligible for immunity underscores that "related functions" are those "interwoven" with the provision of medical care—in other words, *related*—rather than of like kind. *Goss v. United States*, 353 F. Supp. 3d 878, 886 (D. Ariz. 2018) ("Related "job functions may . . . be protected [under FSHCAA] if they are 'interwoven' with providing medical care.").

Moreover, read as a whole, "[t]he statute must cover a broader scope of activity than the delineated categories alone, or else 'related functions' would be mere superfluity." *Pomeroy v. United States*, No. 17-CV-10211-DJC, 2018 WL 1093501, at *2, *3 (D. Mass. Feb. 27, 2018). An interpretation resulting in superfluity is, of course, to be avoided: "a statute should 'be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *Id.* (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 66 (1st Cir. 2011)) *see also K.R. ex rel. Perez v. Silverman*, No. 08CV2192, 2009 WL 2959580, at *7 (E.D.N.Y. Aug. 13, 2009) (finding the § 233(a)'s reference to "medical . . . or related functions" indicates that the statute covers more than "garden variety medical malpractice claims"). The government's fondness for canons of construction cannot overcome the statute's plain meaning. U.S. Br. at 17 (invoking two unnamed canons), 23 (entreating Court to apply the "sovereign-immunity canon"). Rather than engaging in a

protracted canon battle, CCC and Letty Owings will simply note two rather elementary truisms. First, interpretive canons are merely vehicles for ascertaining the correct meaning of otherwise uncertain terms. *See, e.g., Norfolk & Western Ry. v. Train Dispatchers*, 499 U.S. 117, 129 (1991) ("The canon does not control . . . when the whole context dictates a different conclusion."); *Beecham v. United States*, 511 U.S. 368, 371 (1994) (noting that "this canon of construction [that items in a list tend to share the same attribute] is by no means a hard and fast rule" but merely a factor in construing a statute). Second, for every canon cited, it is entirely likely that an equal and opposite canon—or even the same canon—could be employed to justify a contrary result. *See* Karl Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed*, 3 Vand. L. Rev. 395 (1950). Here, where the language is plain, the Court need not resort to the government's canons.

Of course, as demands on health centers and their personnel increase, and as the nature of comprehensive medical care advances and evolves, novel factual questions may be presented to courts adjudicating immunity disputes. *See, e.g., See, e.g., Mixon*, 2022 WL 1810615, at *4–8 (D.S.C. June 2, 2022) (granting deemed health center defendant's motion to substitute United States, over its objection, in putative class actions arising out of health center's alleged failure to safeguard personal and confidential information of current and former patients from cyberattack); *Ford*, 2022 WL 1810614, at *4–8 (same). But the statutory framework within which complicated or novel facts must be assessed is itself neither complex nor ambiguous.

Turning now to Plaintiff's Complaint, and reading it against the statute's plain language, it is clear that Plaintiffs' claims "result[] from" CCC and Letty Owings' allegedly negligent "performance of medical or related services" within the meaning of § 233(a). Plaintiffs' complaint alleges CCC—through Letty Owings—had a duty to provide "residential care"

appropriate to the "needs" of both Nicole and Saylor Moretti, including the "management" and

"supervision" of their sleeping environment "to avoid the known risk of co-sleeping—where a

parent and child fall asleep in the same bed." *Id.* ¶ 13. Letty Owings allegedly violated the

standard of care by allowing Nicole and Saylor Moretti to sleep in the same bed, despite the

American Academy of Pediatrics statement that bed-sharing is "one of the most dangerous

practices leading to death of infants in the U.S." *Id.* ¶ 11. Letty Owings, per Plaintiffs'

allegations, lacked appropriate policies to avoid co-sleeping, failed to provide adequate staff to

prevent co-sleeping, failed to provide a safe sleep surface, failed to adequately train and

supervise staff, and failed to monitor and avoid Plaintiffs' co-sleeping arrangement. *Id.* ¶ 14; *see*

*also* Decl. of Sean M. Flaim, ¶ 11, ECF No. 42, (describing Plaintiffs' initial administrative

claim as "alleg[ing] that CCC and Letty Owings were negligent in failing to train its staff, failing

to supervise its staff, failing to explicitly have a policy on co-sleeping, failing to provide a crib in

the room for Saylor, and failing to monitor patients to prevent an unreasonable risk of co-

sleeping."), ¶ 16 (confirming that although mothers at Letty Owings were generally responsible

for child safety, "[a]t night, LOC treatment assistant staff perform bed checks for unsafe sleep.").

As the Government correctly notes, treatment assistants (among other personnel) "implemented"

"Nicole Moretti's plan of care [which] included alcohol and drug treatment." *Id.* ¶ 16.  As part of

that care, treatment assistants perform overnight checks to ensure resident safety. *Id.* Such

supervision and monitoring—whether performed by licensed physicians or other personnel under

their supervision—is a medical or related function within the meaning of § 233(a).[3]

---

[3] The Government argues that "straightforward principles of statutory interpretation" limit 42
U.S.C. § 233(a)'s "operative scope to damages claims resulting from derelictions in functions
specifically fitted to *medical and related professionals*." U.S. Br. 10 (emphasis added).  These
"straightforward principles" apparently disregard the statute's text, which applies § 233(a)'s
immunity to non-medical professionals as well, including "*any officer, governing board member*,

### III.    The Government's Misreading Of The PHS Act And FSHCAA Immunity As Applying Solely To Medical Malpractice Actions Has Been Soundly Rejected

The Government's attempt to convince this Court that Section 233(a) immunity is limited to medical malpractice runs counter to the decision of every court to have carefully considered the question in the wake of *Hui*.  The Government has, in fact, lost this argument again and again in district and appellate courts across the country. *See, e.g.*, *Bennett*, 375 F. Supp. at 1187; *Pomeroy*, 2018 WL 1093501, at *2–4; *Smith*, 2020 WL 6216758, at *2, *5; *C.K.*, 2020 WL 6684921, at *6–7; *Estate of Booker*, 10 F. Supp. at 670–71; *Ford*, 2022 WL 1810614, at *6–8; *Mixon*, 2022 WL 1810615, at *6–7. Here too, the argument must fail.

Crucially, the Supreme Court in *Hui* resolved this question by squarely rejecting the position the Government advocates here. There, the Supreme Court confronted the scope of § 233(a) immunity and unanimously concluded that it bars all actions or proceedings against PHS employees arising out of their performance of medical or related functions, regardless of the label applied to a claim or whether the claim is ultimately viable or compensable under the FTCA. *Hui*, 559 U.S. at 806. In reaching its decision, the Supreme Court in *Hui* looked to "[t]he breadth of the words 'exclusive' and 'any,'" as well as "the provision's inclusive reference to all civil proceedings arising out of 'the same subject-matter.'" *Id*. (construing § 233(a)). Given this language, the Court had no trouble finding that § 233(a) immunity is not limited to medical negligence actions, but instead "easily accommodates both known and *unknown* causes of action" arising out of a broadly defined set of duties. *Id.* at 806 (concluding that § 233(a) immunity applies to *Bivens* claims, even though statute predates *Bivens* decision) (emphasis added). Congress commanded that the immunity be "the same" for deemed and actual PHS

---

or employee" of a deemed entity and logically apply to individuals supervised by medical professionals in carrying out plans of care.  *See* 42 U.S.C. § 233(g)(1)(A) (emphasis added).

defendants—*i.e.*, applicable to claims arising from a defendant's performance of "medical . . . or related functions" undertaken within the scope of her employment. In accord with *Hui*, numerous courts—entertaining cases both before and after *Hui* was decided—have held that "Section 233(a) is not limited to coverage for medical malpractice claims." *See K.R.*, 2009 WL 2959580, at *7 (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000) and observing "the plain language of the statute—'resulting from the performance of medical . . . or related functions'—indicates that it covers more than garden variety medical malpractice claims"); *accord Hui*, 559 U.S. at 805, 808 (endorsing Second Circuit's reading expressed in *Cuoco* and rejecting Ninth Circuit's contrary, more narrow reading that "Congress, through certain statutes, made the FTCA a substitute remedy for medical malpractice actions, so it could—but did not—declare the FTCA to be a substitute remedy for federal constitutional claims," *Castaneda v. United States*, 546 F.3d 682, 700 (9th Cir. 2008)).[4]

The Government's citations to various unpublished decisions mentioning "medical malpractice," U.S. Br. at 8–9, are unconvincing, both in light of prevailing authority and on their own merits. Taking each in turn: in *Tyler-Bennett v. United States*, No. 3:16-cv-2300, 2018 WL 3150676, at *1 (D. Or. June 27, 2018), neither the deemed defendants' entitlement to immunity nor the extent to which that immunity applies to suits other than those sounding in medical malpractice was before the court; in *Osterlund v. United States*, 3:18-cv-001180, 2020 WL 3150676, at *1-2 (D. Or. Mar. 5, 2020), the scope of immunity was likewise not at issue, the

---

[4] Notably, the 9th Circuit's overturned decision relied on its reading of *Carlson v. Green*, 446 U.S. 14, 20 (1980).  The United States now parrots that rejected reasoning. *Compare Castaneda*, 546 F.3d at 700 (referring to "what . . . the Supreme Court actually said was preempted under § 233(a), *et al., i.e.*, actions for 'malpractice'") *with* U.S. Br. 10 ("the Supreme Court acknowledged that § 233(a) was directed to 'malpractice by certain Government health personnel'") (both citing *Carlson*, 446 U.S. at 20).

court's dismissal turned instead on the plaintiff's failure to adequately plead he was harmed by a deemed defendant where the doctor who allegedly harmed him was neither an employee nor direct contractor of the deemed health center; in *Friedenberg v. Lane County*, 6:18-cv-00177, 2019 WL 11717132, at *5–6 (D. Or. Nov. 6, 2019), the district court erroneously narrowed the scope of immunity based on claimant identity (and in contravention of *Hui*) and the case awaits decision at the Ninth Circuit, docketed as *Friedenberg v. Lane Cnty.*, No. 21-35078.

There is likewise no merit to the Government's argument that *Hui* is inapplicable to this matter because it involved "actual PHS officers, not private entities or individuals 'deemed' to be PHS employees for limited purposes." U.S. Br. at 18. The scope of the immunity is, by statute, "the same." 42 U.S.C. § 233(g)(1)(A); *Agyin*, 986 F.3d at 177 ("Moreover, Razmzan received from the federal government a delegation of the same legal immunity that is extended to employees of the Public Health Service."). Scattered references to "medical malpractice" in legislative history do not disturb this unequivocal statutory language. As the U.S. District Court for the District of South Carolina observed mere months ago, the Government's assertion "that the FSHCAA affords protection only for medical malpractice claims . . .. directly contradict[s] *Hui*." *Mixon*, 2022 WL 1810615, at *6. As that court observed, other courts across the country have "likewise rejected the notion that § 233(a) is limited to medical malpractice claims." *Id.* (citing, *inter alia*, *Pomeroy v. United States*, 2018 WL 1093501, at *3 (D. Mass. Feb. 27, 2018); *Mele*, 2008 WL 160226, at *3; *Logan v. St. Charles Health Council, Inc.*, 2006 WL 1149214, at *2 (W.D. Va. May 1, 2006); *Teresa T.*, 154 F. Supp. 2d at 299).

The Government's arguments based on the statute's purported purpose also fail. First, Congress enacted FSHCAA to "enable health centers in underserved and underfunded communities to attract qualified physicians by obtaining malpractice insurance through the

FTCA." *Pomeroy*, 2018 WL 1093501, at *2 (citing 138 Cong. Rec. S1782-01, 1992 WL 279542 (Oct. 8, 1992); 138 Cong. Rec. H11552-01, 1992 WL 280140 (Oct. 5, 1992)). The legislative purpose does not foreclose an interpretation of Section 233(a) as extending immunity to Plaintiffs' claims in this case. As the First Circuit held in *Pomeroy*, "[a] wrongful death action arising from the negligent treatment of a patient—within the walls of the treatment facility and in direct contravention of the patient's treatment plan—hardly appears incongruous with [FSHCAA's] stated purpose." *Id.* (determining, over Government opposition, that § 233(a) immunity applied to deemed defendant's negligent provision of food).

Second, the Government can't explain what the statute *would* immunize if limited—as they assert—to only claims of medical malpractice. U.S. Br. at 16, n.12. The best offered for the Government's assertion that there is a single federal definition of "malpractice as it pertained to physicians and surgeons" is a dictionary definition from 1968, which fails entirely to shed light on a statutory immunity that by its plain terms immunizes not only medical professionals but also "officers," "governing board members," and health centers as corporate entities. 42 U.S.C. § 233(a), (g)(1)(A); *see also C.K.*, 2020 WL 6684921, at *1, *5 (holding that § 233(a) covered claims against medical administrator and rejecting Government's argument that the defendant was "a medical administrator . . . not involved in the evaluation or care of Plaintiff"); *De La Cruz v. Graber*, No. 16-cv-1294-VBF, 2017 WL 4277129, at *4, 2017 U.S. Dist. LEXIS 156805, at *7 (C.D. Cal. June 15, 2017) (holding that the defendant was entitled to immunity under § 233(a) from plaintiff's claims that he was harmed "by the manner in which [defendant] performed her duties as Medical Administrator"); *Mixon*, 2022 WL 1810615, at *4–8 (D.S.C. June 2, 2022) (immunizing health center, as a corporate entity, against putative class actions relating to cyberattack); *Ford*, 2022 WL 1810614, at *4–8 (same). An I-know-it-when-I-see-it definition is,

of course, imminently unworkable in any application, and especially so where, as here, a federal

immunity right is concerned. Instead, the broad language employed in the statutory provisions at

issue here provides a comprehensive grant of immunity that easily accommodates Plaintiffs'

claims against CCC and Letty Owings, who were, at all times relevant, deemed to be PHS

employees and working within the scope of their deemed federal employment, and whose

performance of medical and related functions within a residential treatment facility form the

heart of Plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, and those stated in CCC's Motion to Substitute, ECF No. 32,

the Court should substitute the United States as the sole defendant in place of CCC and Letty

Owings.

DATED this 7th day of October, 2022.

Respectfully submitted,

KEATING JONES HUGHES, P.C.

*s/Lindsey H. Hughes*
Lindsey H. Hughes
lhughes@keatingjones.com
Keating Jones Hughes, P.C.
200 SW Market Street, Suite 900
Portland, OR 97201-5737
(t) 503-222-9955
(f) 503-796-0699

Matthew S. Freedus, DC Bar # 475887
mfreedus@ftlf.com
Rosie Dawn Griffin, DC Bar # 1035462
rgriffin@ftlf.com
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, NW, Suite 400
Washington, DC 20036
(t) 202-466-8960
(f) 202-293-8103
*Attorneys for Defendants Central City*
*Concern and Letty Owings Center*

REPLY IN SUPPORT OF MOTION TO SUBSTITUTE - Page 17

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **REPLY IN SUPPORT OF MOTION TO SUBSTITUTE** on the following:

Karl Anuta
Law Office of Karl G. Anuta, P.C.
735 SW First Ave, 2ⁿᵈ Floor
Portland, Oregon 97204
Phone: (503) 827-0320
Email: kga@integra.net
Of Attorneys for Plaintiff

Michael J. Jeter
Assistant U.S. Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
Phone: (503) 727-1025
Email: michael.jeter@usdoj.gov
Attorneys for Defendant United States
Department of Health and Human Services

by electronically mailed notice from the court to above attorneys on said day.

DATED this 7ᵗʰ day of October, 2022.

KEATING JONES HUGHES, P.C.

*s/Lindsey H. Hughes*

Lindsey H. Hughes, OSB No. 833857
lhughes@keatingjones.com,  FAX 503-796-0699
Of Attorneys for Defendants Letty Owings Center and
Central City Concern

Matthew S. Freedus, DC Bar # 475887
mfreedus@ftlf.com
Rosie Dawn Griffin, DC Bar # 1035462
rgriffin@ftlf.com
1129 20th Street, NW, Suite 400
Washington, DC 20036
(t) 202-466-8960
(f) 202-293-8103
*Attorneys for Defendants Central City Concern and Letty Owings Center*