**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **NICOLE MORETTI**, and **WENDY NOVINS**, as Personal Representative of the Estate of **SAYLOR MORETTI**, deceased, | Case No. 3:21-cv-1525-SI **OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| **LETTY OWINGS CENTER, CENTRAL CITY CONCERN**, and the **UNITED STATES** acting through the **DEPARTMENT OF HEALTH AND HUMAN SERVICES**, | |
| Defendants. | |

Karl G. Anuta, LAW OFFICE OF KARL G ANUTA PC, 735 SW First Avenue, 2nd Floor, Portland, OR, 97204. Of Attorneys for Plaintiffs.

Lindsey H. Hughes and Trent J. Andreasen, KEATING JONES HUGHES PC, 200 SW Market Street, Suite 900, Portland, OR, 97201; and Matthew S. Freedus and Rosie Dawn Griffin, FELDESMAN TUCKER LEIFER FIDELL LLP, 1129 20th Street NW, Suite 400, Washington, D.C., 20036. Of Attorneys for Defendants Letty Owings Center and Central City Concern.

Natalie K. Wight, United States Attorney, and Michael J. Jeter, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR, 97204. Of Attorneys for Defendants United States.

**Michael H. Simon, District Judge.**

This case arises from the death of Saylor Moretti, an infant. Plaintiffs are Nicole Moretti (Saylor's mother) and Wendy Novins (personal representative of Saylor's estate). Plaintiffs allege that Saylor's death resulted from the negligence of employees of Central City Concern and the Letty Owings Center (Letty Owings) (collectively, the Center). Plaintiffs further allege that the United States is liable for the Center's negligence under the Federally Supported Health Centers Assistance Act (FSHCAA) and the Federal Tort Claims Act (FTCA). Plaintiffs sue both the United States and the Center. The Center moves to substitute the United States as the sole Defendant, which the United States opposes. The United States also moves under Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss all claims asserted against the United States for lack of subject matter jurisdiction. For the reasons discussed below, the Court GRANTS the Center's motion to substitute and GRANTS in part and DENIES in part the United States' motion to dismiss.

## STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A defense of lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by a court on its own initiative, at any

time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)). For facial attacks, the Court resolves the Rule 12(b)(1) motion "as it would a motion to dismiss under Rule 12(b)(6)." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In "determin[ing] whether the [plaintiff's] allegations are sufficient as a legal matter to invoke the court's jurisdiction," the Court "[a]ccept[s] the plaintiff's allegations as true and draw[s] all reasonable inferences in the plaintiff's favor." *Id.*

## B. FTCA

Unless it waives sovereign immunity, the United States is immune from suit. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The FTCA provides federal courts with jurisdiction over "claims against the United States . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). In the FTCA, Congress waived "the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). A claimant may not bring an action in

federal court under the FTCA's waiver of sovereign immunity, however, until the claimant has exhausted the FTCA's administrative remedies. *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."); *see also Cadwalder v. United States*, 45 F.3d 297, 300 (9th Cir. 1995) (stating that the FTCA "administrative claim prerequisite is jurisdictional"). The FTCA establishes that a tort claim against the United States is barred if not presented to the appropriate federal agency within two years of accrual or brought in within six months of from a final written denial by the federal agency.

The FTCA also expressly retains immunity from some tort liability through a number of statutory exceptions. 28 U.S.C. § 2680. If one of those exceptions applies, a court lacks subject-matter jurisdiction to hear a claim. *See Simmons v. Himmelreich*, 578 U.S. 621, 626 (2016) ("[D]istrict courts do not have jurisdiction over claims that fall into one of the 13 categories of 'Exceptions' because 'section 1346(b) of this title'—the provision conferring jurisdiction on district courts—does 'not apply' to such claims."). The discretionary function exception provides that the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (cleaned up). "The FTCA was created by Congress with the intent to compensate individuals harmed by government

negligence, and as a remedial statute, it should be construed liberally, and its exceptions should

be read narrowly." *Terbush v. United States*, 516 F.3d 1125, 1135 (9th Cir. 2008) (quotation

marks omitted). "The United States bears the burden of proving the applicability of the

discretionary function exception." *Bailey v. United States*, 623 F.3d 855, 859 (9th Cir. 2010).

### C. FSHCAA Immunity

The Ninth Circuit has described immunity under 42 U.S.C. § 233(a) as follows:

> The FSHCAA provides that health centers that receive funding
> under § 330 of the Public Health Service Act ("PHSA"), 42 U.S.C.
> § 254b ("§ 330"), may be deemed PHS employees. 42 U.S.C.
> § 233(g). PHS employees are granted immunity from certain
> claims arising out of their performance of "medical, surgical,
> dental or related functions." 42 U.S.C. § 233(a). When § 233
> immunity applies, the United States is substituted as the defendant
> and the action proceeds as one brought under the Federal Torts
> Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680.
>
> * * *
>
> Under § 233(a), actual PHS employees, whether commissioned
> officers or employees of the Public Health Service, qualify for
> immunity under the FTCA for damages resulting from the
> performance of medical, surgical, dental, or related functions while
> acting within the scope of their office or employment. Congress
> extended the protection provided to actual PHS employees in
> § 233(a) to "deemed" PHS employees under § 233(g). 42 U.S.C.
> § 233(g)(1)(A) (establishing that for entities deemed to be PHS
> employees "[t]he remedy . . . shall be exclusive of any other civil
> action or proceeding to the same extent as the remedy against the
> United States"). An entity must be "deemed" an employee of the
> PHS by the HHS to receive such protection. The HHS makes this
> determination after reviewing an entity's application and assessing
> whether it meets certain qualifications.

*Friedenberg v. Lane Cnty.*, 68 F.4th 1113, 1118, 1125 (9th Cir. 2023) (cleaned up) (footnotes

omitted) (alterations in original). "Congress enacted the FSHCAA to prevent these community

health centers from having to use their federal funds to purchase costly medical malpractice

insurance, which is one of the most significant expenses for health centers." *Id.* at 1124-25 (quotation marks omitted).

The Secretary's annual "deeming" determination does not "conclusively establish PHSA and FTCA coverage with respect to a particular lawsuit when . . . an action is brought against a physician affiliated with a federally funded health center. Rather, coverage hinges on the circumstances in which care has been provided." *O'Brien v. United States*, 56 F.4th 139, 148-49 (1st Cir. 2022). For patients of the health center, however, "coverage is straightforward: the Secretary's 'deeming' determination 'appl[ies] with respect to services provided' to 'all patients of the entity.'" *Id.* at 149 (alteration in *O'Brien*) (quoting 42 U.S.C. § 233(g)(1)(B)(i)). Further, coverage is not limited to patients. Deemed PHS employees are covered for actions that "include claims regarding services provided to all patients of the entity, and in limited circumstances to non-patients. While the claim must result from the performance of these services, the claimant need not be a patient nor a recipient of medical or dental care for a deemed PHS employee to invoke § 233 immunity." *Friedenberg*, 68 F.4th at 1126 (quotation marks and citation omitted).

There are limitations on the extent of deeming. *See* 42 U.S.C. § 233(g)(1)(B) (describing scope of deeming). Even when an entity has been deemed a PHS employee, that deeming does not necessarily apply to all the entity's activities. *Sherman by & through Sherman v. Sinha*, 843 F. App'x 870, 873 (9th Cir. 2021). Only services related to the deemed entity's grant-supported activity fall within deeming. 42 C.F.R. § 6.6(d). When a health center's conduct is deemed, it enjoys the same immunity from suit as do PHS employees. 42 U.S.C. § 233(g)(1)(A).

## BACKGROUND

Because the government filed a facial motion to dismiss, the Court accepts as true the facts alleged in Plaintiffs' amended complaint and draws all reasonable inferences in Plaintiffs' favor. For the Center's motion to substitute, the Court reviews materials outside the record.

Central City Concern has 19 facilities and provides primary medical, pharmacy, enabling, and mental health and psychiatry services to people experiencing homelessness in the Portland metropolitan area. Letty Owings is a residential center providing enabling services[1] and treatment for substance abuse disorders. This includes women who are pregnant or have young children. The parties do not dispute that the Center was funded through the FSHCAA and that the Center was a deemed facility under the statute during the relevant time.

Ms. Moretti became an in-patient resident at the Letty Owings on August 8, 2019. On September 7, 2019, while a resident at the Center, Ms. Moretti gave birth to her son, Saylor, at an outside medical facility. After the birth, she and Saylor returned to the Center, where they slept in Ms. Moretti's room each night. Plaintiffs contend that the Center was responsible for providing a residential care facility appropriate to the needs of Ms. Moretti and Saylor. On October 4, 2019, Ms. Moretti co-slept with Saylor in Ms. Moretti's bed at the Center. While she was sleeping, "[M]s. Moretti's weight came to rest or press against Saylor in such a way as to prevent his adequate breathing and he died as a result." Am. Compl. ¶ 12 (ECF 19 at 4). Plaintiffs allege that the Center negligently caused the wrongful death of Saylor. Specifically, Plaintiffs allege the Center was negligent in failing to monitor the Morettis' sleeping arrangements, failing to provide a crib, failing to have an adequate policy to prevent co-sleeping, failing adequately to staff the facility, failing to train staff, and failing to supervise staff.

---

[1] Enabling services are defined by the United States Department of Health and Human Services' Health Resources and Services Administration as "non-clinical services that do not include direct patient services that enable individuals to access health care and improve health outcomes." Martinez, *et al.*, *Relationships between Enabling Services use and Access to Care Among Adults with Cardiometabolic Risk Factors: Findings from the 2014 National Health Center Patient Survey* (BMC Health Serv Res., Mar. 2022).

**DISCUSSION**

The United States argues that the Center's motion to substitute is procedurally improper and duplicative of the government's motion to dismiss and should be stricken. The United States also argues that if the motion is not stricken, it should be denied because the United States is not a proper defendant, as argued in its motion to dismiss. The Court first addresses the Center's motion to substitute and then addresses the United States' motion to dismiss. Because there are some overlapping arguments between the two motions, the Court discusses those arguments as appropriate.

**A. Motion to Substitute**

**1. Court's Ability to Decide Substitution**

The government argues that the Center's motion is procedurally improper, it has no legal standards by which the Court can decide the motion, it is needlessly duplicative of the United States' motion to dismiss, and the Court should summarily deny or strike the motion. If the Court considers the motion, the United States requests that the Court construe it as a cross-motion to dismiss the Center under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

The Court does not find that the motion is duplicative of the United States' motion to dismiss. Although there are some overlapping arguments as to whether the United States is a proper defendant, the arguments and admissible evidence are not identical. For example, whether the Center is entitled to immunity under the FSHCAA is not at issue in the United States' motion to dismiss and the issues of exhaustion and the discretionary function exception are not at issue in the Center's motion to substitute.

For the United States' procedural arguments, the United States argues that the only procedure under which it can be substituted is through 28 U.S.C. § 2679, the FTCA's "scope

certification procedure," which does not apply in this context. This argument, however, was

rejected by the Supreme Court in *Hui v. Castaneda*, 559 U.S. 799 (2010).

> Because § 233 does not provide a similar mechanism for scope
> certification in federal-court actions, respondents contend that PHS
> defendants seeking to invoke the immunity provided by § 233(a)
> must rely on the FTCA's scope certification procedure, set forth in
> § 2679(d). . . .
>
> We agree with petitioners that there is no reason to think that scope
> certification by the Attorney General is a prerequisite to immunity
> under § 233(a). To be sure, that immunity is contingent upon the
> alleged misconduct having occurred in the course of the PHS
> defendant's duties, but a defendant may make that proof pursuant
> to the ordinary rules of evidence and procedure. . . . Thus, while
> scope certification may provide a convenient mechanism for
> establishing that the alleged misconduct occurred within the scope
> of the employee's duties, the procedure authorized by § 2679(d) is
> not necessary to effect substitution of the United States.

*Id.* at 810-11 (footnote omitted).

As for whether the Court may generally consider "substitution" or whether the Center is

actually bringing a factual motion under Rule 12(b)(1), the United States' argument has little

practical effect—either way the result is the same, the United States would be the sole remaining

defendant. The United States is putting form over substance in making this argument.

Additionally, courts repeatedly have rejected the argument that they lack authority to

assess immunity under § 233 and substitute the United States as a defendant over its objection.

*See* ECF 46 at 8-9 (citing cases). As explained by the Southern District of California:

> Mixed in with its analysis of Section 233(l) is the United States'
> assertion that the Court lacks the authority to assess the
> applicability of Section 233(a)'s immunity provisions to the facts
> of this case. The United States fails to cite a single case to support
> that argument. To the contrary, in *Hui v. Castaneda*, the United
> States Supreme Court found that although immunity under
> Section 233(a) is "contingent upon the alleged misconduct having
> occurred in the course of the PHS defendant's duties, . . . *a
> defendant may make that proof pursuant to the ordinary rules of
> evidence and procedure.*" 559 U.S. at 811 (emphasis added). If, as

the United States claims, the Court does not have the ability to
evaluate the applicability of Section 233(a)'s immunity provisions,
then to whom would a defendant "make that proof pursuant to the
ordinary rules of evidence and procedure?" The Court finds *Hui* to
be controlling on the issue of the Court's ability to determine the
applicability of Section 233(a)'s immunity protections and, if
necessary, to "effect substitution of the United States." 559 U.S.
at 811. That the Court must do so "based on the ordinary rules of
evidence and procedure" is made simple in this case because, as set
forth below, the operative facts are not in dispute.

*C. K. v. United States*, 2020 WL 6684921, at *4 (S.D. Cal. Nov. 12, 2020) (citations and footnote

omitted) (alteration and emphasis in original); *see also Ford v. Sandhills Med. Found., Inc.*, 2022

WL 1810614, at *4 (D.S.C. June 2, 2022) (concluding that the defendant health entity "is entitled

to immunity from suit and to substitution of the United States as the defendant if this suit

concerns actions or omissions within the scope of its employment as a deemed federal

employee" and that the procedure is appropriate under § 233(a)); *Kezer v. Penobscot Cmty.

Health Ctr.*, 2019 BL 141566, at *9 (D. Me. Mar. 21, 2019) (analyzing the relevant statutes and

caselaw and concluding that "the lack of a specific mechanism for substitution in § 233 does not

prohibit the Court from ordering substitution as an exercise of its limited jurisdictional

authority").

Further, in considering the jurisdiction of the district court in the context of the removal

clause of § 233, in an unpublished decision the Third Circuit explained that § 233 must permit a

district court to make determinations of immunity and substitute the United States as a defendant

or it could defeat the purpose of the statute. *Est. of Campbell by Campbell v. S. Jersey Med.

Ctr.*, 732 F. App'x 113, 116-17 (3d Cir. 2018). The Third Circuit found a "limited" implied grant

of subject matter jurisdiction for the district court "to determine 'the appropriate forum or

procedure'; that is, to decide whether to remand the case or to substitute the United States as a

party and deem the action as one brought under the FTCA. For section 233(l)(2) to have any

effect, a district court must at least have jurisdiction to substitute the United States when it is appropriate to do so." *Id.* The same principle applies in considering immunity and substitution of the United States when removal is not at issue. For § 233(g)(1)(A) and (F) to have any effect, a district court must at least have jurisdiction to make determinations of immunity and substitute the United States when appropriate. *Cf. Agyin v. Razmzan*, 986 F.3d 168, 184 (2d Cir. 2021) (stating that under § 233, the employee "is entitled to immunity from suit and to substitution of the United States as the defendant if this suit concerns actions he took within the scope of his employment as a deemed federal employee").

The Court rejects the government's arguments that the Court lacks the ability to consider the Center's motion or that the Court has no legal standards by which to consider the motion. The Court evaluates immunity as instructed by the Supreme Court—"based on the ordinary rules of evidence and procedure." *Hui*, 559 U.S. at 811. The Court uses those ordinary rules to determine whether the challenged conduct meets the requirements of 42 U.S.C. § 233(a) that the conduct was (1) "the performance of medical, surgical, dental, or related functions" (2) by an employee "acting within the scope of his office or employment." Additionally, to be eligible for immunity, the challenged conduct must relate to the grant supported activity on which the Center received its deemed status. *See* 42 C.F.R. § 6.6(d).

### 2. Whether Substitution is Appropriate

Here, the arguments overlap with the United States' motion to dismiss, and the Court considers the briefing and arguments from both motions. The United States argues that substitution is not appropriate because: (1) FSHCAA immunity is limited only to medical malpractice claims, and the challenged conduct does not constitute medical malpractice; (2) Saylor was not a patient of the Center and therefore the coverage of the FSHCAA does not extend to Saylor; and (3) Saylor was not receiving substance abuse disorder treatment and the

alleged negligence did not involve any medical service provided to him or services within the scope of the grant-funded activity.

After the briefing, the Ninth Circuit decided *Friedenberg*. The *Friedenberg* decision resolves the government's first two arguments and frames the analysis for the government's third argument. The Ninth Circuit rejected the contention that § 233(a) immunity is limited to medical malpractice claims. *Friedenberg*, 68 F.3d at 1128 ("While Congress's concerns regarding malpractice insurance premiums were the driving force behind the legislation, Congress did not limit § 233 immunity to 'only' malpractice claims when it could have."). The Ninth Circuit concluded that "[a]ny other reading would render the 'related functions' language in the statute superfluous." *Id.*

As to Saylor's status as a patient, although if he was a patient who received medical or related services within the scope of the Center's grant the question of immunity would be straightforward, Saylor's status as a patient is not dispositive. In *Friedenberg*, the Ninth Circuit clarified that "Section 233 immunity does not turn on *who* brings the claim, and neither does it require that the alleged tort occur during the provision of services. Rather, § 233 immunity depends on whether the claim arose out of the defendant's performance of 'medical, surgical, dental, or related functions.'" *Friedenberg*, 68 F.4th at 1118 (emphasis in original) (quoting 42 U.S.C. § 233(a)). Thus, the Court must analyze whether Saylor's death arose out of the Center's performance of medical or related functions. *Friedenberg* also provides guidance for that analysis.

In *Friedenberg*, the plaintiffs alleged that the deemed employees were liable for failing to report to law enforcement a court-ordered patient's "refusal to comply with the medical terms of

his probation." *Id.* The United States argued that the failure to report was not a medical or related

service. The Ninth Circuit described evaluating a related service as follows:

> Plaintiffs' proposition that § 233 immunity applies only when the
> injury occurs "during the provision of medical treatment to a
> patient" ignores the statutory text. Such an interpretation would
> unduly limit the immunity protection under § 233(a) and render
> meaningless the portion of the statute that covers "related" medical
> functions.
>
> * * *
>
> We recognize that there are cases that declined to extend § 233
> immunity to defendants because the alleged tortious conduct had
> nothing to do with the provision of medical services and thus could
> not be a "related function." The alleged tortious conduct here,
> however, is not so far removed from medical services that it cannot
> qualify as related conduct. Rather, this case approximates the cases
> discussed above where district courts found that the tortious
> conduct was "related" to the provision of medical services. As in
> *Mele*, where the district court reasoned that a health center's
> termination of a prisoner from a jail diversion program was
> "related" to the provision of medical services, here, the
> Defendants' failure to report Bryant's violations of his treatment
> plan to the court was "related" to the provision of medical services.
>
> Further, as in *Teresa T.* and *Z.B.*, the alleged wrongdoing in this
> case is directed at the Defendants' failure to report Bryant's
> violations of his treatment plan in their capacities as medical
> professionals. Indeed, any duty that the Defendants had to report
> Bryant's violations and potential threat to the public was tied to
> their status as medical health professionals. In the above cases, the
> conduct in question had a distinct connection to the provision of
> medical, surgical, or dental services. Such conduct falls within the
> ambit of § 233.
>
> In sum, Defendants' failure to report is intertwined with their
> provision of medical services to Bryant, or at the very least, is
> "related" to them. Accordingly, we conclude that the tortious
> conduct in this case qualifies as a "related function" under
> § 233(a).

*Id.* at 1129-30 (footnotes and citations omitted).

Ms. Moretti was the Center's residential treatment patient. Plaintiffs allege that Ms. Moretti resided at the Center as part of her treatment and that, as a result of her residence there, the Center had obligations to provide safe sleeping arrangements for both Ms. Moretti and Saylor. The Center describes services provided to Ms. Moretti as including medical care plus "additional care from Letty Owings staff related to her post-partum condition and to Saylor's interdependent health and wellbeing, including counseling and behavior management related to safe sleeping." ECF 32 at 15.

It is undisputed that residential treatment services are the focus of the Center's grant-support activities. The Center provides residential treatment to women who are pregnant. These women will give birth, and the mothers and babies will need to sleep. Providing a minimum level of safety for mothers in treatment and their newborn babies while they sleep is intertwined with the provision of residential treatment services, or at a minimum "related" to such services.

The Morettis' residence at the Center was an aspect of the treatment program in which Ms. Moretti participated. Any duty that the Center had to prevent co-sleeping arose out of the patient-provider relationship between Ms. Moretti and the Center. It was tied to the Center employees' role as medical health professionals providing residential treatment. The Center's acts or omissions related to its alleged duty to prevent co-sleeping are sufficiently intertwined with its provision of residential treatment services to Ms. Moretti, or at the very least, is "related" to them. Accordingly, the tortious conduct alleged qualifies as a "related function" under § 233(a). Substitution is proper.

### 3. Conclusion

The Court grants the Center's motion to substitute. The United States is the proper defendant. The Court also rejects the United States' motion to dismiss based on the argument

that the United States is not a proper defendant. The Court next considers the United States'

motion to dismiss based on its remaining arguments.

**B. Motion to Dismiss**

The United States moves to dismiss on the alternate grounds that the discretionary

function exception applies and that Ms. Moretti's claims should be dismissed for failure to

exhaust her administrative remedies.[2]

**1. Discretionary Function Exception to FTCA**

**a. Discretionary Function Test**

A two-step test is used to determine whether the discretionary function exception applies.

*Terbush*, 516 F.3d at 1129 (citing *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)). The

first step is to determine whether the challenged actions "involve an 'element of judgment or

choice.'" *Id.* (quoting *Gaubert*, 499 U.S. at 322). If there is a statute, regulation, or policy that

prescribes a specific course of action, the inquiry ends because the employee "has no rightful

option but to adhere to the directive." *Id.* (quoting *Berkovitz*, 486 U.S. at 536). When there is an

element of choice or judgment, a court moves to the second step of the *Berkovitz* test. "The

second prong of the *Berkovitz* test asks whether the challenged action involved a policy

judgment. The exception is meant to protect 'political, social, and economic judgments' that are

the unique province of the Government, not all decisions involving some discretion." *Marlys*

*Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1214 (9th Cir. 2001).

---

[2] In its reply, the United States made the argument the Ms. Moretti lacked standing, but the Court declines to consider arguments raised for the first time in reply. *See, e.g.*, *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (noting that "arguments raised for the first time in a reply brief are waived"); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

"For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in . . . policy." *Gaubert*, 499 U.S. at 324-25. The court's inquiry focuses on "the nature of the actions taken and whether they are susceptible to a policy analysis." *Id.* at 325.

### b.  Analysis

The government argues that the negligent conduct alleged by Plaintiffs is subject to the discretionary function exception to the FTCA. The government has met the requirements of the first step of the discretionary function exception by showing that there was no federal statute, regulation, or policy that specifically prescribed a course of action that the Center was required to follow to prevent co-sleeping. Because there was no federally mandated course of conduct, the Center's actions or omissions "involve[d] an element of judgment or choice." *Terbush*, 516 F.3d at 1129 (quoting *Gaubert*, 499 U.S. at 322).

Applying the second step, the Court must determine whether the judgments at issue are of the type that may be subject to a policy analysis. *Gaubert*, 499 U.S. at 325. "[T]o be protected from suit, the challenged decision need not *actually* be grounded in policy considerations, so long as it is, by its nature, susceptible to a policy analysis." *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (emphasis in original) (quotation marks omitted). The Ninth Circuit "ha[s] regularly concluded that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Miller v. United States*, 992 F.3d 878, 888 (9th Cir. 2021) (quotation marks omitted); *see also Nurse*, 226 F.3d at 1001 (stating that "allegedly negligent and reckless employment, supervision and training . . . . fall squarely within the discretionary function exception"). The establishment, promulgation, and enforcement of policies, including

establishing priorities, assigning resources, making budget decisions, and assigning personnel, also generally fall within the discretionary function exception. *Nurse*, 226 F.3d at 1002.

At the same time, "[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception." *Gaubert*, 499 U.S. at 325 n.7. The Ninth Circuit has observed that compliance with existing policy or professional standards generally is not subject to a policy analysis:

> First . . . we have generally held that the *design* of a course of governmental action is shielded by the discretionary function exception, whereas the *implementation* of that course of action is not. Second, and relatedly, matters of scientific and professional judgment—particularly judgments concerning safety—are rarely considered to be susceptible to social, economic, or political policy.

*Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005) (emphasis in original). "The decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not" *Bear Med.*, 241 F.3d at 1215. "[S]afety measures, once undertaken, cannot be shortchanged in the name of policy." *Id.* at 1216-17.

There is an exception, however, "where the *implementation itself* implicates policy concerns." *Chadd v. United States*, 794 F.3d 1104, 1112 (9th Cir. 2015) (emphasis in *Chadd*) (quoting *Whisnant*, 400 F.3d at 1182 n. 3). "Thus, [the Ninth Circuit] has subsequently stated that so long as a decision involves *even two competing policy interests*, it is susceptible to policy analysis and is thus protected by the discretionary function exception." *Id.* (cleaned up) (emphasis in original). Therefore, "at step two of the discretionary-function-exception analysis, where there is even *one* policy reason why officials may decide not to take a particular course of action to address a safety concern, the exception applies." *Id.* (emphasis in original).

### i.   Plaintiffs' allegations involving policy-makers

Plaintiffs have failed to allege facts that would support a finding that the Center's alleged inadequate staffing, failure to have a sufficient co-sleeping policy, and failure to train and supervise staff were not susceptible to policy analysis. The Ninth Circuit has established that decisions related to staffing, training, supervision, and promulgation and enforcement of policies generally are susceptible to policy analysis. *Miller*, 992 F.3d at 888; *Nurse*, 226 F.3d at 1001-02.

In response to the government's motion to dismiss, Plaintiffs argue that the Center failed to implement its *existing* policy. This fact, if alleged, might establish that the Center's conduct was not the type subject to social, economic, or political policy considerations. This is because "'a failure to effectuate policy choices already made' will not be protected under the discretionary function exception." *Bear Med.*, 241 F.3d at 1215 (quoting *Camozzi v. Roland/Miller and Hope Consulting Grp.*, 866 F.2d 287, 290 (9th Cir. 1989)); *see also Summers v. United States*, 905 F.2d 1212, 1215 (9th Cir. 1990) ("[W]here the challenged governmental activity involves safety considerations under an established policy, rather than the balancing of competing policy considerations, the rationale for the exception falls away."). Further, "the implementation of basic safety measures [is] not a policy-based decision" and is "exempt from discretionary function analysis." *Bear Med.*, 241 F.3d at 1215. Plaintiffs did not, however, allege an existing policy in their amended complaint or a failure to implement basic safety measures.[3] Thus, Plaintiffs' negligence claim based on the Center's alleged inadequate staffing, failure to create an adequate co-sleeping policy, and failure to train and supervise staff is dismissed under the discretionary function exception.

---

[3] Plaintiffs provided extra-record materials, such as the Letty Owings Center Safe Sleep Protocol dated 10/31/19. The Court may consider materials outside the record for the Center's motion to substitute, but not for the government's facial motion under Rule 12(b)(1).

### ii. Plaintiffs' claim for failure to monitor

The government fails to meet its burden to show that Plaintiffs' claim based on the alleged failure to monitor is subject to the discretionary function exception as alleged. This claim alleges that the Center failed to monitor Ms. Moretti and Saylor while they slept, allowing the crush death of Saylor. The United States tries to frame this claim as an allocation of staffing or resources claim—that Plaintiffs are challenging the lack of overnight medical personnel or insufficient overnight staff. That is not what is alleged in the claim.

A court's "inquiry into the nature of a decision is not meant to open the door to ex post rationalizations by the Government in an attempt to invoke the discretionary function shield. . . . There must be reasonable support in the record for a court to find, without imposing its own conjecture, that a decision was policy-based or susceptible to policy analysis." *Bear Med.*, 241 F.3d at 1216 (discussing a claim at summary judgment). Plaintiffs' failure to monitor claim as alleged is not directed at the staffing level or the overnight medical staffing policy. Plaintiffs have other claims challenging policies and staffing levels.

Plaintiff's failure to monitor claim is directed at the personnel on shift the night Saylor died, who failed properly to monitor Ms. Moretti and Saylor. A staff member neglecting to monitor a sleeping patient is not a decision "grounded in economic, social, or political policy." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). This is not a claim asserted against policy makers. This claim involves the *implementation* of the policies and resource allocations that generally are the subject of the discretionary function exception. "The Government cannot claim that both the decision to take safety measures and the negligent implementation of those measures are protected policy decisions. This argument would essentially allow the Government to administratively immunize itself from tort liability under applicable state law as a matter of 'policy.'" *Bear Med.*, 241 F.3d at 1215. Nor does the government explain how this is the type of

PAGE 19 – OPINION AND ORDER

implementation that itself requires a policy consideration, "such as where government officials must consider competing fire-fighter safety and public safety considerations in deciding how to fight a forest fire." *Whisnant*, 400 F.3d at 1182 n.3. Therefore, Plaintiffs' negligence claim based on the Center's failure to monitor is not subject to dismissal at this stage of the litigation under the discretionary function exception.

### iii.  Plaintiffs' claim for failure to provide a crib

In opposing Plaintiffs' claim based on the Center's alleged failure to provide a crib, the United States asserts in a footnote that this allegation "concerns both alleged duties that a premises owner might owe to an overnight guest, as well as the allocation of resources and does not sound in medical malpractice." The United States also argues that this alleged fact should not be accepted as true and asserts that it can provide facts showing otherwise under Rule 12(b)(1). the government, however, brought a facial attack against Plaintiffs' complaint, and thus the Court accepts Plaintiffs' well-pleaded factual allegations as true and does not consider evidence outside of the amended complaint.[4]

The Court rejects at this stage of the litigation that providing a sleeping apparatus for a newborn when a clinic provides residential treatment for pregnant women is a policy consideration under the discretionary function exception. The Center's alleged duty is analogous to the examples discussed in *Whisnant*,

> Like the government's duties to maintain its roads in safe
> condition, to ensure the use of suitable materials in its building
> projects, and to monitor the safety of its logging sites, the
> government's duty to maintain its grocery store as a safe and
> healthy environment for employees and customers is not a policy
> choice of the type the discretionary function exception shields.
> Cleaning up mold involves professional and scientific judgment,

---

[4] Plaintiffs clarified in their response that Ms. Moretti had to bring in her own bassinet because the Center provided no sleeping apparatus for Saylor.

> not decisions of social, economic, or political policy. "Indeed, the crux of our holdings on this issue is that a failure to adhere to accepted professional standards is not susceptible to a policy analysis."

*Whisnant*, 400 F.3d at 1183 (quoting *Bear Med.*, 241 F.3d at 1217).

Just as there was no social, economic, or political policy choice to remove toxic mold, there is no policy choice to provide a newborn infant a sleeping apparatus. That decision involves the professional and medical judgment of Center staff that newborn babies should not sleep with their mothers. The Center specifically provides residential treatment services to pregnant homeless women and other underserved populations. Co-sleeping is well known as a dangerous practice that may cause the death of newborns. "Because removing an obvious health hazard is a matter of safety and not policy, the government's alleged failure . . . cannot be protected under the discretionary function exception." *See id.* There was no legitimate reason for the Center to allow a newborn baby in a residential treatment program without providing appropriate sleeping apparatus. Thus Plaintiffs' negligence claim based on the Center's alleged failure to provide a crib also is not subject to dismissal under the discretionary function exception.

### 2.  Exhaustion of Administrative Remedies

#### a.  Standards

The FTCA allows claimants to sue the government for actions in tort, as long as they first give the appropriate federal agency the opportunity to resolve the claim. 28 U.S.C. § 2675(a). The FTCA's administrative exhaustion requirement is jurisdictional and may not be waived. *Jerves v. United States*, 966 F.2d 517, 519 (9th Cir. 1992). A tort claim is "forever barred" if the claimant does not notify the appropriate agency of the claim within two years. 28 U.S.C. § 2401(b).

The Ninth Circuit interprets the FTCA's administrative exhaustion requirement strictly. *Cadwalder*, 45 F.3d at 300. "The plain language of section 2675(a) requires the claimant to first present the claim to the appropriate Federal agency." *Id.* at 301 (quotation marks omitted). This requirement is satisfied when either the claimant or her legal representative files an administrative claim on the claimant's behalf. *Id.* A claimant may provide the agency with notice of her claim by sending a Standard Form 95 (SF-95) or by providing other written notification. 28 C.F.R. § 14.2(a).

### b. Analysis

The United States argues that any claims by Ms. Moretti are barred because she failed to exhaust her administrative remedies and the two-year time limit to file an administrative claim has passed. Plaintiffs, in response, argue that the government had constructive notice of Ms. Moretti's claims based on the inclusion of her name in both the SF-95 and the accompanying letter that Saylor's estate sent to the Department of Health and Human Services.

The parties do not dispute that Ms. Moretti's claims accrued on October 4, 2019, the date of Saylor's death. The parties also agree about what written notice was sent by Plaintiffs to the United States. A timely SF-95 was filed by Saylor's estate. The form lists Wendy Novins, personal representative of Saylor's estate, as the claimant. The signature appearing on the form is that of the attorney for Saylor's estate. Ms. Moretti's name appears only in the "basis of claim" section, which describes the events that gave rise to the claim. This description indicates that Ms. Moretti is Saylor's mother, that she was a patient at the Center at the time of Saylor's death, and that Saylor's death resulted from co-sleeping with his mother while they both resided at the Center. Ms. Moretti is not listed as a claimant, her signature does not appear on the form, and no claims on her behalf are alleged. The accompanying letter contains no information related to Ms. Moretti that is not also included in the SF-95.

The mere appearance of a family member's name on an injured party's SF-95 does not put the government on notice that the named family member is making additional claims on her own behalf. *See Johnson v. United States*, 704 F.2d 1431, 1442 (9th Cir. 1983) (holding that wife's claim for loss of consortium was barred where she was listed as spouse on her husband's SF-95 form but was not listed as a claimant, did not sign as a claimant, did not describe her separate claim on the form, and did not file her own form, explaining that "[t]he primary goal of the procedures established by the FTCA is to facilitate satisfactory administrative settlements," and that the wife's "failure to file a claim for loss of consortium precluded the possibility of any such settlement"). The inclusion of Ms. Moretti's name in the description of the events that gave rise to the claim did not provide notice to the United States of Ms. Moretti's separate claims. Indeed, it is difficult to see how Saylor's claim could have been presented to the United States without Ms. Moretti's name being included.

In response to the United States' motion to dismiss, Plaintiffs contend that the cover letter they sent with the SF-95 provided notice. Plaintiffs also argue that a letter they sent the state of Oregon provided notice of Ms. Moretti's claim. Plaintiffs state that they expect discovery will show that the letter was forwarded to the United States. The letter states that "Nicole Moretti will also make a claim of negligence against [Oregon Department of Human Services] for damages suffered in the name of the estate of Saylor Moretti." ECF 29, at 56.

There are several problems with Plaintiffs' arguments. First, Plaintiffs are relying on extrinsic evidence in a facial motion on the pleadings, which is improper. Second, Plaintiffs' letter to the United States did not mention Ms. Moretti's claim or provide any notice of that claim, but merely mentions Ms. Moretti in the same factual context as the SF-95. For Plaintiff's letter to the Oregon agencies, Plaintiffs are relying on a letter sent to third parties, and Plaintiffs

offer only speculation that the letter was forwarded to the United States. Third, even if the

Oregon letter were forwarded to the United States, Plaintiffs offer no authority suggesting that a

letter forwarded by a third party may suffice as proper notice to exhaust administrative remedies

under the FTCA. Plaintiffs offer a SF-95 form by one third party (the personal representative of

Saylor's estate) stating that she will file a claim against the United States with a cover letter

conveying the same information. Plaintiffs add a letter possibly forwarded by another third party

in which an attorney states that the estate of Saylor will file claims against various Oregon

agencies that contains one sentence stating that Ms. Moretti also will file a claim against

*Oregon's* Department of Health and Human Services. Plaintiffs seek to combine those two to

serve as notice that Ms. Moretti will file a claim against the United States. These

communications, however, fail to meet the requirements of 28 U.S.C. § 2675(a) that "*the*

*claimant or his legal representative . . .* file (1) a written statement sufficiently describing the

injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."

*Cadwalder*, 45 F.3d at 301 (emphasis added in *Cadwalder*) (quoting *Warren v. United States*

*Dept. of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984) (en banc)).

The government did not receive the required notice that Ms. Moretti would bring

additional claims on her own behalf, precluding any opportunity to settle those claims. Because

she failed to comply with the requirements of § 2675(a) and the two-year timeframe to file notice

of her claims has passed, Ms. Moretti's claims are barred.

## CONCLUSION

The Court GRANTS the Center's motion to substitute (ECF 32). Going forward, the

United States shall be the sole Defendant in this case. The Court GRANTS in part and DENIES

in part the United States' motion to dismiss (ECF 26). The Court grants the motion as against the

claims of Plaintiff Nicole Moretti and DISMISSES her claims with prejudice. The Court grants

the motion as against Plaintiff Wendy Novins' negligence claim on behalf of Saylor Moretti's estate based on failure to create an adequate sleeping policy, inadequate staffing, and failure to train and supervise employees, and DISMISSES those claims without prejudice. The Court denies the motion with respect to Plaintiff Novins' negligence claim based on the Center's alleged failure to monitor and failure to provide a crib, and those claims may proceed. Plaintiff Novins may file a second amended complaint within 14 days from the date of this Opinion and Order if she believes she can cure the deficiencies identified.

      **IT IS SO ORDERED**.

      DATED this 25th day of September, 2023.

                               /s/ *Michael H. Simon*
                               Michael H. Simon
                               United States District Judge